IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
Rochester Division

---

DONALD MONTGOMERY,
as an individual, and on behalf of
all other persons similarly situated,

          Plaintiff

vs.

ANDREW M. CUOMO, Governor of the State
of New York; ANN MARIE T. SULLIVAN,
Commissioner of the New York State
Office of Mental Health; MICHAEL C. GREEN,
Executive Deputy Commissioner of the
New York State Division of Criminal Justice Services;
JOSEPH A. D'AMICO, Superintendent of
the New York State Police; VINCENT F. DEMARCO,
Suffolk County Sheriff's Department; and,
EASTERN LONG ISLAND HOSPITAL,

          Defendants.

**Declaration of
Stephen J. Aldstadt**

Civil No.: 6:14-cv-06709

Hon. Charles J. Siragusa

---

Stephen Aldstadt, under penalty of perjury and in accordance with 28 U.S.C. §1746, states and declares as follows:

1.     I am the President of the Shooters Committee on Political Education ("SCOPE").

2.     I have read and am familiar with the Plaintiff's Complaint.

3.     This Declaration is submitted in support of the relief requested by the Plaintiff.

4. I wish to bring to the attention of this Court the proceedings currently pending in another case in the New York State Supreme Court, County of Albany, namely, *SCOPE vs. Cuomo* (Index No. 5119-2014), which is relevant, at least in part, to this federal case.

5. The case *SCOPE vs. Cuomo, et al.* was brought under CPLR Art. 78 to compel the production of various records from the office of Governor Cuomo and the New York State Police. The original Freedom of Information Requests were submitted by 33 members of the Monroe County Chapter of SCOPE in January 2014, pertaining to Assembly Bill A2388-2013 (Senate Bill S2230-2013), including the provision that came to be known as MHL §9.46.

6. Under NY Public Officers Law §86(4), the term "record" as used relative to a New York Freedom of Information Request means "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever, including, but not limited to reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."

7. The following FOIL requests and the specific responses are of relevance:

   a. Request of Mr. Joshua C. Grant for "records of the names of personnel assigned to build the statewide license and record database as referenced in the

'Guide to The New York SAFE Act for Members of the Division of State Police" as prepared by The Office of Division Counsel' (dated September 2013), page 2," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

b. Request by Mr. Sheldon Fulkerson for "records relating to the qualifications of persons who will be authorized to access the statewide license and record database as referenced in the 'Guide to The New York SAFE Act for Members of the Division of State Police" as prepared by The Office of Division Counsel' (dated September 2013), page 2," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

c. Request by Mr. Kenneth Hann for "records relating to the security clearance requirements for personnel who will be authorized to access the statewide license and record database as referenced in the 'Guide to The New York SAFE Act for Members of the Division of State Police" as prepared by The Office of Division Counsel' (dated September 2013), page 2," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

d. Request by Mr. Robert Bradfield for "records relating to the training of operators to run the statewide license and record database as referenced in the

'Guide to The New York SAFE Act for Members of the Division of State Police" as prepared by The Office of Division Counsel' (dated September 2013), page 2," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

e. Request by Mr. Eric Carlstan for "records relating to the operations of the statewide database that will 'continually run checks,' including, but not limited to, as relates to operator instructions for running such checks, program design specifications for automated processing of such checks, and training materials for systems operators on running such checks," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

f. Request by Mr. David W. Jones for "records on the process that will be followed to classify a weapon as a 'nuisance weapon' as referenced in the 'Guide to The New York SAFE Act for Members of the Division of State Police" as prepared by The Office of Division Counsel' (dated September 2013), page 6," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

g. Request by Mr. Gary Distefano for "records on the process that will be used to differentiate between weapons taken into NYS Police custody, as to whether such weapon will be 'secured for safekeeping' or 'automatically classified as a

nuisance weapon' to be destroyed as referenced in the 'Guide to The New York SAFE Act for Members of the Division of State Police" as prepared by The Office of Division Counsel' (dated September 2013), page 6," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

h. Request of Mr. Dexter Greene for "records relating to the notifications that will be sent to individuals providing notification that a check was been run through the statewide license and record database on that individual [error omitted] as referenced in the 'Guide to The New York SAFE Act for Members of the Division of State Police" as prepared by The Office of Division Counsel' (dated September 2013), page 2," to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

i. Request by Mr. Kenneth E. Mathison for "records on the notification process that will be followed to notify a 'local law enforcement agency having jurisdiction' when a person fails a check run through the statewide license and record database on that individual, to which the NYS Police responded on December 5, 2014 that there were no records responsive to the request.

