*Montgomery vs. Cuomo*

Exhibit Group H

Exhibit #33 – NYSP letters (December 2, 2014)



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE
BUILDING 22
1220 WASHINGTON AVE.
ALBANY, N. Y.  12226-2252**

December 5, 2014

Mr. Joshua C. Grant
835 Alderman Road
Palmyra, New York 14522

Dear Mr. Grant:

 This is in response to your January 20, 2014 Freedom of Information Law request for "records of the names of personnel assigned to build the statewide license and record database as referenced in the 'Guide to The New York Safe Act for Members of the Division of State Police' as prepared by The Office of Division Counsel (dated September 2013), page 2."

 Please be advised that a diligent search of our files failed to locate any records responsive to your request.  Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc: Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| Requestor Information (Required) | | | Date: 01/20/14 | |
|---|---|---|---|---|
| Name: Joshua C Grant | | | | |
| Mailing Address: 835 Alderman Rd | City Palmyra | State N Y | Zip Code: 14522 | |
| Party You Represent: Self | | | | |
| Your Firm/Organization Name & Address: NA | | Telephone Number: 585-489-3443 | | |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| Record Information | |
|---|---|
| Type of Government Record Sought: | |
| Incident Number: | **REQUEST**: records of the names of personnel assigned to build the statewide license and record database as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), page 2. |
| Incident Location: | |
| Name(s) and Date(s) | |
| Other Descriptive Inf | |

Note: This form is not intended for use as an appeal. Submit a letter requesting an appeal to the New York State Police Records Appeal Officer at the above address.

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE**
**BUILDING 22**
**1220 WASHINGTON AVE.**
**ALBANY, N. Y.  12226-2252**

December 5, 2014

Mr. Sheldon Fulkerson
51 Aprille Lane
Rush, New York 14543

Dear Mr. Fulkerson:

This is in response to your January 20, 2014 Freedom of Information Law request for "records relating to the qualifications of persons who will be authorized to access the statewide license and record database as referenced in the 'Guide to The New York Safe Act for Members of the Division of State Police' as prepared by The Office of Division Counsel (dated September 2013), page 2."

Please be advised that a diligent search of our files failed to locate any records responsive to your request.  Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc:  Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| *Requestor Information (Required)* | Date: *1-20-2014* | | | |
|---|---|---|---|---|
| Name: *SHELDON FULKERSON* | | | | |
| Mailing Address: *51 APRILLE LANE* | City *RUSH* | State *NY* | Zip Code: *14543* | |
| Party You Represent: | | | | |
| Your Firm/Organization Name & Address: | | | Telephone Number: | |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| *Record Information* | |
|---|---|
| Type of Government Record Sought: | |
| Incident Number: | **REQUEST**: records relating to the qualifications of persons who will be authorized to access the statewide license and record database as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), page 2. |
| Incident Location: | |
| Name(s) and Date(s) of | |
| Other Descriptive Info | |

Note: This form is not intended for use as an appeal. Submit a letter requesting an appeal to the New York State Police Records Appeal Officer at the above address.

**NOTICE from the Requestor**: This "Request for Records" includes all **"records"** pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

## NEW YORK STATE POLICE
### BUILDING 22
### 1220 WASHINGTON AVE.
### ALBANY, N. Y. 12226-2252

December 5, 2014

Mr. Kenneth Hann
8 Old Settlers Drive
Pittsford, New York 14534

Dear Mr. Hann:

    This is in response to your January 20, 2014 Freedom of Information Law request for "records relating to the security clearance requirements for personnel who will be authorized to access the statewide license and record database as referenced in the 'Guide to The New York Safe Act for Members of the Division of State Police' as prepared by The Office of Division Counsel (dated September 2013), page 2."

    Please be advised that a diligent search of our files failed to locate any records responsive to your request. Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc:    Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| *Requestor Information (Required)* | | Date: Jan 20, 2014 | | |
|---|---|---|---|---|
| Name: Kenneth Hann | | | | |
| Mailing Address: 8 Old Settlers Drive | City: Pittsford | State: NY | Zip Code: 14534 | |
| Party You Represent: Self | | | | |
| Your Firm/Organization Name & Address: | | | Telephone Number: | |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| *Record Information* | |
|---|---|
| Type of Government Record Sought: | |
| Incident Number: | **REQUEST**: records relating to the security clearance requirements for personnel who will be authorized to access the statewide license and record database as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), page 2. |
| Incident Location: | |
| Name(s) and Date(s | |
| Other Descriptive In | |

Note: This form is not intended for use as an appeal. Submit a letter requesting an appeal to the New York State Police Records Appeal Officer at the above address.

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE
BUILDING 22
1220 WASHINGTON AVE.
ALBANY, N. Y.  12226-2252**

December 5, 2014

Mr. Robert Bradfield
22 Arnold Park, #1
Rochester, New York 14607

Dear Mr. Bradfield:

This is in response to your January 20, 2014 Freedom of Information Law request for "records relating to the training of operators to run the statewide license and record database as referenced in the 'Guide to The New York Safe Act for Members of the Division of State Police' as prepared by The Office of Division of Counsel (dated September 2013), page 2."

Please be advised that a diligent search of our files failed to locate any records responsive to your request.  Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc:     Paloma A. Capanna, Esq.



# New York State Police
# Freedom of Information
# Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| Requestor Information (Required) | | Date: 1/20/14 |
|---|---|---|
| Name: ROBERT BRADFIELD | | |
| Mailing Address: 22 ARNOLD PARK #1 | City: ROCHESTER | State: NY    Zip Code: 14607 |
| Party You Represent: SELF | | |
| Your Firm/Organization Name & Address: N/A | | Telephone Number: |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| Record Information | |
|---|---|
| Type of Government Record Sought: | |
| Incident Number: | **REQUEST**: records relating to the training of operators to run the statewide license and record database as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), page 2. |
| Incident Location: | |
| Name(s) and Date( | |
| Other Descriptive I | |

Note: This form is not intended for use as an appeal. Submit a letter requesting an appeal to the New York State Police Records Appeal Officer at the above address.

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE**
**BUILDING 22**
**1220 WASHINGTON AVE.**
**ALBANY, N. Y.  12226-2252**

December 5, 2014

Mr. Eric Carlstan
63 Glendale Park
Rochester, New York 14613

Dear Mr. Carlstan:

This is in response to your January 20, 2014 Freedom of Information Law request for "records relating to the operations of the statewide database that will 'continually run checks,' including, but not limited to, as relates to operator instructions for running such checks, program design specifications for automated processing of such checks, and training materials for systems operators on running such checks."

Please be advised that a diligent search of our files failed to locate any records responsive to your request.  Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc:    Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| *Requestor Information (Required)* | | Date: 1/20/14 |
|---|---|---|
| Name: Eric R. Carlston | | |
| Mailing Address: 63 Glendale Pk. | City: Rochester | State: N.Y. Zip Code: 4613 |
| Party You Represent: Self | | |
| Your Firm/Organization Name & Address: | | Telephone Number: 585 329 7635 |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| *Record Information* | |
|---|---|
| Type of Government Record Sought: | |
| Incident Number: | **REQUEST**: records relating to the operations of the statewide database that will "continually run checks," including, but not limited to, as relates to operator instructions for running such checks, program design specifications for automated processing of such checks, and training materials for systems operators on running such checks. |
| Incident Location: | |
| Name(s) and Date(s) | |
| Other Descriptive Inf | |

Note: This form is not intended for use as an appeal. Submit a letter requesting an appeal to the New York State Police Records Appeal Officer at the above address.

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE
BUILDING 22
1220 WASHINGTON AVE.
ALBANY, N. Y.  12226-2252**

December 5, 2014

Mr. David W. Jones
72 Linnet Street
Rochester, New York 14613

Dear Mr. Jones:

This is in response to your January 20, 2014 Freedom of Information Law request for "records on the process that will be followed to classify a weapon as a 'nuisance weapon' as referenced in the 'Guide to The New York Safe Act for Members of the Division of State Police' as prepared by The Office of Division Counsel (dated September 2013), page 6."

Please be advised that a diligent search of our files failed to locate any records responsive to your request.  Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc:    Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| *Requestor Information (Required)* | | Date: 1/26/14 |
|---|---|---|
| Name: DAVID W. JONES | | |
| Mailing Address: 72 LINNET ST | City: ROCHESTER | State: NY   Zip Code: 14613 |
| Party You Represent: | | |
| Your Firm/Organization Name & Address: | | Telephone Number: |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| *Record Information* | |
|---|---|
| Type of Government Record Sought: | |
| Incident Number: | **REQUEST**: records on the process that will be followed to classify a weapon as a "nuisance weapon" as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), page 6.   Time: |
| Incident Location | |
| Name(s) and Date | |
| Other Descriptive | |

Note: This form is not intended for use as an appeal. Submit a letter requesting an appeal to the New York State Police Records Appeal Officer at the above address.

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE
BUILDING 22
1220 WASHINGTON AVE.
ALBANY, N. Y. 12226-2252**

December 5, 2014

Mr. Gary Distefano
487 Meadow Briar Road
Greece, New York 14616

Dear Mr. Distefano:

This is in response to your January 20, 2014 Freedom of Information Law request for "records on the process that will be used to differentiate between weapons taken into NYS Police custody, as to whether such weapon will be 'secured for safekeeping' or 'automatically classified as a nuisance weapon' to be destroyed as referenced in the 'Guide to The New York Safe Act for Members of the Division of State Police' as prepared by The Office of Division Counsel (dated September 2013), page 6."

