*Paloma A. Capanna*
*Attorney & Policy Analyst*

---

633 Lake Road                                                                                                            (585) 377-7260
Webster, New York 14580                                                                                          fax (585) 377-7268

January 23, 2015

Hon. Charles J. Siragusa
United States District Judge
1360 U.S. Courthouse
100 State Street                                                                          *via CM/ECF*
Rochester, New York 14614                                                   *and via facsimile*

Re:   *Montgomery vs. Cuomo, et al.*
       Docket No.: 6:14-cv-06709

To the Hon. Charles J. Siragusa:

This letter is being submitted the evening of Friday, January 23, 2015, largely as a stop-gap measure to begin a response to the correspondence of Mr. Taylor of this date.

I have not received a Notice of Appearance nor had other communication from either Mr. Baptiste or Ms. Brennan. I copy them as a professional courtesy as Mr. Taylor is, by his letter, indicating their intention to represent The Suffolk County Sheriff's Department and the Eastern Long Island Hospital, respectively.

I did speak this afternoon while in transit following an out of area hearing with attorneys Monica Connell and William Taylor via speakerphone. I did agree to the extension of the State's responsive pleading or motion to the Complaint until Friday, January 30, 2015.[1]

When it was expressed that a letter would be submitted with a request for various items, it was not articulated that it would be a six-page letter with citations. As it is Friday evening and I am – as I said I would – reviewing their letter and submitting a response, what I am going to do is submit this brief walk through so that it is submitted.

---

[1] *N.B.*: in his final paragraph, Mr. Taylor requests a stay of the current January 27, 2015 deadline to respond to the Complaint. I did agree for this date to move to January 30, 2015, as our conversation was happening on a Friday afternoon.

I read Mr. Taylor's letter to indicate that at some future point he will submit a formal motion to the Court for the relief that he seeks. I urge the Court to proceed with its scheduling order of answering submissions by January 30 and oral arguments on February 5 regarding the Motion for the Preliminary Injunction. The Defendants were served with the Summons and Complaint on January 6, 2015 and this is the first communication I have received from them in nearly three weeks. Two Defendants have yet to appear.

I would suggest as a practical matter that we complete the Motion for the Preliminary Injunction and then conduct a conference with all Counsel present, immediately following.

Because Mr. Taylor's letter goes into such depth, however, including numerous citations, I am loathe not to respond to the balance of his letter, although I am concerned that it somewhat confuses the situation. He is requesting an extension, stating that he would intend to submit formal motions, and asking for a conference, but then he makes motion-style arguments in a letter. And so I respond at least through an informal letter to ensure some kind of a prompt response, but without taking the time to insert legal formalities, which I trust I can later provide if a formal motion(s) is indeed filed.

It appears that Counsel has somewhat missed the point of the lawsuit. In a very simplified manner, the question is to what degree the state will be permitted to trample privacy rights in its efforts to steal Second Amendment rights. The lead is not a question of whether the state can impose any restrictions on a permit or even a firearm sale. The issue is how far the state will be permitted to go to improperly obtain otherwise confidential information from a vast sea of people in order to target firearms owners to both take away their fundamental Second Amendment rights and their firearms. This case is, I believe, a watershed question, that will map out the intersection of privacy rights and Second Amendment rights, particularly with respect to confidential medical information that does not qualify as an adjudication of a "mental defect" or an "involuntary commitment."

The questions that then flow off of the primary spine of the case include the targeting of those with a mental health diagnosis under the Equal Protection Clause, failing even to provide notification let alone meaningful redress under the Due Process Clause, and so forth. As I stated in the Motion, all of this in this early Motion is without even getting

into the plethora of problems this kind of behavior evidences through the lenses of the Fourth and Fifth Amendments.

Unlike the *Tyler vs. Hillsdale* case out of the Sixth Circuit and discussed in my Memorandum of Law, we are not seeking to strike down mental health as a disqualifying event under 18 U.S.C. §922(g)(4). Indeed, we are arguing that the federal disqualification, background check, and appeals process provides a public safety function, setting a minimum threshhold beneath which the State may not dip. We are equally not seeking to challenge whether the pre-existing process of county licensing officer review of medical and mental health history and events is invalid, nor are we seeking to challenge the pre-existing structure of Mental Hygiene Law Article 9 as it offered pre-existing routes for involuntary and voluntary commitments. Any one of these other roads may contain challenges for another day.

