# Paloma A. Capanna
## Attorney & Policy Analyst

633 Lake Road  
Webster, New York 14580

(585) 377-7260  
fax (585) 377-7268

RECEIVED

February 16, 2015

Hon. Charles J. Siragusa  
United States District Judge  
1360 U.S. Courthouse  
100 State Street  
Rochester, New York 14614

*via facsimile*  
*& via first class mail*

Re: *Montgomery vs. Cuomo, et al.*  
Docket No.: 6:14-cv-06709

To the Hon. Charles J. Siragusa:

This letter is submitted in response to Ms. Connell's letter (dated February 13, 2015).

On Thursday, February 12, 2015, Ms. Connell began her telephone call with me through the introduction of the "<u>fourth</u>" attorney who will be "joining [the] team" on this case for the State. The use of four attorneys should readily allow a timely response to the pleading.

As Ms. Connell points out, the Complaint was served upon the State on January 6, 2015. In that first round, the State took the risk of asking for an extension on the eve of the deadline with its first words in the case not appearing until Friday, January 23, 2015. In addition to Mr. Taylor and Ms. Connell's call to me, the State submitted a 7-page, single-spaced letter full of statutory and case citations. The State could have motioned on time in response to the original pleading. It chose not to.

The Court graciously conducted a swift scheduling conference. I met the deadline of submitting the Amended Complaint four days later. While it is true that additional Plaintiffs were added, little about the theory of the case was amended.

The State was already given a significant gift by this Court that the State seems neither to acknowledge nor appreciate. In its first letter, the State misrepresented that in the *NYSRPA vs. Cuomo* lawsuit Judge Skretny had first dealt with the pleading and then with

*Paloma A. Capanna, Attorney*

February 16, 2015
Page 2 of 3

the motion for preliminary injunction, as if the two were somehow disconnected. That is incorrect. Those matters were dealt with in a single series of motions and cross-motions, and all went in tandem into a single decision from the Judge on December 31, 2014, which is now efficiently on one track into the appellate process at the Second Circuit. When Your Honor allowed the State to split off the Motion for Preliminary Injunction in this case from the response to the pleadings, it both gave the State a significant bump of additional time on the motion and armed it with further insights into where I intend to take this case.

I point out to the State that I could have filed the Motion on an *ex parte* basis and I did not. This, too, is a conscious demonstration of preference that due process involve all parties having an opportunity to submit arguments, albeit that I would add "in a timely manner."

I can understand that a boilerplate strategy for the State is delay and deluge. The Court sees my demonstration of intention to be prompt both in the amended pleading and in the one-week anticipated response time to whatever the State does file. The 25-page limit applies only to the brief, and it encourages the discipline of writing, which includes editing. Candidly, my initial draft of the Memorandum that accompanies the Motion for Preliminary Injunction was longer. Editing only helped clarity and focus.

The bigger issue, however, that I again see in the State's positioning is that this case does not revolve exclusively around MHL §9.46 any more than it revolves solely around the Second Amendment. We know the most about ISARS because of how much information is available to the public, and at this point we believe it to be the most egregious of the constitutional violations. We also know that we have a problem post January 2013 with false characterizations of "involuntarily committed." And we also know that tens of thousands of people are, as yet, unaware that their personal health information has been transmitted into a database administered by DCJS and/or NYS Police.

In response to the State's letter, I would respectfully submit that any extension to be granted to the State should be accompanied by a requirement for their concurrent response to the Motion for Preliminary Injunction. The two should be handled in tandem or we are headed for a predictable effort by the State to win an injunction against further proceedings, regardless the outcome on the pleading. Any further delay in getting to the Motion for Preliminary Injunction works an injustice on a daily basis in the order of approximately 750 people per week.

In an effort to be efficient in our discussion as the State has now requested to revisit the scheduling conference of January 29, 2015, what I would say is that the logical progression of this case is that it is likely to qualify for class action status as notice goes out and it is likely to carry us to a final amendment to requested relief for an audit of every file in the "involuntary commitment" database. New York has a proven failure rate that predates January 2013, but, as per the data that has been coming in to me, it not only persists, but it expands to include a whole new failure of data that pollutes the NICS Index and harms individuals. Even beyond the named Co-Plaintiffs, persons continue to call and come forward to share their information with me.

In sum, I oppose any change to either the current scheduling order or the page limit on the memorandum. If, however, the Court is going to reconsider its scheduling order, I ask that the Court rejoin the response to the Amended Complaint with a response to the Motion for Preliminary Injunction and set a single deadline for the Defendants' submission to both, my answer, and the State's reply.

Respectfully,

*[signature]*

Paloma A. Capanna

c:
William J. Taylor, Jr., Assistant Attorney General (via facsimile & first class mail)
Rudolph Baptiste, Attorney (via facsimile & first class mail)
Catherine A. Brennan, Attorney (courtesy copy via facsimile & first class mail)