REGULAR ARTICLE

# Bad Risk? An Overview of Laws Prohibiting Possession of Firearms by Individuals With a History of Treatment for Mental Illness

Joseph R. Simpson, MD, PhD

For nearly 40 years, federal law has barred certain individuals with a history of mental health treatment from purchasing, receiving, or possessing firearms. State laws are a patchwork of different regulations, some much more inclusive than the federal statute, others that parallel it closely. In some states, such laws are nonexistent. For the past 20 years, it has been possible to petition for relief from the federal prohibition; however, this is not the case with all state laws. The mechanisms for relief under state laws, when present, vary significantly, and not all require the input of a mental health professional or even of any physician. This article provides an overview of federal and state laws, a discussion of implications of these laws for mental health clinicians and forensic practitioners, and suggestions of directions for future research.

J Am Acad Psychiatry Law 35:330–8, 2007

The possession of firearms by private citizens has been a highly controversial matter in American society for decades. Questions involving what types of firearms should be allowed and who should be allowed to possess them have frequently been the subject of intense debate in the political arena at the local and national levels. One result of these debates is that firearms possession by citizens has been addressed in a plethora of local, state, and federal laws and regulations.

The group of individuals who currently have or have had symptoms of mental illness has been identified as a target group for laws prohibiting firearms possession.[1] There have been several publicized examples of fatal shootings perpetrated by individuals with histories of mental illness and psychiatric treatment who legally purchased firearms.[2–4] A front-page *New York Times* article in 2000 reported that of 75 so-called rampage killers (not all of whom had diagnosed or treated mental illnesses), 56 percent had made a fully legal purchase and another 16 percent had purchased the firearm by lying on their applications. Only 13 percent obtained the murder weapon by fully illegal means.[2] However, beyond these anecdotal reports, there has been very little research in which the relationship between mental illness and risk of firearm-related violence, including suicide, was specifically examined.

The conception that the mentally ill are a bad risk for the possession of firearms gives rise to several important questions. For example, what criteria should be used to identify individuals who, by virtue of their mental illness, pose an unacceptable risk if allowed to possess firearms? Under what circumstances should an existing prohibition be lifted? What role should mental health professionals play in assessing the risk? Over the past few decades, state and federal legislative bodies have given a variety of answers to these key questions.

This article provides a review of the evolution of federal laws prohibiting firearms possession by individuals identified as mentally ill, an examination of some of the significant variations that exist in state laws, and a discussion of some of the implications of

Dr. Simpson is Staff Psychiatrist, VA Long Beach Healthcare System, Long Beach, CA, and Clinical Assistant Professor of Psychiatry and Behavioral Sciences, University of Southern California (USC) Keck School of Medicine, Los Angeles, CA. The views expressed in this article do not necessarily reflect any policy or position of the U.S. Department of Veterans Affairs, the University of Southern California, or the USC Keck School of Medicine. Address correspondence to: Joseph R. Simpson, MD, PhD, P.O. Box 15597, Long Beach, CA 90815. E-mail: jrsimpsonmd@earthlink.net

firearms possession laws for mental health professionals.

Because substance abuse diagnoses are generally dealt with separately in state and federal firearms laws, the discussion in this article will be limited to prohibitions targeting mental illness (however defined), and not those that address alcohol dependence, drug use, or drug dependency.

## Federal Firearms Laws

The first federal statute to prohibit firearms possession by the mentally ill was the Omnibus Crime Control and Safe Streets Act (Omnibus Act), passed in June 1968.[5] This law prohibited five categories of individuals from receiving, possessing, or transporting firearms that had been shipped in interstate or foreign commerce. One of the prohibited categories was individuals "adjudged by a court. . .of being mentally incompetent."[5]

Later in 1968, Congress passed the Gun Control Act of 1968,[6] which made it a crime for federally licensed firearms dealers to transfer firearms to a person who had been "adjudicated as a mental defective or has been committed to any mental institution," and also prohibited such individuals from receiving any firearm shipped or transported in interstate or foreign commerce. Together, these two 1968 statutes established legal concepts that have been retained by subsequent federal legislation dealing with firearms and the mentally ill. The language of the Gun Control Act, "adjudicated as a mental defective or has been committed to any mental institution," is still present in the U.S. Code[7] and has been imported into the statutes of several states as well.

