UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD MONTGOMERY, et al.,

Plaintiffs,

ORDER TO SHOW CAUSE

-vs-

14-CV-6709 CJS

GOV. ANDREW M. CUOMO, et al.,

Defendants.

INTRODUCTION

It appears that Plaintiffs are disregarding the Court's Order filed on May 12, 2016 (Docket No. [#43]) and otherwise failing to prosecute this action. It is therefore ordered that Plaintiffs show cause in writing why they should not be sanctioned, up to and including the dismissal of this action with prejudice.

BACKGROUND

On May 12, 2016, the Court issued a letter order [#43] directing that the parties take particular actions "immediately." Specifically, the Order stated:

> A key issue in this action involves the circumstances under which Mr. Montgomery was admitted to Eastern Long Island Hospital on May 23, 2014. That is, Mr. Montgomery maintains that he voluntarily admitted himself, while the hospital contend that he was involuntarily admitted pursuant to New York Mental Hygiene Law sec 9.39. In connection with the pending motions to dismiss, the Court was provided with an affidavit from a hospital employee, Helene de Reeder, RN, MSN, which states that Mr. Montgomery "was admitted to Eastern Long Island Hospital by a private attending physician as an involuntary admission under Section 9.39 of the Mental Hygiene Law." (Docket No. [#24-1] at par. 2). However, Ms. de Reeder's affidavit did not identify the admitting physician, or explain the circumstances warranting an involuntary admission. Upon reviewing the Mental Hygiene Law, the Court determined that there must have been an emergency admission form completed by the physician, Form OMH 474, which had not been provided

to the Court.

Consequently, on April 26, 2016, the Court requested, by email to all counsel, a copy of the Form OMH 474 that was purportedly used to involuntarily admit Mr. Montgomery.

***

On April 26, 2016, counsel for the hospital, Ms. Brennan, responded to the Court's communication and indicated that the hospital possesses a copy of Mr. Montgomery's OMH Form 474, but has not submitted it to the Court out of concern that such a submission "would violate the HIPAA Privacy Rule," inasmuch as Mr. Montgomery has not provided a HIPAA authorization. Ms. Brennan noted that the hospital has already provided a copy of the OMH 474 form to Mr. Montgomery's attorney.

On May 3, 2016, plaintiff's counsel, Ms. Capanna, responded to the Court's request for Form OMH 474. Specifically, Ms. Capanna emailed a copy of Mr. Montgomery's Form OMH 474 to the Court, but not to opposing counsel.

Subsequently, defendants' counsel requested copies of the document that was submitted to the Court. (Counsel for the hospital already has the form, but wants to compare it with what was submitted to the Court, while counsel for the other defendants do not have the form.).

Ordinarily, when issue is joined the Court refers cases to a U.S. Magistrate Judge, who conducts a Rule 16 conference and oversees discovery. As part of that process, where medical records are involved, and where the plaintiff has put his medical/mental condition at issue, as the Plaintiff in this action has done, the Court has the plaintiff execute an authorization and has the parties execute a confidentiality agreement. Concerning the discoverability of Plaintiff's medical records, *see, e.g., Sunegova v. Village of Rye Brook*, No. 09-CV-4956 (KMK), 2011 WL 6640424 at *10 (S.D.N.Y. Dec. 22, 2011) ("It is well settled that a party waives her doctor-patient privileges when she puts her medical condition into issue. . . . A waiver is required in the interests of fairness, so that a party cannot use the privilege both as a shield and a sword.") (citations and internal quotations omitted); *see also*, 45 C.F.R. § 164.512(e) (HIPAA standard for disclosure of protected health information pursuant to court order).