{Please refer to Exhibit 33 for each FOIL request with corresponding NYS Police responsive letter (dated December 5, 2014).}

8. The status of the case of *SCOPE vs. Cuomo, et al.* is the same as two affiliated lawsuits by other Plaintiffs also seeking records relevant to A2388-2013/S2230-2013. The submissions of Counsel are complete and we are awaiting judicial decision. The FOIL requests and responses included with this Declaration were stipulated out from the remaining group of FOIL requests awaiting judicial decision.

9. The NYS Police responses provided with this Declaration essentially tell us that there are no particular security measures associated with the statewide database, that there is no particular training of officers in utilizing the statewide database, no notification of persons searched in the statewide database, and no standard operating procedure for either the confiscation of firearms, the destruction of "nuisance" firearms, or the notification of local law enforcement.

10. This piece of our document inquiry, in the context of the responses thus far received to the larger picture, are consistent with a lack of appreciation for either the fundamental civil liberties involved or the sensitive nature of the information contained in the statewide database.

11. It is important for this Court to understand the depth of concern the general public and SCOPE members have over this new and highly-publicized statewide reporting system and database.

12. SCOPE receives several telephone calls a week from all across the state, from persons who are members and those who are not.

13. I personally handle these telephone calls, in conjunction with one part-time secretary. I also speak with people in person across the state at meetings, speaking engagements, and political rallies.

14. I am also working with several attorneys in more than six counties, both in relation to lawsuits for which SCOPE is a Plaintiff or an Amicus or monitoring the situation on the ground as one provision after another of the "SAFE Act" gets implemented.

15. Everything about the dynamic of our Second Amendment freedoms and our privacy changed "post-SAFE Act." There was a very clear demarcation point as of January 14, 2013 when the Senate version of the Bill was at last released in the late afternoon. The manner in which it was jammed through the state legislature in a pre-orchestrated coup with the House Speaker and the Senate Majority Leader was virtually unprecedented. There were no deliberations. There were no hearings. There were no legislative briefing or research memorandum. There was no public comment period. There wasn't even the default "three day desk rule" upon which to rely.

16. This Court should also understand that a thorough review of the Senate and Assembly proceedings was conducted by Counsel on behalf of SCOPE, including a review, in detail, of the Senate Rules. To utilize the "Message of Necessity"

required coordination between the Governor and the legislative Leadership as it passed the Committee without a single remark and it sailed through the floor vote with the Lieutenant Governor reciting the rules for the exceptions as if from a script. {Please refer to Exhibit 34, Second Amendment Coalition White Paper Series - 2014, "The Long Road to the SAFE Act: How Did Cuomo Do It So Fast?" by Paloma A. Capanna, Attorney & Policy Analyst, pp. 7-10.}

17. The violation of civil liberties as a result of MHL §9.46, among other provisions, is very real and has been happening. I routinely get calls about infringements of Second, Fourth, Fifth, Fourteenth, and privacy rights in conjunction with firearms confiscation following contact with a mental health provider or with certain medical events, like insomnia.

18. It is common knowledge in New York and it has been for years that once a pistol license is denied or revoked it is virtually impossible to have it restored. Almost no cases are reversed on appeal. It is also generally acknowledged that such matters are not typically taken to a hearing or taken up on appeal because to do so requires an individual to hire an attorney and attorneys cost money.

19. It is equally common knowledge throughout New York and it has been for years that if firearms are confiscated, they are probably lost due to the costs associated with hiring an attorney.

20. So what we are seeing now is a near perfect storm of the State taking advantage of the "low hanging fruit," so-to-speak, in that it is targeting those with contact with a mental health provider or with a medical condition that can be said to resemble a mental health condition, however transient, and the State is plucking away at those individuals with the expectation that they will not hire a lawyer or go to court or prove in a public manner what is going on relative to the State's invasion of privacy and taking of fundamental and other liberties.

21. The truly sad aspect of the State's abuse of our civil rights is that it is chilling people all over the State – not just from mental health care, but also from medical care and prescriptions. The State's manner in jamming through the "SAFE Act" and its bulldozing its way into medical records has only heightened distrust, which is directly the opposite of how the State should be approaching an increased availability of confidential services as a matter of public health and safety. The State should be working harder to develop trust, instead of tearing it away.

22. I respectfully urge this Court to shut down the statewide reporting system and database, to notify individuals who are captured within it, and to prohibit any further submission of reports under MHL §9.46 through ISARS or other statewide database pending this litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: _Alden_, _New York_
January _15_, 2015

_[signature]_
Stephen J. Aldstadt