Please be advised that a diligent search of our files failed to locate any records responsive to your request. Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc:    Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| Requestor Information (Required) | | | Date: 1/20/14 | | |
|---|---|---|---|---|---|
| Name: GARY DISTEFANO | | | | | |
| Mailing Address: 487 MEADOWBRIAR RD | City GREECE | | State NY | Zip Code: 14616 | |
| Party You Represent: Self | | | | | |
| Your Firm/Organization Name & Address: | | | | Telephone Number: 585-621-1023 | |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| Record Info | | |
|---|---|---|
| Type of Gover | **REQUEST**: records on the process that will be used to differentiate between weapons taken into NYS Police custody, as to whether such weapon will be "secured for safekeeping" or "automatically classified as a nuisance weapon" to be destroyed as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), page 6. | :/Time: |
| Incident Numl | | |
| Incident Locat | | |
| Name(s) and 1 | | |
| Other Descrip | | |
| Note: This State Polic | | peal to the New York |

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE
BUILDING 22
1220 WASHINGTON AVE.
ALBANY, N. Y.  12226-2252**

December 5, 2014

Mr. Dexter Greene
155 Eaglesfield Way
Fairport, New York 14450

Dear Mr. Greene:

This is in response to your January 20, 2014 Freedom of Information Law request for "records relating to the notifications that will be sent to individuals providing notification that a check has been run through the statewide license and record database on that individual the (sic) statewide license and record database as referenced in the 'Guide to The New York Safe Act for Members of the Division of State Police' as prepared by The Office of Division Counsel (dated September 2013), page 2."

Please be advised that a diligent search of our files failed to locate any records responsive to your request. Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lieutenant Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/rpo

cc:    Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| Requestor Information (Required) | Date: January 20, 2014 |
|---|---|
| Name: Dexter Greene | |
| Mailing Address: 155 Eaglesfield Way | City: Fairport | State: NY | Zip Code: 14450 |
| Party You Represent: Self | |
| Your Firm/Organization Name & Address: | Telephone Number: 585-388-9863 |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| Record Information | |
|---|---|
| Type of Government Rec | |
| Incident Number: | **REQUEST**: records relating to the notifications that will be sent to individuals providing notification that a check has been run through the statewide license and record database on that individual the statewide license and record database as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), page 2. |
| Incident Location: | |
| Name(s) and Date(s) of | |
| Other Descriptive Inforn | |

Note: This form is r                                                          he New York
State Police Record

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."



JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE
BUILDING 22
1220 WASHINGTON AVE.
ALBANY, N. Y. 12226-2252**

December 5, 2014

Mr. Kenneth E. Mathison
145 Chesterfield Drive
Rochester, New York 14612

Dear Mr. Mathison:

    This is in response to your January 20, 2014 Freedom of Information Law request for "records on the notification process that will be followed to notify a 'local law enforcement agency having jurisdiction' when a person fails a check run through the statewide license and record database on that individual."

    Please be advised that a diligent search of our files failed to locate any records responsive to your request. Any appeals must be made in writing and mailed to the Records Appeal Officer, Administration, at the above address.

Sincerely,

*Debra L. Benziger*

T/Lt. Debra L. Benziger
Records Access Officer
Central Records Bureau

DLB/sms

cc:    Paloma A. Capanna, Esq.



# New York State Police
## Freedom of Information
## Request for Records

All requests must be made in writing. This form may assist you in structuring your request. Please complete this form and submit via email by clicking the button above or mail to:

New York State Police
Attn: Records Access Officer
1220 Washington Avenue, Bldg 22
Albany, New York 12226-2252

Within five (5) business days this agency will respond to your request for records with a written acknowledgement of receipt and a statement of the approximate date when such request will be granted or denied.

| *Requestor Information (Required)* | | Date: *1/20/14* | | |
|---|---|---|---|---|
| Name: *KENNETH E. MATHISON* | | | | |
| Mailing Address: *147 CHESTERFIELD DR* | City *ROCHESTER* | State *NY* | Zip Code: *14612* | |
| Party You Represent: *SELF* | | | | |
| Your Firm/Organization Name & Address: *N/A* | | | Telephone Number: *585-767-1040* | |

Identify or describe the government record sought with sufficient specificity to enable the NYSP to ascertain and locate the record. Please fill in all known or applicable information.

| Record Information | |
|---|---|
| Type of Government | |
| Incident Number: | |
| Incident Location: | **REQUEST**: records on the notification process that will be followed to notify a "local law enforcement agency having jurisdiction" when a person fails a check run through the statewide license and record database on that individual the statewide license and record database as referenced in the "Guide to The New York Safe Act for Members of the Division of State Police" as prepared by The Office of Division Counsel (dated September 2013), pages 2 and 6. |
| Name(s) and Date(s | |
| Other Descriptive I | |
| Note: This form | |
| State Police Re | to the New York |

**NOTICE from the Requestor**: This "Request for Records" includes all "**records**" pursuant to Public Officers Law §86(4), "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."

*Montgomery vs. Cuomo*

Exhibit Group H

Exhibit #34 – Capanna White Paper (2014)



**2ⁿᵈ Amendment Coalition**

**White Paper Series - 2014**

# THE LONG ROAD TO THE SAFE ACT:
# HOW DID CUOMO DO IT SO FAST?

2ⁿᵈ Amendment Coalition
*by* Paloma A. Capanna,
Attorney & Policy Analyst

www.2ACoalition.org

8316 Irish Road
Colden, New York 14033
(716) 941-3286

Copyright ©2014, 2nd Amendment Coalition.

First edition, December 2, 2014.

Without limiting the rights under copyright above, no part of this publication may be reproduced, stored in, or introduced into a retrieval system, or transmitted, in any form, by any means (electronic, mechanical, photocopying, recording, or otherwise), without the prior written permission of the copyright owner.  The scanning, uploading, and distribution of this publication via the Internet or via any other means without the permission of the copyright owner is illegal and punishable by law.  Please utilize only authorized electronic editions, and do not participate in or encourage electronic privacy of copyrighted materials.  While the copyright owner has made every effort to provide accurate Internet addresses at the time of publication, the authors do not assume any responsibility for errors or for changes to the Internet publication of referenced materials that occur after publication.  Further, neither the copyright owner nor the authors have control over and do not assume any responsibility for third-party authors, websites, or their content.



# Foreword

*by* Stephen J. Aldstadt, President, SCOPE

I've been a New Yorker my whole life.  Born and raised not far from Buffalo, I'm no stranger to New York politics.  It's a state with two, distinct cultures and we are divided.

Even so, when the "SAFE Act" got signed into law less than 24-hours after it hit social media, New York politics set a new record low.

Sometimes, when you know something has gone terribly wrong, you can do no more than persistently oppose the outcome, while trying to figure out what happened to bring it about.

This White Paper is the story of how Governor Cuomo managed to pull off the "SAFE Act" at what looked like breakneck speed, while secretly wheeling and dealing for weeks with Leaders in the Senate and the House.  You might know part of the story, but you won't know the whole of it until you read our analysis.  It hasn't been put together all in one place until now.

You are needed on the front line of defense against the radical infringement of our fundamental rights.  So when you're done reading this White Paper, give us a call.

Stephen J. Aldstadt, President
Shooters Committee on Political Education

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 24 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?          Page 1



## 1.  Executive Summary

The SAFE Act did not pass in 24-hours.  It was voted on in 24-hours, but the terms of the Bill had been negotiated and worked on for many weeks.  The origins of the Bill go back years, to a time when now NY Governor Andrew Cuomo was inside the beltway of Washington, D.C., working for the Department of Housing and Urban Development.  To read his newly-released autobiography, the antecedents may go back as far as a time when Cuomo was 6-years old and "terrified" during nuclear-bomb drills as a grammar school student.

The Message of Necessity called for on Monday, January 14, 2013 by the Majority Leaders of the Assembly and the Senate and issued by the Governor was carefully orchestrated to avoid full legislative and public review of the Bill prior to the call for votes.  There was no actual "emergency" on January 14.  There was a political opportunity created by a school shooting in Connecticut and a first responders shooting in Webster that allowed the Governor to avoid what in his own opinion amounted to the challenges he faced in 2011 when pushing through passage of the same-sex marriage bill.

For all the secrecy around the passage of the SAFE Act, the Deep Throat turned out to be the Governor, himself, through the publication of his autobiography, "All Things Possible," released mid-October 2014.  In it, he details how "95%" of the SAFE Act was hammed out before his January 9, 2013 State of the State Address, during private meetings with the House and Senate Majority Leaders, intentionally to the exclusion even of their own party members.

This White Paper examines the passage of the SAFE Act through the close-up timeline from December 12, 2012 through January 15, 2013 and, then, through the short-term political aftermath.  Composing the research into two sections will allow you to see the depth of the fraud perpetuated through the Governor's claim to the public that a "Message of Necessity" was an appropriate suspension of the legislators' constitutional

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 25 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 2



right to have a bill for three days prior to a vote and of our fundamental right to an open and participatory democracy.

## 2.   The Orchestration of the SAFE Act

The NY SAFE Act was intended to be a surprise – even to the Members of the NYS Senate and Assembly who voted on it.  The Bill was unveiled by the Governor late on Monday, January 14, 2013 following a gubernatorial press conference.  That night, the Majority Leaders of the House and the Senate transmitted requests for a "Message of Necessity" to the Governor, to which the Governor issued a Message of Necessity to suspend the three-day desk rule and allow for an immediate vote.  Within 24-hours, the Governor's Bill passed both chambers of the legislature and was signed into law.