We are focused in this instance on the abuse and overreach of MHL §9.46 and its "likelihood" standard, the false marketing of the statute by OMH to lure the medical profession to become agents of the State, and the excesses and pressures of DCJS and the NYSP to suppress the independent authority of the county licensing officers with regard to pistol permits and to firearms confiscation.

The issues presented by this case are not limited to the Second Amendment or to gun owners. Indeed, the statistics from the NY Times FOIL article and from the testimony of Attorney Jeb Wolkenbreit suggest that the overwhelming majority of persons injured by the actions of the Defendants are not pistol permit holders, and we have asserted that such persons could not identify themselves and the extent of their injuries if they tried. Hence, the caption of "Donald Montgomery, on behalf of himself, and all other persons similarly situated."

I think what the State may also be missing is that the feeders for the statewide database appear to be several different data sources being blended together, including, but not limited to, MHL §9.46 ISARS reports, involuntary commitment orders, guardianship orders, "assault weapons" registrations, pistol licenses, and even developmental disabilities. It appears that there are multiple data in-roads and that once data goes in, it freely circulates throughout a statewide system, which filters down to the counties and also to local law enforcement. The statewide database breaches confidential medical information and then jumps the fence to make it law enforcement accessible.

The letter from the hospital is not dispositive of Mr. Montgomery's standing to challenge MHL §9.46. Simply put, the letter does not make sense. The medical records do not support the tag of an "involuntary commitment." State agencies are responsible for periodic data uploads into the NICS Index; not private medical providers. And the person who spoke to Mr. Montgomery indicated that every person going through the Emergency Room doors was tagged "involuntary commitment," which jives with Attorney Wolkenbreit's testimony that various hospitals were reporting every patient being admitted through the Emergency Department to OMH for ISARS purposes. What we will not know until we conduct discovery is how the wrongful data for Mr. Montgomery was actually uploaded and circulated.

What you do not see in Mr. Taylor's letter is any argument that even one word of our description of the State's actions is in any way inaccurate or false. The letter tells me that (a.) we're right so far, but don't have it all; and (b.) that the State is going to fight like hell to both keep us from reaching a discovery phase and from shutting down ISARS and having to provide notification to tens of thousands of people.

This case is very different from both the facts and the questions within *NYSRPA vs. Cuomo*. In that case, the primary question has to do with the validity of Penal Law §265.00(11), the definition of the "assault weapon" vis-à-vis the Second Amendment, *Heller*, and *MacDonald*. It is a very pure Second Amendment question. In that case, not a single one of the myriad of co-plaintiffs had been arrested for possession of or failing to register an "assault weapon" and several of them were Federal Firearms Licensees with commerce arguments that were not advanced to the Second Circuit Court of Appeals. Judge Skretny was clear in his Decision and Order of December 31, 2013 that the Plaintiffs had standing.

Where Mr. Taylor is perhaps a touch disingenuous in his letter is that he does not acknowledge that for all the more than 2,500 pages of record on appeal in *NYSRPA vs. Cuomo*, the State could not produce a single witness to make a public safety argument of a nexus between mass shootings and "assault weapons," nor was there a single argument concerning public safety that had been made part of the 6-hour Senate and Assembly session records. The Bills were jammed through. No advance work. No advance hearings. Nothing for the States' Attorneys in New York – or, quite frankly, in Connecticut in the companion *Shew vs. Malloy* – to point to in support of a "deliberative process" record. I argued these points in an Amicus Brief I submitted to the Second Circuit on behalf of Empire State Arms Collectors.

The same is true for MHL §9.46. There is nothing. In our case, I made sure to lay out in painstaking detail that there is nothing. And, if the State thought that they had it, they would already have made it part of their highly detailed, 6-page letter. The *NYSRPA vs. Cuomo* Record did not lay out the legislative process. Our Motion did. I also raised this point on the phone this afternoon, saying that an extension should not be necessary because the State should already have had a running start on me and they should have a folder at least an inch thick with pre-bill research.