In contrast to provisions for other prohibited categories such as felons, the 1968 laws made no provision for an individual who is prohibited from owning a firearm based on a history of mental illness to regain the privilege. The discrepancy was eliminated by a section of the Firearm Owner's Protection Act (FOPA) of 1986,[8] which granted the same right to petition for relief that had been afforded convicted felons. The FOPA also consolidated the previously separate sections of the U.S. Code created by the two 1968 laws, eliminating the "adjudicated mentally incompetent" language of the Omnibus Act[5] in favor of the "adjudicated as a mental defective" terminology of the Gun Control Act.[6]

The most recent federal legislation containing provisions concerning firearms and the mentally ill was the Brady Handgun Violence Prevention Act of 1993 (Brady Act).[9] The Brady Act established a nationwide waiting period before the purchase of a handgun and created a national background check system that must be accessed by firearms dealers before the transfer of any firearm. The implementation of this system established a computer database, the National Instant Criminal Background Check System (NICS) Index, to which states and other government agencies can submit information on a voluntary basis regarding individuals who should be denied firearms for noncriminal reasons, including adjudication as mentally ill or commitment to a mental institution.[10,11]

## Case Law Interpretation of Federal Firearms Laws

Federal laws prohibiting certain categories of mentally ill individuals from possessing firearms have been interpreted in several federal court decisions. In *Redford v. U.S. Dept. of Treasury, Bur. of Alcohol, Tobacco and Firearms*,[12] a man who had a history of commitment to a state hospital after being found not guilty by reason of insanity challenged the seizure of his firearms on the grounds that the federal law was unconstitutionally vague because it did not define the term "mentally incompetent." The Tenth Circuit Court of Appeals upheld the seizure, holding that "we believe people of common intelligence would understand that language [in the statute] to include persons found not guilty of a criminal charge by reason of insanity" (Ref. 12, p 473).

Similarly, the question of what constitutes commitment has been addressed in several decisions. Some general principles have emerged. Being remanded to a state hospital after a verdict of not guilty by reason of insanity constitutes commitment, even if the individual is later deemed not to be insane,[13] as does being court ordered to a state hospital or other mental institution.[14,15] A challenge based on the constitutionality of the prior commitment itself has been held not to be a relevant factor for purposes of determining violations of federal firearms law.[15]

The definition of commitment becomes more complicated when a person is placed in a mental hospital involuntarily but without judicial or administrative proceedings. In the case of *U.S. v. Hansel*,[16] the defendant was admitted to Nebraska's Lincoln State Hospital after a determination of need by a county board of mental health. He was released after

two weeks, and the examining physician later testified that Hansel did not have a serious mental disorder, was not mentally ill, and was not in need of hospitalization. In examining the case, the Eighth Circuit Court of Appeals found that the second step in the process of commitment required by Nebraska's Mental Health Law at the time, certification by the superintendent of the state hospital, had not been met. Thus, they ruled that Hansel was not committed for the purposes of the Gun Control Act. The court reasoned that nothing in the Act suggests a legislative intent "to prohibit the possession of firearms by persons who had been hospitalized for observation and examination, where they were found not to be mentally ill" (Ref. 16, p 1123).

A similar result was reached in the case of *U.S. v. Giardina*.[17] The defendant was seen by a psychiatrist at a mental health clinic who signed a physician's emergency certificate allowing the police to take the defendant to a mental hospital, where he was hospitalized for two weeks. The defendant was later charged with making false statements on firearms applications. The Fifth Circuit Court of Appeals held that admission by emergency certificate did not constitute a commitment for the purposes of the Gun Control Act, stating that "[t]emporary, emergency detentions for treatment of mental disorders or difficulties, which do not lead to formal commitments under state law, do not constitute the commitment envisioned" (Ref. 17, p 1337).

It should be noted that the *Hansel* and *Giardina* decisions do not stand for the proposition that judicial authorization for an involuntary hospitalization is necessary for an individual to run afoul of the Gun Control Act. In *U.S. v. Waters*,[18] a federal district court ruled that under New York law a two-physician certification procedure constitutes a formal commitment. Judicial review of the commitment was not a requirement.