> Here, there has been no discovery in the action, and no Rule 16 conference, because issue has not been joined; instead, Defendants have filed pre-answer motions under Rule 12.
>
> In light of all of the foregoing, the Court is hereby directing that the parties immediately prepare a stipulated confidentiality order for the Court's signature, and that Plaintiff provides Defendants' counsel with authorizations for medical/mental health records.
>
> The Court further directs that the hospital submit a supplemental affidavit clarifying the circumstances of Mr. Montgomery's admission, including the identity of the doctor who signed the OMH 474 form and his/her relationship to the hospital and to Mr. Montgomery. In that regard, the Court observes, for example, that the instructions to OMH Form 474 indicate that the form is to be completed by "a staff physician," while Ms. de Reeder's affidavit [#24-1] indicates that Mr. Montgomery was involuntarily admitted "by a private attending physician." (*See also*, Hospital Memo of Law [#24-3] at p. 1: "Plaintiff Montgomery was admitted to the Hospital by a private attending physician who was not employed by the Hospital."). Such supplemental affirmation should also indicate whether the hospital has a policy of classifying all psychiatrically-based emergency room admissions as involuntary commitments, as Mr. Montgomery alleges he was told by a hospital employee. (*See*, Docket No. [#3-2] at ¶ 33).
>
> Further, assuming that Mr. Montgomery knows the identity of the private physician/psychologist to whom the hospital is referring, he will also submit a supplemental affidavit from him or her, indicating whether in fact s/he involuntarily committed him.
>
> To the extent that the aforementioned supplemental affidavits will attach copies of Mr. Montgomery's OMH 474 form or other medical records, counsel should follow the procedures for sealing contained in the Local Rules of Civil Procedure and the Court's Administrative Procedures Guide for Electronic Filing.

Order [#43].

To date, the Court's Order has not been complied with. Instead, the Court has received a series of email communications from counsel, described below.

On May 25, 2016, the Court received a message from William Taylor ("Taylor"), counsel for the New York State Defendants, stating in pertinent part:

> I write with respect to the Court's letter order in the above-referenced action, dated May 10, 2016, and entered May 12, 2016, which, *inter alia*, directed the parties to submit "immediately" a confidentiality stipulation for the Court's signature. Pursuant to the Court's letter order, I circulated a proposed draft stipulation, with exhibits A-C, to counsel for all parties last Thursday. Counsel for the other two defendants, Eastern Long Island Hospital and the Suffolk County Sheriff, have agreed to the stipulation. But I have not heard back from counsel for plaintiffs, Ms. Capanna. I e-mailed Ms. Capanna again on Monday and once more yesterday, and also called and left her a voice mail message yesterday, but I still have heard nothing.
>
> Given the Court's direction that the parties should submit "immediately," I felt it advisable to submit the attached proposed stipulation and exhibits, agreed to by all defendants, to the Court by this morning. I informed Ms. Capanna in my e-mails and voice mail message to her that I would be doing so. And, as noted, I received no response to any of those messages. Under these circumstances, I respectfully request that the Court so order the attached "Joint Stipulation and Proposed Order Concerning the Designation of Confidential Materials and Related Issues." Please advise if the Court would like the attached documents to be filed on ECF or submitted in some other manner.

Taylor Email dated May 25, 2016.

The following day, Thursday, May 26, 2016, the Court received a responding email from Capanna, stating:

> I this morning received Mr. Taylor's only voicemail, apparently left after 5 pm on Tuesday. I was last week from Wednesday through Monday of this week traveling to and working at the NRA convention, including Saturday and Sunday. My primary job, now as Executive Director of the newly-formed SCOPE Legal Defense Foundation, continues to include substantial and

> national travel. My assistant works about 10 hours/week, on a variety of tasks, including voicemail conveyance. My caseload is, accordingly, approximately ten cases, on a part-time basis. My assistant sent me an email at 10 pm last night when she checked yesterday's voicemail and retrieved Mr. Taylor's voicemail from after hours Tuesday. I received that e-mail this morning.
>
> Basis [sic] the earlier question of the page from Mr. Montgomery's medical chart plus this current question, Kirstin, my assistant, and I will restructure on our end relative to e-mail monitoring. This is my only case at any time that has functioned with so high an emphasis on e-mail. I certainly apologize for any unintended delay.
>
> I will today review what Mr. Taylor references and will call him to discuss it. I respectfully request that the Court hold off on signing anything in the interim.