On January 15, 2013, New York Governor Andrew Cuomo signed into law the "Secure Ammunition and Firearms Enforcement Action of 2013."  Touted by the Governor as the "NY SAFE Act," the 39-page bill both created new statutory provisions and amended existing ones.  Its reach spread across ten areas of law, including the Penal Law, Criminal Procedure Law, Correction Law, Family Court Act, Domestic Relations Law, Executive Law, General Business Law, Judiciary Law, Mental Hygiene Law, and, Surrogate's Court Procedure Act.  Some provisions were effective immediately; others became effective over the course of a year or more.

The Governor wants people to believe that the road to the SAFE Act began with the December 14, 2012 shooting at Sandy Hook Elementary School in Newtown, Connecticut.  According to the Governor's autobiography, "I felt much as I had on 9/11. I was shocked – and angrier than I have ever been."[1]  He claims to have called the Governor of Connecticut shortly thereafter, contacted his family, and cancelled all official events for the next day so that he could follow the story "as it unfolded before us: the psychological history of the killer; which guns and ammo he'd used."[2]

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 26 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 3



In the weeks following, the federal government on December 19, 2012 began openly conducting a working group, dubbed "the Biden Commission,"[3] leading towards a scheduled unveiling by the President of the United States of what he signaled would be an executive order reviving the 1994 Assault Weapons Ban.[4]  The public was noisy.  The politicians got noisier.

Oddly, the New York Governor tried to come off as above the political rhetoric jamming the airwaves across the country.  On December 21, 2012, during a radio interview on WGDJ Albany, the Governor said, "The only thing that's going to happen in the next few days is Christmas," putting off a question on potential firearms legislation.[5] In this same radio interview, Governor Cuomo said, "Confiscation could be an option.  Mandatory sale to the state could be an option.  Permitting could be an option – keep your gun, but permit it."[6]  It is only with hindsight that we can listen to the same clip and hear the edge in the Governor's voice as he fights to sound calm and in control.

If we are now to believe the Governor's autobiography, communication between the Majority Leaders and the Governor began immediately after December 12, 2012, and were underway even as he gave that radio interview.  "Unlike the passage of our two on-time budgets and the same-sex marriage bill, where we had to persuade individual legislators to vote with us, these negotiations were mostly with Assembly Speaker Sheldon Silver and Senate Majority Leader Dean Skelos.  Both told us there was near-unanimity among the legislators that *something* had to be done about gun safety.  The question was what."[7]  The autobiography also claims, "We worked through the holidays…"[8]

What is believed to be the first public, written indication that gun control legislation was being discussed in New York came on Saturday, January 5, 2013 when NYS Senate Majority Leader Skelos issued his own proposals for reform.[9]  In it, Senator Skelos wrote, "The statistics prove that the overwhelming majority of gun crimes involve the use of illegal guns," and it highlighted that "Nearly 90 percent of firearms used in gun crimes

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 27 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                Page 4



in New York City, and 70 percent statewide, come from out of state."  The bullet point proposals from Senator Skelos focused on sentencing of convicted criminals and a statewide registry for tracking violent felons.

That's when the public threats from the Governor began.  The next day, January 6, 2013, the NY Daily News ran the headline:  "Gov. Andrew Cuomo eyeing all-out assault on GOP if it continues to hold up his plan to institute the nation's toughest gun-control laws."[10]  The article described how the Governor was "fuming" at the proposal released by Senator Skelos and how the Governor was threatening a high-dollar, multi-month negative advertising campaign with money from gun control groups.  Senate Republicans responded in the article with the statistics on illegal guns and the concern for tougher penalties, which was hit back by Democrats as out of step with a call for an assault weapons ban.

On Wednesday, January 9, 2013, Governor Cuomo gave his State of the State annual address, and, on just one slide out of 375 slides, he raised the topic of guns.  One slide, number 226, listed a 7-point "Safe and Fair Gun Policy," which he introduced by saying, "Enact the toughest assault weapons ban in the nation – period!"[11]  It was within this speech that the Governor gave his now infamous lines, "And I say to you:  forget the extremists!  It's simple!  No one hunts with an assault rifle!  No one needs 10 bullets to kill a deer!"[12, 13]

News coverage that day included remarks by Senator Martin Golden that 95% of the legislation had been negotiated behind closed doors and by Senator Skelos that legislation was expected by the end of the week.[14]  Governor Cuomo echoed the same in his autobiography, including, "By January 9, when I delivered my 2013 State of the State Address at the Convention Center in Albany, we'd hammered out 95 percent of the agreement."[15]

The events of Monday, January 14, 2013 remain in question.  Originally, the White House was doing the final run-up to their schedule for a Tuesday announcement of the

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 28 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 5



recommendations of the Biden Commission.[16]  But, the White House announcement was then shifted to Wednesday.[17]  The pause in the President's schedule meant that the Governor had an opportunity for national media attention, if he could deliver a signed law on the Tuesday.

It is precisely what Governor Cuomo managed to pull off.

## 2a.  Events of Monday, January 14, 2013

On Monday, January 14, 2013, a Town Hall Meeting was held in Ilion, NY, home to Remington and other firearms manufacturers.  Present at the meeting were an estimated 100 persons and, also, federal and state elected officials, namely, United States House Representative Richard Hanna and New York State Assembly Members Claudia Tenney and Anthony J. Brindisi.[18]

Following the meeting, an estimated 30 employees of Remington traveled from Ilion to Albany to protest at the capitol.  UMWA Local No. 717 member Frank Brown was the point person to deliver a letter to every member of the legislature he could find.[19]

It was not until 6:37 pm on Monday, January 14, 2013 that one media outlet reported that NYS Republicans had "emerged from a three-hour closed door session about the legislation without giving their approval stamp to a tentative agreement reached over the weekend and this morning."[20]

On the evening of January 14, 2013, Governor Cuomo gave a five-minute presentation with PowerPoint slides on the "NY SAFE Act."  He presented highlights of a bill, which "…is going to be printed into a bill and circulated tonight."[21]  When asked whether it was to take advantage of the deal on the table "now" or to prevent a run of buying, Governor Cuomo said, "both," continuing, "The ban on assault weapons would be immediate.  It wouldn't make a heck of a lot of sense to announce a ban three days

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 29 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 6



later and just generate, you know, hundreds and hundreds of sales of assault weapons in the state when we're trying to ban those sales of assault weapons."[22]

Governor Cuomo went on in that answer to speak to his "Message of Necessity" for the immediate passage of the legislation, saying, "If there is an issue that fits the definition of 'necessity' in the State of New York today, I believe it's reducing gun violence."[23]

During Governor Cuomo's briefing of January 14, 2013, he stated that he and the legislature had "finished negotiating" and had sent the proposal to be drafted as a bill to be circulated.[24]  Governor Cuomo acknowledged his office had been working on the bill for "weeks."[25]  Among those credited by the Governor for their contributions to the bill were Liz Glazer,[26] his then Deputy Secretary of Public Safety; Attorney Mylan Denerstein,[27] his then Counsel; and, Bob Duffy,[28] his now out-going Lieutenant Governor.  Ms. Denerstein and Mr. Duffy were seated at the dais with the Governor for the press conference.

When asked whether the NYS Senate would be voting on the bill that very night, Governor Cuomo said, "I heard the Senate was coming back in."[29]  Governor Cuomo circled back to his earlier remarks on trying to avoid a "run" on sales, saying, "That became inevitable when the bill went into print.  As soon as the bill went into print, people will now be notified that – what?  They know the state is considering a ban. Is that enough to start a 'run?'  I don't know.  I know the number of purchases has been way up in the past days and weeks anticipating this.  Now that they see the bill could that increase?  That is certainly a possibility, so I would hope for expeditious action, but that's up to the Assembly and the Senate."[30]

Although a "last question" was called out by staff, the questions continued and Governor Cuomo said, "I'm giving them the Message of Necessity."[31]

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 30 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 7



Several minutes past the "last question" call by staff, at approximately 23 minutes into the briefing, a question was asked about Remington workers protesting at the capitol, to which Governor Cuomo said, "You know I don't know – I don't know Remington's business well enough to know how many assault weapons they've been making, what percent of their business that is, and what percent assault weapon sales in New York are. My guess is New York is not going to be the only state to act; other states will act. My guess is that there will be some federal action one way or the other on this topic. So I think if the companies are worried about future sales of assault weapons, they're going to have to worry about a lot of other things besides the State of New York and the State of New York's market."[32]

According to documents obtained through the Freedom of Information Law from Governor Cuomo's office, the Majority Leaders sent written requests to the Governor's Counsel on the night of Monday, January 14, 2013.  The letters request the Governor issue a "Message of Necessity."  The letter from Counsel to the Senate Majority said, "I am formally requesting a message of necessity pursuant to §14 of Article 3 of the Constitution on Senate bill # 2230 relating to suspension and revocation of firearms licenses," and it bears a handwritten note of "Received: 1/14/13 @ 8:28 p.m."[33]  From Counsel to the Assembly Speaker a letter was sent which read "I am formally requesting a message of necessity pursuant to Article III, Section 14 of the Constitution on the following Assembly bill: A. 2388," onto which was handwritten the note "Received: 1/14/13 @ 9:36 p.m."[34]

Governor Cuomo issued a written "Message of Necessity" (dated January 14, 2013), also signed by his Counsel, Mylan L. Denerstein, stating, in part:

> "The facts necessitating an immediate vote on the bill are as follows:
>
> "Some weapons are so dangerous, and some ammunition devices so lethal, that New York State must act without delay to prohibit their continued sale and possession in the State in order to protect its children, first responders and citizens as soon as possible.  This bill, if enacted, would do so by immediately banning the ownership, purchase and sale of assault weapons and large capacity ammunition

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 31 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 8



feeding devices, and eliminate them from commerce in New York State.  For this reason, in addition to enacting a comprehensive package of measures that further protect the public, immediate action by the Legislature is imperative.