I made that remark to Counsel somewhat tongue in cheek because the State, in requesting the extension in the manner it did, has put itself in a double bind. If the State, particularly the Governor and the NYS Police, now seek to produce documentation of drafts of the bill prior to its release, it will be in direct contradiction to the legal position other of the State's Attorneys have taken in other of my cases, namely *Robinson vs. Cuomo, Gun Owners of America vs. Cuomo, and SCOPE vs. Cuomo,* pending in NYS Supreme Court in Albany County.[2] In the instant case, I provided responses to several FOIL letters for which we have accepted the "no records" letters. I did not supply the set of pending motions in those cases, as now awaiting decision to compel additional records, which include the State's repeated denials that there were any drafts preceding the final version of A2238-2013/S2230-2013.

An extension is not going to save the State from the production of records it has already claimed in another forum do not exist.

Questions of precisely how individual people are being pulled into and pushed through the statewide database are questions of fact that will require discovery. I submitted Mr. Montgomery and one additional person in K.B. As I mentioned, I now have additional people coming forward. I have already signed another Declaration with A.C., and I am meeting with three additional persons this coming week for them to sign their Declarations. There are multiple pathways through which people are being both impacted and chilled. As I said would be the case, as people come forward, each one seems to bring a variation.

---

[2] *N.B.:* the CPLR Art. 78 cases are filed in Albany County because the venue is required by statute at CPLR §506(b) to be filed in that County. The State cites no comparable provision in its letter.

We need expeditiously to deal with the fact that the State is sitting on top of confidential medical information about tens of thousands of people that it should not have. We have also to promptly bring the Motion for Preliminary Injunction in for oral argument and a ruling because it is already having an impact upon people's treatment decisions, and that is only going to escalate unless the system is shut down, notification is given, and people have an opportunity to apply for their information. Nothing alleged about ISARS was apparently incorrect.

The wrongdoing of the State is not limited to Albany. It is touching people throughout the Western District at every medical provider and through every county-level feeder office of OMH. Mr. Montgomery resides here, I am here, and the several additional persons who could be promptly implead are also here. It would provide a substantial hardship for these individuals to have to take on the Defendants in a remote courtroom.

Lastly, as to the CPLR Art. 78 case requesting a hearing on Mr. Montgomery's pistol permit revocation, it does not bar this action. If we pull off an astonishing victory in that case, it merely reduces the value of his damages within this civil rights litigation. It will not negate the trampling of his civil liberties, including even the temporary extinguishment of his Second Amendment rights. Mr. Montgomery was vigilant from the moment of that first telephone call from a fellow law enforcement officer. He did not sit on his rights. He was not silent. And we went to great pains to consider and make efforts to pursue every possible avenue to both repair his rights and his good name and to find something that would tell us that the State was not engaged in such unconstitutional behavior of such proportions.

The State wants to claim that because ISARS has been in operation for two years, it should simply be permitted to continue. The NY Times data was 287 permit holders were effected. What were the odds that even one Second Amendment supporter would turn into an effective whistleblower, especially when the targeted group is those with a mental health infirmity? A government system operating in secrecy is not *ipso facto* one which is constitutional.

Finally, I make a small, but not-so-small point, if we have to go down the path of impleading more and more people as they come forward, we not only expand the reach of the lawsuit, we expand the damages.

I expressed to Ms. Connell and Mr. Taylor during our call that I appreciated the opportunity to speak with them and that I look forward to our journey together during this case. I do believe that we will establish a highly functional relationship, and I would anticipate speaking with them about a variety of records of a confidential nature and how to handle them. Although the Motion for Preliminary Injunction may appear physically large, Counsel has already clearly gone through it in great detail, and I have no doubt that they could provide a timely response.

I urge this Court to move forward with the Motion for Preliminary Injunction according to its Scheduling Order and to thereafter conference the Attorneys.

Respectfully,

Paloma A. Capanna

c:
William J. Taylor, Jr., Assistant Attorney General (CM/ECF & via facsimile)
Rudolph Baptiste, Attorney (via first class mail, facsimile, and e-mail)
Catherine A. Brennan, Attorney (via first class mail, facsimile, and e-mail)