More recent challenges to the classification of a hospitalization as a "commitment" have tracked the earlier cases discussed. In *U.S. v. Chamberlain*,[19] the First Circuit Court of Appeals held that a five-day emergency detention, approved by a judge, sufficed. The court rejected the defendant's contention that a person should be deemed to have been committed only if subjected to a full commitment proceeding, including provision of counsel, an adversary hearing, and so on. In *U.S. v. Dorsch*,[20] Dorsch claimed that being ordered to a mental facility for not more than 90 days should not constitute a commitment, on the grounds that the 90-day period was an "observation" period rather than a "treatment" period. The Eighth Circuit Court of Appeals rejected this argument.

## Federal Regulations

Until the passage of the Brady Act in 1993, federal agencies relied on case law, including the decisions just mentioned, to determine whether a given individual met the criteria of "adjudicated mentally defective or committed to any mental institution." However, the national background check system mandated by the Brady Act[9] prompted the Bureau of Alcohol, Tobacco, and Firearms (ATF) to delineate more precisely the meaning of these terms. In 1997, the ATF amended the Code of Federal Regulations to add the following definitions:

> *Adjudicated as a mental defective:*
>
> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease:
> (1) Is a danger to himself or to others; or
> (2) Lacks the mental capacity to contract or manage his own affairs.
>
> (b) The term shall include—
> (1) A finding of insanity by a court in a criminal case; and
> (2) Those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility pursuant to articles 50a and 72b of the Uniform Code of Military Justice, 10 U.S.C. 850a, 876b.
>
> *Committed to a mental institution:*
>
> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.
>
> *Mental institution:*
>
> Includes mental health facilities, mental hospitals, sanitariums, psychiatric facilities, and other facilities that provide diagnoses by licensed professionals of mental retardation or mental illness, including a psychiatric ward in a general hospital [Ref. 21].

## Impact of Federal Laws on Firearms Transactions

In the first 12 months during which background checks mandated by the Brady Act were performed (November 1998 to November 1999), more than

4,400,000 background checks were performed. Of these, 81,006 (1.8% of the total) resulted in denial of applications to purchase firearms. The majority of these denials (56,554, or 69.8 percent) were due to felony indictments or convictions, and a further 9.9 percent were due to misdemeanor domestic violence convictions. Only 70 individuals (0.1% of the denials) were denied because of a history of mental illness. In comparison, there were 3,072 (3.8%) denials for drug addiction.[10]

One reason that only a small number of individuals who have a history of commitment or adjudication as mentally ill are denied purchase of firearms is that states supply mental health records to the NICS Index on a voluntary basis. No provision in the Brady Act requires states to forward mental health information to the federal government. In 2004, fewer than half the states contributed such data to the NICS Index.[4] This low rate of participation means that it is possible for a person whose mental health treatment occurred in one state to apply for a firearms purchase in another state without having his or her history revealed as part of the background check.

Nevertheless, by the end of 2004, the NICS Index contained 221,478 active records of "mental defective/commitment." Of these, 129,507 (59%) were supplied by states and 91,478 (41%) by the Department of Veterans Affairs. An additional 492 records were provided by the FBI.[4] Thus, another reason for the small number of denials on grounds of mental illness may be that individuals with these backgrounds are not applying for firearms purchases in significant numbers. An FBI report summarizing the implementation of the national background check system indicates that between 1998 and 2004 approximately 4 percent of the 406,728 firearms denials were on grounds other than a criminal record (including substance abuse), including immigration or citizenship status, history of dishonorable discharge from the armed forces, and mental illness (the category was not further broken down in the report).[4]

It should also be noted that there is currently no mechanism in place for notification that an individual who is prohibited from possessing a firearm by a state law, but not by federal law, has submitted an application to purchase a firearm in a state other than the one where the prohibition was issued (see the next section and Table 1). For example, California law provides for a five-year ban on firearms possession after placement on a 72-hour involuntary psychiatric hold for danger to self or others. This restriction does not trigger a federal ban. Were such an individual to attempt to purchase a firearm in another state, the required background check would not reflect the California prohibition. The NICS section of the FBI has proposed implementing an "NICS State Index" that would allow for entry of state law bans (persons who have been denied firearms) into the NICS database.[4] However, the question of whether a ban imposed according to state criteria that are insufficient to trigger a federal ban should in fact prohibit firearms purchases in other states has apparently not been addressed.