Capanna Email dated May 26, 2016. The following day, May 27, 2016, Capanna sent another email to the Court, stating:

> I sent this morning to Counsel under separate e-mail and first class mail, a letter and edits to the proposed Stipulation. I left a message for Mr. Taylor, and will endeavor to speak with Counsel about the issues I have raised. I am not including the Court in this loop until there is an opportunity for Counsel to respond and for our discussion. I object to the submitted Stipulation being signed by the Court. This e-mail is sent by way of status update.

Capanna Email dated May 27, 2016.

On June 8, 2016, the Court received another email from Taylor, stating:

> I write to provide you with a further status update relating to the implementation of the Court's letter order in the above-referenced action, dated May 10, 2016, and entered May 12, 2016.
>
> In short, we still await necessary action from Plaintiffs' counsel. On May 19, 2016, I circulated to the parties a proposed confidentiality stipulation in compliance with the Court's order. All parties except Plaintiffs consented to

this proposed stipulation. Plaintiffs did not respond to it.

On May 25, 2016, having heard nothing from Plaintiffs, I e-mailed the proposed stipulation to you, cc'ing all parties. In a May 27, 2016 e-mail to you, Ms. Capanna indicated that she did not consent to the State's proposed stipulation but was contacting the parties to discuss the Court's direction. In an e-mail to the parties, Ms. Capanna proposed several edits to the draft stipulation, but only to "ensur[e] that [her] edits are preserved." She did not consent to the stipulation being entered by the Court even if her suggested edits were accepted, asserting that it was "premature." Instead, Ms. Capanna proposed that, at this time, the parties enter into a "letter stipulation" relating solely to Mr. Montgomery and that she provide medical/mental health authorizations only from Mr. Montgomery. On May 31, 2016, I responded to Ms. Capanna that, although we read the Court's order as directing a more comprehensive approach, State Defendants may be amenable to beginning this process with Mr. Montgomery, as she had proposed. I asked that Ms. Capanna circulate a draft of her proposed "letter stipulation," so that the parties could review what she had in mind and could try to reach some agreement. After receiving no response from Ms. Capanna, I e-mailed her again and left a voice mail on June 2, 2016. Finally, on the afternoon of June 3, 2016, I heard back from Ms. Capanna. In our phone conversation, Ms. Capanna agreed that, as a next step, she would circulate a proposed draft of her "letter stipulation" relating to Mr. Montgomery the very next day, Saturday, June 4, 2016. She still has not done so, however. Nor have we received any medical/mental health authorizations, with respect to Mr. Montgomery or any of the other Plaintiffs. Two days ago, on June 6, 2016, I e-mailed Ms. Capanna again to inquire as to the status of her proposed "letter stipulation." I have heard nothing in response.

Given the Court's direction that the parties should submit a confidentiality stipulation "immediately," I felt it appropriate to provide the Court with this update. State Defendants have been proceeding with due haste to follow the Court's direction. Although we still hope that a confidentiality stipulation can be agreed upon and submitted to the Court for entry, we are concerned that the delay we have encountered to this point may continue. Should the Court deem it advisable, the State Defendants are available for a telephone

> conference with the Court, in order to resolve these issues as expeditiously as possible.

Taylor Email dated June 8, 2016. Then, on June 27, 2016, the Court received a further email from Taylor, stating:

> I write again to provide you with another update relating to the implementation of the Court's letter order in the above-referenced action, dated May 10, 2016.
>
> Despite our repeated efforts over the past many weeks, we still await necessary action from Plaintiffs' counsel. Most recently, on June 14, 2016, in compliance with the Court's order, I e-mailed the parties a revised proposed confidentiality stipulation (which was edited specifically to address comments and suggested edits that Plaintiffs' counsel had proposed, though, as I noted in my prior, June 8, 2016 e-mail to you, Plaintiffs' counsel had objected to the proposed confidentiality stipulation altogether, asserting that it was "premature"). All parties except Plaintiffs have consented to this proposed stipulation. In the nearly two weeks since it was circulated, Plaintiffs' counsel has not responded in any way. Nor have we received medical/mental health authorizations in compliance with May 10th order, with respect to Mr. Montgomery or any of the other Plaintiffs.
>
> As I indicated in my last e-mail to you, Plaintiffs' counsel had previously agreed that she would circulate a simple "letter stipulation" relating to Mr. Montgomery and would provide medical/mental health authorizations from Mr. Montgomery. She did not do that. Instead, on June 9, 2016, Plaintiffs' counsel circulated her own proposed confidentiality stipulation, covering issues far beyond Mr. Montgomery and the confidentiality of his medical and mental health records. Her proposed order purported to resolve the parties' sealing motions in a manner State Defendants not only object to but which is, we submit, contrary to law, and, perhaps most peculiarly, even contained a provision addressing what it refers to as "duplicitous" submissions by the parties but is apparently an effort to get the parties to combine and reorganize their motion exhibits. She also circulated a copy of a HIPAA release from Mr. Montgomery. But Mr. Montgomery's signature was crossed out, and the release itself was limited to any records at Eastern Long Island Hospital. Plaintiffs' counsel stated that she would send us actual, usable

> releases only "[o]nce we have a signed stipulation." We immediately informed Plaintiffs' counsel that her proposed order was not acceptable. And, on June 14, 2016, I circulated the revised proposed confidentiality stipulation to which all defendants have consented but, almost two weeks later, Plaintiffs have not even responded.
>
> Given the Court's direction that the parties should submit a confidentiality stipulation "immediately," and the continuing delay we have encountered, I respectfully request, on behalf of the State Defendants, that the Court: (i) so order the attached "Joint Stipulation and Proposed Order Concerning the Designation of Confidential Material and Related Issues," with Exhibits A-C thereto, or (ii) schedule a telephone conference with all parties to address these issues. At this point, despite our best efforts, we see no other feasible avenue for resolution here. Please advise if the Court would like the attached documents to be filed on ECF or for this request to be submitted in some other manner. Thank you for your attention and consideration.

Taylor Email dated June 27, 2016.

The Following day, June 28, 2016, the Court received an email from Catherine Brennan ("Brennan"), counsel for defendant Eastern Long Island Hospital, stating:

> I represent Eastern Long Island Hospital. I write to add that as per the May 2016 letter order, I have drafted a supplemental affirmation clarifying the circumstances of Mr. Montgomery's hospital admission. I rely on the hospital records for the admission including a letter from Mr. Montgomery's out patient health services provider which is contained within the records and OMH Form 474(2-09) which is also contained within the records and which plaintiff's counsel cited in the Complaint.
>
> However, as Mr. Taylor advised, plaintiff's counsel has not provided authorizations for the release of Mr. Montgomery's records. The out patient health services provider is Family Service League North Fork Counseling. Accordingly, I have not submitted the supplemental affirmation.
>
> Please advise if the Court would like the Hospital to submit the supplemental affirmation without the hospital records and these documents as exhibits and if the Court would like the supplemental affirmation filed on ECF or submitted

in some other manner.

Brennan Email dated June 28, 2016.

Finally, on July 28, 2016, the Court received another email from Taylor, stating in pertinent part:

> I write to follow up on my e-mail of June 27, 2016 (below) relating to the implementation of the Court's letter order in the above-referenced action, dated May 10, 2016.
>
> In short, nothing has changed. We still have received no response at all from Plaintiffs' counsel to the revised confidentiality stipulation I circulated to all parties on June 14, 2016, more than six weeks ago. (As I noted in my June 27th e-mail, all parties except Plaintiffs have agreed to this proposed stipulation.) Nor have we received any medical/mental health authorizations in compliance with the Court's May 10th order, with respect to Mr. Montgomery or any of the other Plaintiffs.
>
> Accordingly, given this continuing delay we have encountered from Plaintiffs, and the Court's direction that the parties should submit a confidentiality stipulation "immediately," I renew my request, on behalf of the State Defendants, that the Court: (i) so order the "Joint Stipulation and Proposed Order Concerning the Designation of Confidential Material and Related Issues," with Exhibits A-C thereto (all of which were attached to my June 27th e-mail, and which I attach again to this e-mail), or (ii) schedule a telephone conference with all parties to address these issues. Please advise if the Court would like the attached documents to be filed on ECF or for this request to be submitted in some other manner. Thank you again for your attention and consideration.