"Because the bill has not been on your desks in final form for three calendar legislative days, the Leaders of your Honorable bodies have requested this message to permit the immediate consideration of this bill."[35]

The "Message of Necessity" by a New York State Governor has its origin in the NYS Constitution, Art. III, Sec. 14, which reads:  "No bill shall be passed or become a law unless it shall have been printed and upon the desks of the members, in final form, at least three calendar legislative days prior to its final passage, unless the governor…shall have certified, under his or her hand and the seal of the state, the facts which in his or her opinion necessitate an immediate vote thereon, in which case it must nevertheless be upon the desks of the members in final form, not necessarily printed, before its final passage…"[36]

That night, at least one NYS Senator, John J. Bonacic, wrote a statement noting, "…the print of the bill has not been shown to Legislators as I write this – 8 PM on January 14…"[37]

The NYS Senate is listed as being in session on January 14, 2013 from 4:47 pm until 11:22 pm.[38]  The video for the session was only 52:37, of which the first approximately twenty minutes was spent on an unrelated resolution.  The Senate then stood at ease. At an unknown time, there was a call for a 9:45 pm meeting of the Rules Committee, and the Senate returned to at ease status.[39]

The Rules Committee is listed as meeting on January 14, 2013 from 9:45 pm – 10:04 pm; it had the Bill for less than two hours prior to its vote.[40]  The corresponding video footage is 18 minutes long.  At approximately 17:25 into the video, after discussion of an unrelated matter, the Committee Chair announced the Bill, asked for any questions, and hearing none, called for an immediate vote, announcing that the Bill had moved through Committee and would be taken up momentarily on the Floor.[41]  The Bill passed

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 32 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 9



the Senate Rules Committee without the utterance of a single word or question – one way or the other – in less than one minute on the clock.

When the video of the Senate Floor resumes, it is stated that the report of the Rules Committee is at the desk.[42]  There is no announcement of the vote of the Rules Committee, although it is recorded on the NYS Senate website as having been a vote of 19-6.[43]  The "Ayes," voting in support of the Bill were Senators Skelos (R), Carlucci (D), Flanagan (R), Fuschillo (R), LaValle (R), Marcellino (R), Valesky (D), Stewart-Cousins (D), Breslin (D), Dilan (D), Hassell-Thompson (D), Krueger (D), Montgomery (D), Parker (D), Perkins (D), Espaillat (D), and Ginaris (D).  There were two "Ayes W/R," meaning "with reservations," from Senators Libous (R) and Hannon (R).  And the "Nay" votes are listed as coming from Senators Bonacic (R), Farley (R), Larkin (R), Maziarz (R), Nozzolio (R), and Seward (R).  If the Senators had voted along party lines, the vote would have been only 12 in favor with 13 against and the Bill would have been defeated within the Rules Committee.  It would not have reached the Floor for a vote.[44]

On the Floor of the Senate, there was a motion for a third reading of the Bill, which passed without opposition.  There was then a motion to accept the Message of Necessity, which passed without reading or opposition.[45]  According to the Rules of the NYS Senate, "No bill shall be passed pursuant to a message of necessity unless a majority of the Senators vote to approve the use of such message."[46]  Even a delay could have been engineered under Senate Rules; debate of adoption of up to 90 minutes could have been allotted at one-half hour for each Conference, such time to be allotted by Conference Leaders.[47]  It was one foregone procedural opportunity after another to halt or at least stall the Floor vote on the Bill.  In an age of social media and to a single-issue network such as that of Second Amendment supporters, every available minute could have been valuable.

Lieutenant Governor Robert H. Duffy, presiding over the Senate, then allowed 13 Senators to explain their votes.  Eleven Senators spoke in favor of the Bill; two

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 33 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 10



Senators spoke in opposition.  Each Senator was allotted up to two minutes.  This was not a debate; these remarks were made to explain individual votes.

The remarks of Senator Daniel L. Squadron were representative of those explaining an "Aye" vote, in favor of the Bill, as follows:

> "The assault weapons ban in this bill makes us best in the nation when it comes to banning the kind of military style weapons that have no business being on the street or in the hands of civilians – period."[48]

> "It also says that for the first time the Superintendent of the State Police is going to be telling us which guns aren't legal.  So if manufacturers try to get ahead of this ban, the Superintendent of the State Police is going to be right on their heels, making sure that we do not have assault weapons that are legal in this state."[49]

> "And, the sale, the transfer, and the possession, other than with very strict registration requirements, will be banned."[50]

Of the two voices in the NYS Senate explaining 'Nay" votes against the Bill, the words of Senator Greg Ball were clear.  "This Bill didn't save any lives tonight, except for one:  the political life of a Governor that wants to be president."[51]

The recording of the vote on S2230-2013 was then announced through a reading of the name of each Senator voting against the Bill, along with the vote tally of 43-18.  There was a motion to adjourn and the Senate adjourned for the day.[52]

Governor Cuomo's office promptly issued a Press Release praising the Senate for passage of the Bill in a "bipartisan, collaborative manner."[53]

## 2b.  Events of Tuesday, January 15, 2013

According to NYS Assemblyman Andrew Goodell, he received a copy of the Bill "…just before midnight on Monday [January 14].  There was no time whatsoever for me or the news media to publish the proposal so that the millions of people who are affected by it could have an opportunity to contact their legislators and express their views."[54]

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 34 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 11



On Tuesday, January 15, 2013, the NYS Assembly engaged in approximately four hours of debate and discussion of Assembly Bill A-2388, including various potential amendments to it.  The corresponding video is five hours and ten minutes in length.  The official transcript runs approximately 200-pages, of which there were 13 references to Remington, essentially the only named manufacturer out of the 160 Federal Firearms Licensees that manufactured firearms and ammunition in New York as of the vote.[55]  The Session began with note of the Senate Bill being before the House and the Message of Necessity being at the desk.[56]

Although, according to Assemblyman Jordan, the Bill had been published to them over 14-hours prior to the start of their Session,[57] Assembly Members had neither command of the statutory proposals nor answers to their questions.  Here is a sample exchange between two of the House Members who voted on the Bill:

Jordan:  What is the legal definition in New York of a second handgrip?

Lentol:  I don't think there's a legal definition.  It's a factual determination as to what constitutes a second handgrip.

Jordan:  And so, at what point are we going to provide our businesses in New York State with guidance statutorily as to what constitutes a second handgrip so they know whether or not an otherwise lawful rifle is now deemed unlawful under this statute?  Is there any provision in this to provide them with that guidance?

Lentol:  No, there isn't but –

Jordan:  Thank you.  Is there a definition in this bill for what constitutes a protruding grip, which I believe is another new addition that we have added?

Lentol:  I'm informed by counsel that the State Police, in their wisdom, have agreed to provide a website which will tell the public as well as the manufacturers what is legal and what is not legal.

Jordan:  And will the State Police website have the effective law?

Lentol:  No.  It will have the effective regulation, I presume.[58]

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 35 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                Page 12



And so it went, for the balance of the transcript with a repetitive acknowledgment that the law was ambiguous and would be controlled by the NYS Police, a law enforcement body under the direct control of the NYS Governor.

It is important to note the there are no regulations to accompany the Penal Law provisions, relating to the definition of "assault weapon."  New York State does not have a comparable process to the federal "Administrative Procedure Act,"[59] pursuant to which a Congressional delegation of authority to an executive branch agency proceeds through a formal and highly regulated rule-making process that includes publication and comment periods for proposed rules.  All of this means the NYS Police are in charge without legislative or public oversight.

Early on in the floor debate, an inquiry was made whether Remington Arms was contacted for input or involvement, and Assemblyman Joseph R. Lentol said, "I don't think they – did they participate?  They didn't participate.  They just wanted to know what we were doing."[60]

By contrast, NYS Assemblyman Marc Butler remarked:

> "Yesterday, we had a delegation of employees from Remington Arms here and, as you would expect, they're concerned about their jobs, their families and the future of the company.  It was an interesting lesson in civics and government for them because we couldn't give them here any details of the bill because it hadn't been printed at that time, mid-afternoon; yet, just a few hours later, the other house was voting on this bill.  Now, these are honorable and hard-working men and women who get up in the morning and do a good day's work and they deserved to be able to see and assess the legislation that may have such a tremendous impact on their lives."[61]

Assemblywoman Claudia Tenney echoed the narrative of Remington Arms employees appearing at the Capitol, adding "Unfortunately, because of the way this process was conducted, none of those people from Remington Arms got to meet with the Governor, although we did wait on the Second Floor for someone to come.  It's my

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 36 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 13



understanding that the Governor has never toured Remington Arms.  He's never met with the nearly 1,400 employees we have in Ilion, New York."[62]

The Assembly Bill was ordered to third reading with the Message of Necessity, and it passed the Bill by a vote of 104-43.

Assembly Bill A-2388 was returned to the Senate for delivery to the Governor.[63]

Without any official announcement by the Governor's office of Assembly passage of the Bill, Governor Cuomo issued a Press Release that he had signed the SAFE Act into law.[64]  His signature was affixed to the legislation less than one hour after the Assembly vote.[65]

## 2c.  Words, After the Fact

An endless array of comments was made by politicians after passage of the NY SAFE Act on very limited, repetitive themes.  From the supporters, the theme of having passed the toughest gun laws in the country, along with an expectation other states – and the federal government – should and would follow New York's lead.  From opponents, a theme that the process had been undemocratic and that the Second Amendment rights of gun owners had been infringed.

One of the co-sponsors of the Bill was Senator Jeffrey Klein.  He described passage of the Bill as the "first major legislative success" of the Senate's "bipartisan Majority Coalition."  Senator Klein's comments include:  "We've passed a full-throated ban on assault weapons.  We've taken high capacity magazines off of store shelves."[66]

On January 15, 2013, Senator Joseph Griffo issued a Press Release, which read in part:  "I could not support the legislation which was fast-tracked through the Senate last evening.  The legislation that was voted on did not go through the usual legislative process, and certainly was never negotiated in front of the public and in the light of day.  The late-night vote on such a critical issue violated the rights of New Yorkers to dialogue

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 37 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 14



with their legislators about this important bill."[67]  And, in part:  "…I am opposed to rushing a last minute agreement through the legislative process in the dead of the night."[68]

Senator Griffo went on in his statement to include: "Many constituents, who include workers at Ilion's landmark Remington Arms plant whose jobs are on the line, have been very clear in their communications to me that any new public safety legislation must be fully protective of their Second Amendment rights."

Assemblywoman Claudia Tenney stated:

> "Jobs, constitutional rights and our upstate culture are feeling the brunt of political rhetoric and action from downstate.  The most terrible aspect of how this assault on Upstaters was perpetuated is the means by which this bill was passed.  We were refused the requirement of 72 hours to read the bill, and within less than half an hour, my colleagues and I were able to find glaring legal mistakes, which the Majority refused to correct.  They told us we would have to accept on faith that amendments would be delivered at some undisclosed date and time so that law enforcement would not be hamstrung by the provisions found in this crudely and hastily manufactured law."[69]

Assemblywoman Tenney closed her statement with "We are expected to wait months before the necessary changes will be addressed."[70]

We went probably another two months before learning anything "new" on how the Governor had pulled off passage of the Bill.  In mid-March 2013 rumblings about amendments emerged during budget talks.  On March 20, 2013, Governor Cuomo participated in a press conference, ostensibly on the pending budget negotiations, but the first 17 minutes of media questions zeroed in on the SAFE Act.[71]  Throughout his answers, Governor Cuomo emphasized the amount of time his office had spent preparing the legislation:

> ➢ "There was no haste.  The gun bill was worked on probably ten times longer than this budget will have been worked on.  So if the gun bill was done in haste, what would you call the budget?"[72]

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 38 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                Page 15



> ➤ "The gun bill was worked on every day for weeks and weeks and weeks and weeks.  It probably was one of the most exhaustive amounts of staff hours of any piece of legislation we've done.  So, it was not hastily put together."[73]

> ➤ "Many people read it for many, many weeks, and didn't catch that inconsistency."[74]

> ➤ "It was not in public view for many, many weeks – obviously."[75]

What else is there for us to ask but this:  "Tell me again why you didn't publish the Bill and allow at least three days of public and legislative debate?"


## 3.   A New Low – Even by New York Standards

To say that the information we've detailed in this White Paper leads to more questions than it answers is to state the obvious.  Legislation worked upon for weeks can be circulated.  Legislators have procedural rules to slow down (if not stop) a bill from progressing out of committee and onto the floor for a vote.  Bills do not pass through normal legislative channels because they are not ripe and are not supported by consensus, and that is precisely how a mature democracy functions.


### 3a.  The Brennan Center Benchmark

Unfortunately, the New York state government does not meet the definition of a "mature democracy," by any metric.  In 2004, the Brennan Center for Justice released "The New York State Legislative Process: An Evaluation and Blueprint for Reform," which included its findings that New York was the most dysfunctional state in the nation.[76]  Highlights of the injuries inflicted by New York state government were defined to include:

- Failed representation – "Most legislators are effectively shut out of the legislative process, particularly at the most significant stage, when the leadership determines which bills should be passed and in what form."[77]

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 39 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 16



- Ineffective government without deliberativeness – "Voting procedures and abuse of the message of necessity allow bills to be passed without being reviewed by legislators."[78]

- Inaccessible government – "Members of the public, like their legislators, have no opportunities to comment upon or review legislation prior to its passage."[79]

- Absence of public accountability – "Indeed, legislators cannot make clear to their constituents the extremely limited roles they are allowed to play in Albany without undermining their own political interests in touting their legislative achievements."[80]

These conclusions by the Brennan Center, a nonpartisan law and policy institute at the New York University School of Law, reflect what has happened time and again in New York, not the least of which times included passage of the "SAFE Act."


## 3b.  Forced to Sue for Records

Beginning in January 2014, a group of requests for public records were submitted to the Governor's office and to the New York State Police relative to the "SAFE Act," including, but not limited to, its passage.  The requests were submitted by Bill Robinson, host of the "Second Amendment Radio Show," Larry Pratt, Executive Director of Gun Owners of America ("GOA"), and 33 members of the Monroe County Chapter of the Shooters Committee on Political Education ("SCOPE").

For ten months we went back-and-forth with the Governor's staff and with NYS Police, receiving only a few sheets of paper in response, including, for example, the letters from the Majority Leaders' Counsel, calling for the Governor to issue the Message of Necessity (referenced earlier in this White Paper).

In October 2014, lawsuits were commenced in NYS Supreme Court, Albany County to request judicial intervention to compel the Governor and the NYS Police to produce the requested public records.  A first appearance on these requests is scheduled for December 12, 2014, assuming the State doesn't request another adjournment.

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 40 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 17



## 3c.  Careers vs. Constituents

On the heels of our lawsuits and the Governor's autobiography, another story emerged around a "secret re-election pact" that Governor Cuomo brokered with Senate Republicans to essentially leave them alone in the Long Island Senators' re-election campaigns, run by Fredric U. Dicker for the New York Post, interviewing Michael Lawler, former New York Republican Party Executive Director.[81]  Lawler had just finished managing Rob Astorino's gubernatorial run against Governor Cuomo.  Two days later in a podcast with Dicker, Lawler added more names and details.[82]

## 3d.  And What Did Cuomo Get Out of the Deal?

Still another interesting question remains what happened to Governor Cuomo vis-à-vis President Obama.  It may seem like a small point, this business of the President of the United States delaying his announcement by one day following the multi-week and very public Biden Commission.  Perhaps it would have been, but for what President Obama ended up doing.

On Tuesday, January 15, 2013 when passage of the SAFE Act sent shock waves through Second Amendment advocates, more than 62,000 such supporters were on the floor of the SHOT Show in Las Vegas, Nevada, attending the industry's annual gun show.[83]  I was the only person at the convention center with a printed copy of Senate Bill 2230, which I had grabbed off the printer at 5 am that morning to read on the plane, not realizing it would be signed into law by the time I reached the baggage claim.

Name brand company officials from across New York and throughout the industry wanted to see the language in print and everyone was bracing for an Executive Order to issue from the White House akin to the 1994 Assault Weapons Ban.

Except that it didn't happen that way.

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 41 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 18



On Wednesday, January 16, 2013, the President of the United States unveiled his 23-point "Action Plan," which amounted largely to a series of recommendations for limited regulatory action through agencies.[84]  It wasn't an Executive Order.  And it was far from a gun ban.  The President's plan created as much disbelief as had the Governor's pursuit of the "SAFE Act."

With all of this in mind, when, in particular, you rewind the video of those who spoke on the NYS Senate floor that Monday night, you see an idiosyncratic over-confidence for impending national action that did not materialize.  The Senators spoke of "parallel and even stronger" action to be taken at the federal level by "colleagues in Washington, D.C." and legislation that will be "replicated" state by state and on the national level.[85]  It makes for a valid policy analysis question to ask whether we would have suffered the rush to pass the Bill, if the Governor and/or the Senators had known that federal reinforcement of their action wouldn't be forthcoming.  And, if New York had not taken action, would Connecticut and Maryland have slowed down and perhaps defeated their subsequent, similar legislation?

Although Governor Cuomo was reelected in November 2014, he should not call it a "victory."  Within the Democratic Party, he was subjected to a primary election in September 2014 where his opponent, a woman named Zephyr Teachout, won 30 out of 62 counties[86] on a shoestring budget[87] with barely any staff and almost no campaign appearances west of the Hudson River.  The Governor subsequently won the general election against Rob Astorino (R) only because of votes in a handful of populous counties comprising New York City.[88]  The Governor's low approval rating on this and other issues like Common Core, the Women's Equality Agenda, and hydro-fracking pushed nearly 5% of voters statewide onto the line for the Green Party.

Thus far in response to our requests for public records, the Governor's Staff has insisted that they have conducted a thorough review of available records and that there are no records of any drafts of the Bill having been transmitted to or from the Governor

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 42 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 19



prior to the votes.  We also asked for any records of communication between the Governor and the White House.  Did Cuomo think he was collaborating with the White House for a leg up over Clinton in a 2016 primary, but then find himself out maneuvered by a President who already owed Clinton and was now on deck to take out her upcoming competition?

It may be that the only thing that is clear is that law abiding gun owners in New York got caught in the crosshairs of political subterfuge that had nothing to do with the Second Amendment, nothing to do with self-defense or defense of home or family, nothing to do with the shooting sports, and even less than nothing to do with public safety.  There is not one shred of evidence in the public records of January 14 and 15, 2013 that support passage of the specific provisions contained within the Bill.  Further, nothing was added by the 2,500-page District Court record generated in large part by the Attorneys for the State in the lawsuit challenging "assault weapons" provisions, namely, *NYSRPA vs. Cuomo*.[89]

In his autobiography, Governor Cuomo claims responsibility for saving lives through the SAFE Act that he should have been able to save all along, if only he had been the one in charge in Washington when he was working for the Department of Housing and Urban Development.[90]  But, even more so, he portrays himself as a victim, terrified and traumatized by nuclear bomb drills in grammar school,[91] frightened of protesters outside his father's house,[92] driving blocks out of his way to avoid being mocked at a job site,[93] desperate and disoriented when alone in a boat in the fog,[94] and broken and lost in powerful emotions during his divorce.[95]

On April 1, 2014, a "Turn Albany Upside Down" rally was held in the West Capitol Park, drawing several thousand people from across the state.  Advance permits were obtained and fees were paid.[96]  Pre-ordained restrictions as to time, manner, and place were followed.  Insurance certificates were provided.  That morning, a "facility specific rule banning fake weapons" was imposed by the NYS Office of General Services.[97]  The

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 43 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 20



official report, as received through Freedom of Information requests?  "There were no reportable incidents or arrests made.  I checked with 2nd Floor Chamber-Desk and Senate Sergeant of Arms who reported a non-eventful day at the Capitol.  All check points into Capitol and LOB reported no issues."[98]

In his autobiography, the Governor claims that during the rally protestors hung his effigy.[99]

The actual image at the rally?  A life-sized Governor with strings attached to hands and feet, portrayed as a marionette.

## 4. CONCLUSION

Governor Cuomo colluded with Senate and Assembly Leaders to ram the "SAFE Act" into being through a tortured process that was far from "democratic," even by New York political standards.  A Bill that had been worked on for weeks by Governor Cuomo, Senator Skelos, and Assemblyman Silver was not made available for public comment in advance of the votes.  It was not even made available to those Senators and Assemblymen who voted upon it.  It was a singular, unrepentant grab for power when the political window of opportunity opened.

The Governor may have paid some price for his actions, as the man who wanted to run for president plunged in the approval ratings, faced a primary within his own party, and was reelected by the lowest number of reelection votes of any governor in the United States during the 2014 cycle.  But, how much did any of the three pay, really?  The Governor was re-elected for a second, four-year term, and the same men were re-elected as the Leaders of their respective conferences.

Ultimately, it is we, The People, who are paying the highest price, especially in those many counties where voters defeated Cuomo, sometimes by more than a 60-point spread.  The law, badly drafted, has not been corrected.  Implementation has been largely through

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 44 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 21



the NYS Police at the Governor's direction.  Only one major, federal constitutional lawsuit is currently progressing.  And we may have to rely upon years of additional lawsuits and bills to change or overturn provisions, one by one, to try to restore some of our fundamental rights.

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 45 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 22



# ENDNOTES

[1] Cuomo, Andrew, <u>All Things Possible</u>, Harper (2014)*,* p. 411.

[2] Cuomo, *ibid.,* p. 412.

[3] Wilson, Scott, "Biden to oversee White House effort to reduce gun violence," The Washington Post (December 19, 2012); accessed 11/12/2014 at http://www.washingtonpost.com/blogs/post-politics/wp/2012/12/19/biden-to-oversee-white-house-effort-to-reduce-gun-violence/

[4] Official website of the President of the United States, "Now is the Time;" accessed 11/12/2014 at http://www.whitehouse.gov/issues/preventing-gun-violence.

[5] Kaplan, Thomas, "Cuomo Says He'll Outline Gun Proposal Next Month," The New York Times (December 20, 2012); accessed 11/12/2014 at http://www.nytimes.com/2012/12/21/nyregion/cuomo-says-he-will-outline-gun-measures-next-month.html?_r=0.

[6] Adams, Becket, "Here's the Audio of the NY Gov. Talking Gun Control: 'Confiscation Could be an Option'," The Blaze (December 21, 2012) accessed 11/12/2014 at http://www.theblaze.com/stories/2012/12/21/heres-the-audio-of-ny-gov-talking-gun-control-confiscation-could-be-an-option/.

[7] Cuomo, *supra,* p. 435.

[8] Cuomo, *ibid.,* p. 437.

[9] Official website of the New York State Senate, "Senator Skelos Unveils Tough Plan to Crack Down on Illegal Guns and Criminals Who Use Guns" (January 5, 2013); accessed 11/12/2014 at http://www.nysenate.gov/press-release/senator-skelos-unveils-tough-plan-crack-down-illegal-guns-and-criminals-who-use-guns.

[10] Lovett, Kenneth, "Gov. Andrew Cuomo eyeing all-out assault on GOP if it continues to hold up his plan to institute the nation's toughest gun-control laws," NY Daily News (January 6, 2013); accessed on 11/12/2014 at http://www.nydailynews.com/new-york/gov-andrew-cuomo-launch-public-relations-attack-gop-article-1.1234543.

[11] Official website of Governor Andrew M. Cuomo of the State of New York, "2013 State of the State" (January 9, 2013); video accessed 11/12/2014 at http://www.governor.ny.gov/NY/2013-State-of-the-State, at 1:25.  The link to the PowerPoint presentation is available at the same website page.

[12] *Ibid.,* at 1:46.  See, also, Walshe, Shushannah, "NY Gov. Andrew Cuomo Proposes 'Toughest Assault Weapon Ban in the Nation'," ABC News (January 9, 2013); accessed 11/12/2014 at http://abcnews.go.com/Politics/york-gov-andrew-cuomo-proposes-tough-gun-laws/story?id=18174071.

[13] The Governor repeatedly claims to have hunted, but the only photograph in circulation of him with a shotgun was taken in 2000 at Savannah Dhu in Wayne County, NY.  (See, e.g., Okyay, Raquel, "Cuomo Refuses to Hand Over Documents His Troopers Bullying at April Gun Rights Rally," Human Events (November 3, 2014); accessed 11/12/2014 at http://humanevents.com/2014/11/03/cuomo-refuses-to-hand-over-documents-his-troopers-bullying-at-april-gun-rights-rally/.)  We could locate no witness who has seen him fire a gun or who has seen him kill any game.

[14] Howerton, Jason, "'The Toughest Assault Weapon Ban in the Nation, Period!' and Other Sweeping Gun Control Proposals by NY Gov. Cuomo," The Blaze (January 9, 2013); accessed 11/12/2014 at

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 46 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                     Page 23



http://www.theblaze.com/stories/2013/01/09/the-toughest-assault-weapon-ban-in-the-nation-period-and-other-sweeping-gun-control-proposals-by-ny-gov-cuomo/.

[15] Cuomo, *supra*, p. 437.

[16] Official website of the President of the United States, "White House Schedule" (January 14, 2013); accessed on 11/12/2014 at http://www.whitehouse.gov/schedule/complete/2013-01-14.  See additional detail, including the list of Democratic Members attending discussion with Vice President Biden at Mooney, Alexander, "Monday, January 14 at the White House: Gun Control Talks Continue," CNN (January 14, 2013); accessed on 11/12/2014 at http://whitehouse.blogs.cnn.com/2013/01/14/monday-january-14-at-the-white-house-gun-control-talks-continue/.

[17] Official website of the President of the United States, "White House Schedule" (January 16, 2013); accessed on 11/12/2014 at http://www.whitehouse.gov/schedule/complete/2013-01-16.

[18] Liberatore, Gary, "Remington Arms workers take their fight to Albany," WKTV New Channel (January 14, 2013); accessed on 11/12/2014 at http://www.wktv.com/news/local/Remington-Arms-workers-on-way-to-Albany-to-fight-for-their-jobs-186823441.html.

[19] *Ibid.,* associated video.

[20] Vielkind, Jimmy, "Marchione: Split the gun bill," Capitol Confidential (posted January 14, 2013 at 6:37 pm); accessed on 11/12/2014 at http://blog.timesunion.com/capitol/archives/175816/marchione-split-the-gun-bill/.

[21] Official website of New York Governor Andrew M. Cuomo, "Governor Cuomo Holds Briefing on his Gun Legislation Proposal" (January 14, 2013); accessed on 11/12/2014 at http://www.governor.ny.gov/news/january-14-2013-governor-cuomo-holds-briefing-his-gun-legislation-proposal.

[22] *Ibid*., at 7:00.

[23] *Ibid.,* at 7:30.

[24] *Ibid.,* at 8:00.

[25] *Ibid.,* at 15:30.

[26] Barkan, Ross, "Bill de Blasio Appoints Criminal Justice Team," New York Observer (March 11, 2014); accessed on 11/12/2014 at http://observer.com/2014/03/bill-de-blasio-appoints-host-of-criminal-justice-positions/.

[27] Blain, Glenn, "Gov. Cuomo's former counsel Mylan Denerstein joins Manhattan law firm," NY Daily News (November 7, 2014); accessed on 11/12/2014 at http://www.nydailynews.com/blogs/dailypolitics/mylan-denerstein-counsel-gov-cuomo-new-job-blog-entry-1.2003058.  Ms. Denerstein is also credited with drafting language for the same-sex marriage law in "Counsel to Cuomo Steps Down," by Erica Orden for the Wall Street Journal (September 9, 2014); accessed on 11/12/2014 at http://online.wsj.com/articles/counsel-to-cuomo-steps-down-1410299915.

[28] Sharp, Brian, "Bob Duffy: 'I made my decision'," Democrat & Chronicle (May 7, 2014); accessed on 11/12/2014 at http://www.democratandchronicle.com/story/news/2014/05/07/bob-duffy-andrew-cuomo-resign/8826953/.

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 47 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 24



[29] Governor Cuomo Briefing (January 14, 2013), *supra,* at 16:00.

[30] *Ibid.,* at 16:30.

[31] *Ibid.,* at 17:50.

[32] *Ibid.,* at 23:10.

[33] Letter from Diane X. Burman, Counsel to the Senate Majority to Mylan Denerstein, Counsel to the Governor (dated January 14, 2013).

[34] Letter from James Yates, Counsel to the Speaker, Assembly of the State of New York to Mylan Denerstein, Counsel to the Governor (dated January 14, 2013).

[35] Reisman, Nick, "Cuomo's Message of Necessity on Guns," Capital Tonight (January 16, 2013); accessed 11/12/2014 at http://capitaltonightny.ynn.com/2013/01/cuomos-message-of-necessity-on-guns/

[36] Official website of the New York Department of State, "The Constitution of the State of New York,"; accessed on 11/12/2014 at http://www.dos.ny.gov/info/constitution.htm

[37] Official website of NYS Senator John J. Bonacic, "Statement by Senator John Bonacic: on Gun Control Legislation" (January 15, 2013); accessed 11/12/2014 at http://www.nysenate.gov/press-release/statement-senator-john-bonacic-gun-control-legislation.

[38] Official website of the NYS Senate, "Session: Senate Session 01-14-13;" accessed 11/12/2014 at http://www.nysenate.gov/event/2013/jan/14/senate-session-01-14-13

[39] *Ibid.*

[40] Official website of the NYS Senate, Rules Committee, "Committee Meeting: Rules Meeting" (January 14, 2013); accessed 11/12/2014 at http://www.nysenate.gov/event/2013/jan/14/rules-meeting.

[41] *Ibid.*

[42] NYS Senate, "Session: Senate Session 01-14-13," *supra.*

[43] Official website of the NYS Senate, "S2230-2013: Enacts the NY SAFE Act of 2013" (same as A2388-2013); accessed 11/12/2014 at http://open.nysenate.gov/legislation/bill/s2230-2013.

[44] No reconciliation is made that the Rules of the NYS Senate for the 2013-2014 term state that the Rules Committee shall consist of 23 Senators (Rule VIII, Section 1); accessed 11/12/2014 at http://open.nysenate.gov/legislation/rules.

[45] NYS Senate, "Session: Senate Session 01-14-13," *supra.*

[46] Official website of the NYS Senate, "Rules of the Senate of the State of New York (2013-2014)," Rule IX, Section 1; *supra.*

[47] *Ibid.,* at Rule VIII, Section 1(d)(2).

[48] NYS Senate, "Session: Senate Session 01-14-13," *supra,* at 32:28.

[49] *Ibid.,* at 33:05.

[50] *Ibid.,* at 33:20.

[51] *Ibid.,* at 47:00.

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 48 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 25



[52] *Ibid.*

[53] Official website of New York Governor Andrew M. Cuomo, "Statement from Governor Andrew M. Cuomo on Senate Passage of NY SAFE Act" (January 14, 2013); accessed 11/12/2014 at http://www.governor.ny.gov/press/01142013nysafeact-statement.

[54] Karlin, Rick, "Gun law: 'Message of necessity' or politics?" Times Union, January 17, 2013; accessed 03/21/2013 at http://www.timesunion.com/local/article/Message-of-necessity-or-politics-4200605.php.

[55] Official website of the NYS Assembly, "Live Stream of Legislative Proceedings: Archived Videos (1-15-13 Session)" (printed transcript version); accessed 11/12/2014 at http://nystateassembly.granicus.com/DocumentViewer.php?file=nystateassembly_e154019199755192c41f9f5c398d7269.pdf&view=1&showpdf=1.  Assemblyman Losquadro mentioned his personal ownership of a Glock 19; *ibid.,* pp. 34-35.  He also referenced the Colt AR-15/M16 design and the Colt 1911 style magazine; *ibid.,* p. 35.  Assemblyman Lentol mentioned Glock as an example of a handgun; *ibid.,* p. 64.  The Bushmaster is referenced as a "weapon of mass destruction" by Assemblyman Perry; *ibid.,* p. 194.

[56] NYS Assembly transcript, *ibid.,* p. 6.

[57] *Ibid.,* p. 8.

[58] *Ibid.,* pp. 11-12.

[59] 5 U.S.C. §551, *et seq.*

[60] *Ibid.*, pp. 28-29.

[61] *Ibid.*, pp. 30-31.

[62] *Ibid.*, p. 131.

[63] Official website of the NYS Senate, S2230-2013, *supra.;* accessed 11/12/2014 at http://open.nysenate.gov/legislation/bill/s2230-2013.

[64] Official website of New York Governor Andrew M. Cuomo, "Governor Cuomo Signs Groundbreaking Legislation That Will Give New York State the Toughest Protections Against Gun Violence in the Nation" (January 15, 2013); accessed 11/12/2014 at http://www.governor.ny.gov/press/01152013-outline-of-nys-groundbreaking-gun-legislation.

[65] Kaplan, Thomas, "Sweeping Limits on Guns Become Law in New York," The New York Times (January 15, 2013); accessed on 11/12/2014 at http://www.nytimes.com/2013/01/16/nyregion/tougher-gun-law-in-new-york.html.

[66] Official website of NYS Senator Jeffrey D. Klein, "Senate Co-leader Jeff Klein Leads Bipartisan Passage of Landmark Gun Control Legislation in Senate" (January 24, 2013); accessed 11/12/2014 at http://www.nysenate.gov/press-release/senate-co-leader-jeff-klein-leads-bipartisan-passage-landmark-gun-control-legislation- (accessed 11/12/2014).

[67] Official website of NYS Senator Joseph A. Griffo, "Senator Griffo's Statement on Senate Bill 2230," (January 15, 2013); accessed 11/12/2014 at http://www.nysenate.gov/press-release/senator-griffos-statement-senate-bill-2230.

[68] *Ibid.*

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 49 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 26



[69] Official website of NYS Assemblywoman Claudia Tenney, "Political Capital Made at the Expense of Constitutional Rights" (January 15, 2013); accessed 11/12/2014 at http://assembly.state.ny.us/mem/Claudia-Tenney/story/50352/.

[70] Ibid.

[71] Weaver, Teri, "Listen to Governor Cuomo's news conference about gun law, state budget," Syracuse Post Standard (March 20, 2013); accessed 11/12/2014 at http://www.syracuse.com/news/index.ssf/2013/03/post_799.html; MP3 of press conference accessed 11/12/2014 at http://media.syracuse.com/news/audio/Governor%20Cuomo's%203-20-13%20news%20conference.mp3.

[72] Cuomo news conference (March 20, 2013), ibid., at 2:20.

[73] Ibid., at 3:00.

[74] Ibid., at 5:25.

[75] Ibid., at 5:35.

[76] Creelan, Jeremy M. and Moulton, Laura M., "The New York State Legislative Process: An Evaluation and Blueprint for Reform," Brennan Center for Justice at the New York University School of Law (2004); accessed 11/12/2014 at http://www.brennancenter.org/publication/new-york-state-legislative-process-evaluation-and-blueprint-reform.

[77] Ibid., p. 60.

[78] Ibid.

[79] Ibid.

[80] Ibid., p. 61.

[81] Dicker, Frederic U., "Cuomo had a secret re-election 'pact' with Republicans," New York Post (November 10, 2014); accessed 11/12/2014 at http://nypost.com/2014/11/10/cuomo-had-a-secret-re-election-pact-with-republicans/.

[82] Talk 1300 radio and podcasts, "Live from the State Capitol," (November 13, 2014); accessed 11/14/2014 at http://www.talk1300.com/CMT/podcast/LiveFromtheStateCapitolNovember132014.mp3.

[83] Dalseide, Lars, "Shooting, Hunting and Outdoor Trade show ends with record numbers," NRAblog.com (January 18, 2013); accessed 11/12/2014 at http://www.nrablog.com/post/2013/01/18/SHOT-Show-2013-comes-to-a-close-at-the-Sands-Expo-Center-in-Las-Vegas.aspx.

[84] Official website of the White House, "Now Is The Time" (January 16, 2013); accessed 11/12/2014 at http://www.whitehouse.gov/sites/default/files/docs/wh_now_is_the_time_full.pdf.

[85] NYS Senate, Session 01-14-13, supra, at 34:30.

[86] Official website of the New York State Board of Elections, "2014 Election Results;" accessed 11/12/2014 at http://www.elections.ny.gov/2014ElectionResults.html.

[87] The "Zephyr for New York Inc." campaign 11-day pre-primary report showed a closing balance of $233,773.24; accessed on 11/12/2014 at http://www.elections.ny.gov:8080/plsql_browser/efs_summary_page?comid_in=A19932&rdate_in=29-

Case 6:14-cv-06709-CJS   Document 3-13   Filed 01/15/15   Page 50 of 60

The Long Road to the SAFE Act:  How Did Cuomo Do It So Fast?                    Page 27



AUG-2014&reportid_in=B&eyear_in=2014.  This figure compares to the "Cuomo Hochul 2014, Inc." report for the same time period with a closing balance of $30,591,160; accessed 11/12/2014 at http://www.elections.ny.gov:8080/plsql_browser/efs_summary_page?comid_in=A31966&rdate_in=29-AUG-2014&reportid_in=B&eyear_in=2014.

[88] Official website of the New York State Board of Elections, "New York State Unofficial Election Night Results" (note that the certified results had not yet posted) (undated); accessed 11/12/2014 at http://nyenr.elections.state.ny.us/.

[89] The case is currently on appeal to the Second Circuit Court of Appeals, and oral arguments are scheduled for Tuesday, December 9, 2014.  See our detailed White Paper, "The State's Case in NYSRPA vs. Cuomo:  What the State Wants You to Believe About the [UN]SAFE Act," by Paloma A. Capanna for the Second Amendment Coalition (September 2014).

[90] Cuomo, *supra,* pp. 434, 441, and 446.

[91] *Ibid.,* p. 206.

[92] *Ibid.,* p. 14.

[93] *Ibid.,* p. 236.

[94] *Ibid.,* p. 236.

[95] *Ibid.,* pp. 233, 234, and 237.

[96] "Permit to Demonstrate," approved by NYS Police and by NYS Office of General Services (March 31, 2014).  See also e-mail from OGS Legal Services, Paula B. Hanlon, Senior Attorney, subject "Dockmaster Form" (sent March 31, 2014).

[97] NYS Office of General Services, from Roger Fortune, to "File," titled "Memorandum" (April 1, 2014).

[98] E-mail from Lieutenant Brian Colwell to Major James (April 1, 2014 at 3:32 pm).

[99] *Ibid.,* p. 410.

# ORGANIZATION

Full name:  **The Second Amendment Coalition**

The Second Amendment Coalition was launched in July 2014 to provide accurate information on firearms to the public and to combat the misinformation produced by gun control advocates.  Comprised of more than 30 groups at its inception, the Second Amendment Coalition will be producing original materials to advance support for the Second Amendment.  Its Second Amendment Coalition Resource Center will be a storehouse for public and proprietary resource materials, as well as hosting conferences and training.

Groups and individuals that support the civil liberties embodied in the Second Amendment are encouraged to contact us through SCOPE at (716) 941-3286, www.SCOPEny.org.

# AUTHOR

Full name:  **Paloma A. Capanna**

Title: **Attorney & Policy Analyst**

Paloma is an attorney and policy analyst in private practice with more than 20 years of litigation experience at the trial and appellate levels in state and federal courts.  Her current clients include SCOPE, Empire State Arms Collectors, Gun Owners of America, and Bill Robinson of the "Second Amendment Radio Show."  She recently authored an Amicus Brief to the Second Circuit Court of Appeals in the case of *NYSRPA vs. Cuomo*.  Earlier this year, the Regent Journal of Law & Public Policy published Paloma's article on the *Heller* "common usage" standard.  Paloma is also part of the team at Orchid Advisors, helping manufacturers of firearms and ammunition navigate the demands of federal and state laws and regulations.  Paloma is a frequent guest speaker, most recently including the Gun Rights Policy Conference and a public debate at Binghamton University.



## Subscribe to the White Paper Series - 2015

Your financial support is vital for the on-going White Paper Series from the Second Amendment Coalition.  Become a subscriber and receive home delivery of the 2015 White Paper Series.  A subscription ensures you will be kept abreast of the latest research, trending topics, and political actions impacting the Second Amendment.  It also means you will help us expand the reach of this publication and other important research, publishing, and presentation activities of the Second Amendment Coalition.

**Please submit your subscription form ASAP.**

✂-----✂-----✂-----✂-----✂-----✂-----✂-----✂-----✂-----✂-----✂-----✂-----✂

☐  1-year subscription for six (6) White Papers for $75

☐  become a recognized sponsor for an additional $150 donation

Name: _____

Address: _____

_____

Telephone: _____

E-mail: _____

Method of payment:

☐  check or money order enclosed

☐  credit card

account number: _____

expiration date: _____        security code: _____

**SEND PAYMENT TO**:
SCOPE Legal Defense Fund
8316 Irish Road
Colden, New York 14033

*Montgomery vs. Cuomo*

# Exhibit Group H

Exhibit #35 – Utah letter (2014)



**Department of Public Safety**

KEITH D. SQUIRES
*Commissioner*

**State of Utah**

GARY R. HERBERT
*Governor*

SPENCER J. COX
*Lieutenant Governor*

August 21, 2014



Re: Concealed Firearm Permit Application

Dear Mr. B▇▇▇▇▇

This letter is to notify you that your application for a renewal Utah Concealed Firearm Permit is hereby denied based on your ▇▇▇▇▇▇, 2013, NICS entry as a federally denied person (Adjudicated Mental Defective/Committed to a Mental Institution) through the State of New York. The NICS Index is a nationally populated federally denied person file. <u>You must be removed from the NICS index prior to obtaining a Utah concealed firearm permit.</u>

The denial is in accordance with Utah Code Ann. § 53-5-704(2)(a)(viii) which states the bureau may deny, suspend, or revoke a concealed firearm permit if the applicant or permit holder is not qualified to purchase and possess a firearm pursuant to Section 76-10-503 and federal law.

You may appeal BCI's decision in person to the Concealed Firearm Review Board by filing a written petition for review within sixty (60) days from the date you receive this letter. The petition should be mailed to BCI at the address listed on the bottom of this page.

If you have any questions regarding this matter, you can contact me at **(801) 957-8512**.

Sincerely,

Jeff Dunn
Firearms Investigator II
Utah Department of Public Safety
Bureau of Criminal Identification

*Montgomery vs. Cuomo*

Exhibit Group H

Exhibit #36 – Order Reinstating Permit (2014)

STATE OF NEW YORK
COUNTY COURT   COUNTY OF ███████
_____

In the Matter of the Suspension of a Certain
Pistol Permit issued to

     K████████████                    **ORDER**
                                          **REINSTATING PERMIT**

Issued under the date of █████████being
County of ██████ Pistol Permit No. C-█████
_____

    **WHEREAS** under date of ███████ the County of ██████ License to
Carry Pistol Permit No. C-█████ was issued to K███████, ███████, ███████,
and

    **WHEREAS** by Order of this Court dated ████████ 2013, said permit was suspended
and the permit and all handguns were ordered surrendered to the New York State Police; and

    **WHEREAS** a hearing was held on ████████ 2014, at which ████████ Esq.
appeared representing the ██████ County Attorney's Office; and ██████████ Esq.
appeared representing K█████████, and the Court having heard testimony from K████████
██████,

    **IT IS HEREBY ORDERED** that said Pistol Permit, being County of ██████ Permit No.
C-█████ be and the same is REINSTATED; and

    **IT IS FURTHER ORDERED** that the New York State Police Department is ordered to
release the permit and all handguns now being held to K███████

    Signed at Canandaigua, New York, on ████████ 2014.

_____
Hon. ███████████
County Court Judge

*Montgomery vs. Cuomo*

Exhibit Group H

Exhibit #37 – NYS Police letter (2014)



### NEW YORK STATE POLICE
### PISTOL PERMITS
### BUILDING 22
### 1220 WASHINGTON AVE.
### ALBANY, N. Y.  12226-2252
Fax # 518-869-3819
Phone # 518-464-7120

# *CONFIDENTIAL FAX*

**To:** ▇▇▇County Clerks Office: Attn:▇▇▇▇▇ - Fax-▇▇▇▇

**From: Technical Sergeant Timothy K. Jackson**

**Date:** ▇▇▇13

**Re: MHL 9.46 Notification Letter for: K▇▇▇▇▇ –DOB-▇▇▇**

**PAGES: 3 (includes fax cover sheet)**

#### Fax Cover Disclaimer
The contents of this Fax message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by fax and then destroy this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.





JOSEPH A. D'AMICO
SUPERINTENDENT

**NEW YORK STATE POLICE
BUILDING 22
1220 WASHINGTON AVE.
ALBANY, N. Y. 12226-2252**

September 17, 2013



Attn: Pistol Permit Office

Pursuant to section 9.46 of the Mental Hygiene Law, the Division of State Police provides notice that a mental health professional has determined, and the Director of Community Services has concurred, that a person identified as K█████████, date of birth █████████, is "likely to engage in conduct that will cause serious harm to self or others." The New York State Police has made a non-fingerprint-based identification consistent with a subject bearing the same name and non-clinical identifying information who is a licensee or an applicant for a firearms license in your jurisdiction.

Please be aware that the identity of the subject is based on a match of the following information:

ð Name:            K█████████

ð Date of Birth:   █████████

ð Other:           Address: █████████████████

                   Gender:  Male

                   Race:    White

Therefore, pursuant to the New York Secure Ammunition and Firearms Act (NY SAFE Act, Chapter 1 of the Laws of 2013), the State Police provides the enclosed information for your immediate review to enable licensing officers, or any judge or justice of a court of record, to take appropriate action before you revoke or suspend the subject's license or deny the subject's application.

To assist in further identifying the individual, the contact information of the reporting medical professional and the State Police Member assigned to this notification is below:

## MH PROFESSIONAL CONTACT INFORMATION

MHP Name: ███████████

MHP Phone: ███████████

MHP Email: ████████████████

## NYSP MEMBER WHO INVESTIGATED NOTIFICATION

Name: Technical Sergeant Timothy Jackson

Phone: (518) 464-7120

In the event that a suspension or revocation order is issued, please provide the name of the law enforcement agency to which the order was referred.

This notification should be handled with attention given to strict confidentiality. Thank you in advance for your immediate attention to this matter.

Very truly yours,

James E. Sherman
Technical Lieutenant
Pistol Permit Bureau
New York State Police