## State Laws

State laws in this area exhibit marked diversity, ranging from no statutory mention whatsoever to provisions that are significantly more restrictive than those of the Gun Control Act, including the absence of any mechanism for terminating the prohibition. Some key characteristics of state laws are summarized in Table 1.

Four states (Alaska, Colorado, New Hampshire, and Vermont) have no laws addressing firearms possession by individuals with a history of mental illness treatment or civil incompetence adjudication. An additional 12 states prohibit such individuals only from obtaining a license to carry a concealed weapon. The remaining 34 states and the District of Columbia prohibit, at a minimum, individuals who have a history of a legal finding of incompetence or of involuntary psychiatric hospitalization from purchasing, receiving, or possessing firearms. The laws of some states simply mirror the language of the Gun Control Act, while those of others contain detailed provisions for revocation of the right to possess firearms, notification of proper authorities, maintenance of lists of prohibited individuals, and restoration of rights.

No published research has addressed the types of mental health history that merit disqualification from possessing firearms. Federal law and most state provisions identify involuntary treatment as a major criterion. One might infer that patients with a history of involuntary treatment are considered by legislative bodies to be at higher risk of future dangerousness, perhaps due to an assumption that they lack insight into their need for treatment and that this translates into higher risk. However, there does not appear to be any evidence to support this assump-

**Table 1** Firearm Prohibitions by State

| State | Statute | Type of Weapon | Prohibited Categories* | Duration of Prohibition | Provision for Restoration in Statute |
|---|---|---|---|---|---|
| Alabama | Ala. Code § 22-52-10.8 | Firearm | Committed | Not specified | Yes |
| Alaska | None | N/A | N/A | N/A | N/A |
| Arizona | Ariz. Rev. Stat. § 13-3101(A)(6)(a) | Firearm | Adjudicated dangerous to self/others and court-ordered to treatment | Not specified | Yes |
| Arkansas | Ark. Code § 5-73-103(a)(2, 3) | Firearm | Adjudicated mentally ill or committed | Not specified | No |
| California | Cal. Welfare and Institutions Code § 8103 | Dangerous weapon | Invol. admitted for observation (for danger to self or others only) or certified for intensive treatment (any grounds) | Five years | Yes |
| Colorado | None | N/A | N/A | N/A | N/A |
| Connecticut | Conn. Gen. Stat. § 29-28(b)(5) | Pistol, revolver | Committed | Twelve months | No |
| Delaware | Del. Code tit. 11, § 1448A(2) | Deadly weapon | Committed | Not specified | Yes† |
| District of Columbia | D.C. Code § 7-2502.03(a)(6) | Firearm | Vol. or invol. committed | Five years | Yes† |
| Florida | Fla. Stat. § 790.25 2(b)(1) | Firearm | Adjudged mentally incompetent | Not specified | No |
| Georgia | Ga. Code § 16-11-178(b) | Handgun | Committed | Five years | Yes† |
| Hawaii | Haw. Rev. Stat. § 134-7(3) | Firearm | "Is or has been diagnosed as having a significant behavioral, emotional or mental disorder" | Not specified | Yes† |
| Idaho | None‡ | N/A | N/A | N/A | N/A |
| Illinois | 430 Ill. Comp. Stat. 65/4(2)(iv) | Firearm | "Has been a patient in a mental institution" | Five years | No |
| Indiana | Ind. Code § 35-47-2-7(b)(4) | Handgun | Is mentally incompetent | Not specified | No |
| Iowa | Iowa Code § 724.15 1(f) | Pistol/revolver | Ever adjudged mentally incompetent | Not specified | No |
| Kansas | None‡ | N/A | N/A | N/A | N/A |
| Kentucky | None‡ | N/A | N/A | N/A | N/A |
| Louisiana | None‡ | N/A | N/A | N/A | N/A |
| Maine | None‡ | N/A | N/A | N/A | N/A |
| Maryland | Md. Code § 5-133(b)(6, 7) and § 5-205(a)(1, 2) | Firearm | "Suffers from a mental disorder...and has a history of violent behavior," or ever "spent more than 30 consecutive days in a medical institution for treatment of a mental disorder" | Not specified | Yes† |
| Massachusetts | Mass. Gen. Laws § 129B(1)(iii) | Firearm | Committed | Not specified | Yes† |
| Michigan | Mich. Comp. Laws § 28.422(3)(f, g) | Pistol | Adjudged insane, or committed to invol. inpatient or outpatient treatment | Not specified | Yes |
| Minnesota | Minn. Stat. § 624.713 subd. 1c | Firearm | Committed | Not specified | Yes† |
| Mississippi | None‡ | N/A | N/A | N/A | N/A |
| Missouri | Mo. Rev. Stat. § 571.070 1(2) | Concealable firearm | Currently adjudged mentally incompetent | Not specified | No |
| Montana | None‡ | N/A | N/A | N/A | N/A |
| Nebraska | Neb. Rev. Stat. § 69-2404 | Handgun | Prohibited by 18 U.S.C. § 922 | State database of treatment/commitments purged after five years | No |

| State | Statute | Type of Weapon | Prohibited Categories* | Duration of Prohibition | Provision for Restoration in Statute |
|---|---|---|---|---|---|
| Nevada | Nev. Rev. Stat § 202.360 2(a) | Firearm | Ever adjudicated mentally ill or committed | Not specified | No |
| New Hampshire | None | N/A | N/A | N/A | N/A |
| New Jersey | N.J. Rev. Stat § 2C:39-7(a) | Weapon | Committed | Not specified | Yes† |
| New Mexico | None‡ | N/A | N/A | N/A | N/A |
| New York | N.Y. Penal Law § 265.00 subd 16 and § 400.00 subd 1 | Rifle or shotgun (§ 265.00) pistol or revolver (§ 400.00) | "Certified not suitable to possess" (rifle or shotgun); ever "suffered any mental illness" or committed (pistol or revolver) | Not specified | Yes† |
| North Carolina | N.C. Gen. Stat. § 14-404(c)(4) | Pistol or crossbow | Adjudged mentally incompetent or committed | Not specified | No |
| North Dakota | N.D. Cent. Code § 62.1-02-01(3) | Firearm | Committed | Three years | No |
| Ohio | Oh. Rev. Code § 2923.13(A)(5) | Firearm | "Is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed . . . or is an invol. patient other than one who is a patient only for purposes of observation" | Not specified | No |
| Oklahoma | Okla. Stat. §§ 1289.10, 1289.12 | Firearm | Emotionally disturbed or of unsound mind | Not specified | No |
| Oregon | Or. Rev. Stat. § 166.250(1)(c)(D, E) | Firearm | Committed, or prohibited by court due to danger to self or others | Not specified | No |
| Pennsylvania | 18 Pa. Cons. Stat. § 6105(c)(4) | Firearm | Adjudicated as incompetent or committed | Not specified | Yes |
| Rhode Island | R.I. Gen. Laws § 11-47-6 | Firearm | "Under guardianship or treatment or confinement by virtue of being a mental incompetent" | Five years | Yes† |
| South Carolina | S.C. Code § 16-23-30(1) | Handgun | Adjudicated mentally incompetent | Not specified | No |
| South Dakota | None‡ | N/A | N/A | N/A | N/A |
| Tennessee | None‡ | N/A | N/A | N/A | N/A |
| Texas | None‡ | N/A | N/A | N/A | N/A |
| Utah | Utah Code § 76-10-503(1)(b)(vii) | Dangerous weapon | Adjudicated mentally defective or committed | Not specified | No |
| Vermont | None | N/A | N/A | N/A | N/A |
| Virginia | Va. Code §§ 18.2-308.1:2; 18.2-308.1:3 | Firearm | Adjudicated legally incompetent, mentally incapacitated, or committed | Not specified | Yes |
| Washington | Wash. Rev. Code § 9.41.040(2)(a)(ii) | Firearm | Committed | Not specitied | Yes |
| West Virginia | W. Va. Code § 61-7-7(a)(4) | Firearm | Adjudicated mentally defective or committed | Not specified | Yes |
| Wisconsin | Wis. Stat. § 941.29(1)(e) | | Committed and prohibited by committing court | Not specified | Yes |
| Wyoming | None‡ | N/A | N/A | N/A | N/A |

This summary table lists only statutes concerning individuals who are receiving or have received mental health treatment. For the sake of clarity, statutes concerning substance abuse history or forensic adjudication (e.g., history of being found incompetent to stand trial or not guilty by reason of insanity) are not included. Statutes denoted "dangerous weapon" or "deadly weapon" prohibit possession of any firearm as well as of certain classes of weapons (e.g., knives, daggers, swords) other than firearms. Some statutes may have been added, amended or repealed by the time of publication. This summary is intended for illustrative purposes only and should not be relied on for legal purposes. Note that firearms possession by individuals in the categories defined in 18 U.S.C. § 922 is illegal in all states regardless of state laws.
*Unless otherwise specified, the term "committed" is used to refer to any involuntary hospitalization or confinement.
†Statute requires certification by a physician for restoration.
‡State law prohibits issuance of a permit to carry a concealed firearm to persons with a specified mental health history or status.

tion, at least on the specific question of whether an elevated risk is posed by such individuals' being in possession of firearms.

Conversely, most clinicians can think of patients who should not possess firearms but have never been treated involuntarily. While it is presumably less difficult for the purpose of background checks to identify patients who have been committed, it would also be possible for states to mandate reporting of psychiatric patients who should be barred from possessing firearms, as is done for driving privileges in cases of epilepsy, narcolepsy, dementia, and so on.

In the District of Columbia, Hawaii, Illinois, Maryland, and Oklahoma, psychiatric diagnosis and/or voluntary treatment can be enough to trigger a prohibition. California occupies an intermediate position between these five jurisdictions and the more common requirement of involuntary commitment, in that being placed on a 72-hour involuntary hold for observation on grounds of danger to self or others triggers a five-year prohibition against firearms possession. Simpson and Sharma[22] have conducted a small study on the demographic and psychiatric characteristics of individuals who petition for early relief from California's prohibition; however, it is clear that there is a need for much more research on the subject of risk assessment and stratification in this area.

It is important to point out that even if state laws provide for the restoration of the right to possess firearms, the individual may still be barred under federal law. A hypothetical example will demonstrate the point. Imagine two California residents, Ms. Smith and Mr. Jones. Both are placed on 72-hour hold for danger to self and admitted for psychiatric evaluation. Ms. Smith is released at the expiration of the hold. Mr. Jones' treatment team, in contrast, believes that he needs further treatment, but he is unwilling to remain as a voluntary patient. He is certified for an additional 14 days of treatment and is released during or at the end of this period. Later, both Ms. Smith and Mr. Jones file petitions in state court to regain the right to possess firearms, and both petitions are granted. Because a 72-hour hold for observation does not meet federal criteria, Ms. Smith can now legally possess firearms. However, Mr. Jones's certification for 14 days of involuntary treatment meets the federal definition of "committed to a mental institution." Thus, despite the lifting of his California ban, he is still barred from firearms possession under federal law.

## Implications for Mental Health Professionals

### Clinical Practitioners

The ramifications of involuntary psychiatric treatment may extend beyond the treatment episode. As the foregoing discussion makes clear, the decision to initiate involuntary psychiatric treatment can have significant consequences with respect to firearms possession. Losing the right to possess firearms as a result of involuntary hospitalization has been little commented on in the psychiatric and legal literature. Some states, without administrative or judicial review, ban firearms possession by individuals who have been involuntarily hospitalized for brief periods. Clinicians who hospitalize patients involuntarily in jurisdictions with such provisions may want to reflect on the actual need to use involuntary treatment in cases in which inpatient care could be rendered on a voluntary basis.

The impetus to consider the consequences to the patient of the loss of the right to own firearms may be particularly significant for individuals who must possess firearms as a requirement of their employment. In a study of petitions for relief from firearms prohibition in Los Angeles County, California,[22] 15 percent of petitioners worked in law enforcement or security and petitioned in an attempt to regain their former duties. All of their petitions were granted, compared with a 77 percent rate for petitioners not employed in these areas. Although it would be premature to conclude from the data that the holds placed on the law enforcement and security personnel were unnecessary, or that California's firearms law is too stringent, it is clear that employment concerns can be a significant factor in this arena. Further research, particularly outcome studies addressing the aftermath of firearms prohibitions, including follow-up after petitions for relief, would be most informative.

As the number of states with firearms prohibition laws has increased, it can be anticipated that the likelihood of a treating clinician's being asked to give an opinion regarding restoration of the right to own firearms will also increase.[23] As is the case with other assessments of future risk or dangerousness, reaching a consensus on this matter may be challenging. Cli-


nicians may wish to seek consultation or suggest that the requesting court or party obtain a forensic psychiatric evaluation.

### Forensic Practitioners

There are many areas of law in which the elements of a forensic examination that are required and sometimes even the qualifications of the examiner are specified. Perhaps the most common example is competency to stand trial. In contrast, neither federal law nor (apparently) any state law requires the input of a forensic expert in determinations involving the revocation or restoration of firearms rights. In several states the decision of whether to restore these rights is left to the judge of the probate or superior court, with no requirement for input by mental health professionals or other physicians at all. It appears that this state of affairs has the potential to lead to errors and injustices both of commission and omission (i.e., the restoration of rights to individuals who still pose a significant risk due to a mental disorder or the denial of restoration to individuals who are no longer deemed to be a substantial risk).

Forensic practitioners with an interest in the area of risk assessment could contribute substantially to the reduction of both of these types of errors. In Los Angeles County, for example, all petitions for restoration of firearms rights are heard in Department 95, the division of the Superior Court where civil commitment and some types of forensic cases are heard. For several years, Department 95 has had an informal policy of requiring that all petitioners requesting restoration of firearms rights be evaluated by a forensic psychiatrist employed by the court.

This evaluation, which is similar to other types of risk or dangerousness assessments, consists of a review of records from the involuntary admission that triggered the ban, a psychiatric interview of the petitioner, and, if deemed necessary, contact with collateral sources such as family members or current treatment providers. The assistant district attorney in the court may choose to oppose a petition, and in many cases testimony, often including that of the forensic psychiatrist, is heard by the judge. In virtually all cases, the judge rules in accordance with the recommendation of the forensic evaluator.

The specific question to be addressed under California law is whether the individual would be able to use firearms in a safe and lawful manner. This concept encompasses risk of suicide and homicide, and these risk areas are carefully assessed. If any doubt remains about the level of risk after the clinical interview, the examiner will recommend that the petition be denied, unless he or she can conclude through contact with collateral sources that the risk is in fact low enough to recommend restoration of the right to possess firearms. Other types of risk, such as the risk that a petitioner with memory impairment will accidentally leave a firearm where children may find it, are also assessed.

Making efforts to establish similar mechanisms to ensure that firearms rights are not restored or denied without an evaluation by a mental health expert should be considered by forensic practitioners working in jurisdictions that provide for judicial relief from firearms prohibitions and evaluations of this kind could perhaps become an area of specialization. In certain areas, the demand for this expertise may be significant. For example, more than 150 petitions for relief were filed in Los Angeles County over a two-year period.[22]

## Conclusions

This article is a review of the federal statutory and case law and state laws prohibiting firearms purchase and possession by individuals with a history of mental health adjudications or involuntary psychiatric treatment. Clinicians who practice in jurisdictions with such laws should familiarize themselves with the potential impact of these statutes on their patients and should be prepared to respond to requests for opinions on restoration. This area represents a potential new source of referrals for forensic practitioners and for epidemiological and clinical research. Future research directions could include, for example, the impact of firearms laws on patients (including on their employment), rates of prohibition, rates of prohibition relief, and rates of suicide and violence among individuals with psychiatric diagnoses. Particularly informative would be comparisons on these dimensions between states with differing laws on firearms possession by individuals with a mental health history.

A discussion of the ethics, efficacy, or reasonableness of firearms prohibition laws is beyond the scope of this article. Although the federal law is nearly four decades old, many state laws are of more recent origin. Discussions of this trend and of the ethics and efficaciousness of firearms prohibitions for individuals with a history of psychiatric treatment have re-

cently been published.[23,24] Appelbaum[24] commented that "[g]iven that only a tiny fraction of violence, including gun violence, is perpetrated by persons with mental disorders, efforts that center disproportionately on restricting their access reflect a deeply irrational public policy" (Ref. 24, p 1320). Concerns about confidentiality in the context of databases of individuals barred from purchasing firearms for mental health reasons have also been raised.[23,24]

Of note, no research has specifically examined the impact of these firearms laws in terms of such critical concerns as employment, health insurance, violence, or suicide. However, several studies have demonstrated an increased risk of death by suicide[25–28] and homicide[26,29] among firearms purchasers and owners. In one of these studies, a positive correlation between household handgun ownership and suicide rates was not accounted for by differing rates of major depression, suicidal thoughts, or alcohol consumption.[28] This finding suggests that individuals with psychiatric diagnoses may be at higher risk of suicide if there are firearms in their households. Thus, there appears to be at least some evidence to suggest that limiting access to firearms on the basis of mental health concerns may have the potential to reduce suicide rates. Clearly, much more research on this highly complex topic is needed. Despite some persisting questions about their appropriateness and fundamental fairness, firearms prohibition laws are increasingly common and are likely to remain on the books for the foreseeable future.

## Acknowledgments

The author thanks Kaushal K. Sharma, MD, for comments and suggestions on the conduct of the research.

## References

1. Edwards AE: Firearms and the mentally ill: a legislative overview and jurisprudential analysis. Behav Sci Law 11:407–21, 1993
2. Butterfield F: The mentally ill often skirt a landmark federal gun control law. New York Times. April 11, 2000, p A1
3. Stander A: Development B: amendments to restricted persons for firearm purchases. Utah Law Rev 2000:929, 2000
4. Federal Bureau of Investigation Criminal Justice Information Services Division: National Instant Criminal Background Check System (NICS) Operational Report 2003-2004, published 2005. Available at http://www.fbi.gov/hq/cjisd/nics/index.htm. Accessed March 31, 2006
5. Pub. L. No. 90-351, 82 Stat. 197 (1968)
6. Pub. L. No. 90-618, 82 Stat. 1213 (1968)
7. 18 U.S.C. §§ 922(d)(4), (g)(4)(1986)
8. Pub. L. No. 99-308, 100 Stat. 449 (1986)
9. Pub. L. No. 103-159, 103 Stat. 1536 (1993)
10. United States General Accounting Office: Gun Control: Implementation of the National Instant Criminal Background Check System. 2000. Available at http://www.gao.gov/new.items/g100064.pdf. Accessed March 31, 2006
11. 28 C.F.R. § 25.2 (1998)
12. Redford v. U.S. Dept. of Treasury, Bur. of Alcohol, Tobacco and Firearms, 691 F.2d 471 (10th Cir. 1982)
13. U.S. v. Buffaloe, 449 F.2d 779 (8th Cir. 1971)
14. U.S. v. Cottle, 472 F.2d 1037 (9th Cir. 1972)
15. U.S. v. Seidenberg, 420 F.Supp. 695 (D. Md. 1976)
16. U.S. v. Hansel, 474 F.2d 1120 (8th Cir. 1973)
17. U.S. v. Giardina, 861 F.2d 1334 (5th Cir. 1988)
18. U.S. v. Waters, 786 F.Supp. 1111 (N.D. N.Y. 1992)
19. U.S. v. Chamberlain, 159 F.3d 656 (1st Cir. 1998)
20. U.S. v. Dorsch, 363 F.3d 784 (8th Cir. 2004)
21. 27 C.F.R. § 478.11 (1997)
22. Simpson JR, Sharma KK: Firearms and the mentally ill: demographics and psychiatric characteristics of individuals petitioning for early relief from firearms prohibition. Presented at the 59th Annual Meeting of the American Academy of Forensic Sciences (AAFS), San Antonio, TX, February 23, 2007
23. Norris DM, Price M, Gutheil T, et al: Firearm laws, patients, and the roles of psychiatrists. Am J Psychiatry 163:1392–6, 2006
24. Appelbaum PS: Violence and mental disorders: data and public policy. Am J Psychiatry 163:1319–21, 2006
25. Kellermann AL, Rivara FP, Somes G, et al: Suicide in the home in relation to gun ownership. N Engl J Med 327:467–72, 1992
26. Cummings P, Koepsell TD, Grossman DC, et al: The association between the purchase of a handgun and homicide or suicide. Am J Public Health 87:974–8, 1997
27. Wintemute GJ, Parham CA, Beaumont JJ, et al: Mortality among recent purchasers of handguns. N Engl J Med 341:1583–9, 1999
28. Hemenway D, Miller M: Association of rates of household handgun ownership, lifetime major depression, and serious suicidal thoughts with rates of suicide across US census regions. Injury Prevent 8:313–16, 2002
29. Kellermann AL, Rivara FP, Rushforth NB, et al: Gun ownership as a risk factor for homicide in the home. N Engl J Med 329:1084–91, 1993