Taylor Email date July 28, 2016. The Court observes that although Capanna was copied in on all of Taylor’s and Brennan’s emails, the last response from her to any of them was on May 27, 2016, as noted above.

## DISCUSSION

The backdrop to the instant situation is Plaintiffs' challenge to New York Mental Hygiene Law § 9.46, which is part of New York's Secure Ammunition and Firearms Enforcement Act of 2013 (the "SAFE Act"). This provision, which is entitled "Reports of substantial risk or threat of harm by mental health professionals," requires "mental health professionals," including doctors, psychologists, registered nurses and licensed clinical social workers, to notify the State of New York when they reasonably believe that a patient under their treatment "is likely to engage in conduct that would result in serious harm to self or others." Significantly, once the State of New York receives such notice, it determines whether the patient possesses firearms, and if so, it confiscates them. Plaintiffs maintain that § 9.46 of the SAFE Act violates their "civil liberties," including their "rights under the Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution."

One of the plaintiffs, Donald Montgomery ("Montgomery"), maintains that his civil liberties were violated due to the enforcement of § 9.46, when he went to defendant Eastern Long Island Hospital ("the Hospital") for treatment of insomnia. Montgomery alleges that the hospital improperly transmitted his name and medical information to the State of new York pursuant to § 9.46 of the SAFE Act, which resulted in the Sheriff of Suffolk County, New York, defendant Vincent DeMarco ("DeMarco"), confiscating his firearms. The other named Plaintiffs similarly allege that their firearms were improperly confiscated after they sought medical treatment. However, despite having put their medical/mental conditions at issue, Plaintiffs have not agreed to allow the very medical providers that they are suing to disclose their medical records to the Court and to the other Defendants.

Currently pending before the Court are motions to dismiss [#22][#24] filed by Defendants. In attempting to rule on those motions, the Court determined that it needed additional information, and consequently it issued the Order [#43] dated May 12, 2016.

The Order was simple and straightforward, particularly as it involved Plaintiffs: The parties were to prepare a stipulated confidentiality order for the Court's signature, and Plaintiffs were to provide Defendants' counsel with authorizations for medical/mental health records. The Court ordered that those things be done "immediately." However, almost three months have passed and Plaintiffs have not complied with the Order or responded to the last few communications from Defense counsel.

Rule 16(f) of the Federal Rules of Civil Procedure addresses the Court's ability to impose sanctions when parties or their attorney fail to obey an order of the Court. In particular, the rule states:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order.
>
> ***
>
> Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(1)(C) & (f)(2) (2016). This rule references Fed. R.Civ. P. 37(b)(2)(A)(ii)-(vii), which authorizes orders

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Dismissals under Rule 37(b)(2)(A)(v) may be with prejudice in "extreme situations" such as those involving "willfulness," and orders imposing sanctions are reviewed for abuse of discretion. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

The Local Rules of Civil Procedure also provide for the dismissal of an action in which a party "is not in compliance with the directions of the Judge." Specifically, Local Rule 41(b) provides that

> [i]f a civil case has been pending for more than six (6) months and is not in compliance with the directions of the Judge or a Magistrate Judge, or if no action has been taken by the parties in six (6) months, the Court may issue a written order to the parties to show cause within thirty (30) days why the case should not be dismissed for failure to comply with the Court's directives or to prosecute. The parties shall respond to the order by filing sworn affidavits explaining in detail why the action should not be dismissed.

Local Rule of Civil Procedure 41(b) (emphasis added).

In the instant case it appears that Plaintiffs are ignoring both this Court's Order [#43] and the communications of opposing counsel.

ORDER

Accordingly, it is hereby ORDERED, that within thirty (30) days of the date of this Order to Show Cause, Plaintiffs shall show cause in writing why they should not be sanctioned in the manners discussed above, up to and including the dismissal of this action. Such written response shall not exceed five (5) double-spaced pages.

SO ORDERED.

Dated: Rochester, New York
August 9, 2016

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge