IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
Rochester Division

---

DONALD MONTGOMERY,
ANDREW CARTER, LOIS REID,
KARL BECHLER, and "M.M.,"
as individuals, and on behalf of
all other persons similarly situated,

             Plaintiffs

    *vs.*

ANDREW M. CUOMO, Governor of the State
of New York; ANN MARIE T. SULLIVAN,
Commissioner of the New York State
Office of Mental Health; MICHAEL C. GREEN,
Executive Deputy Commissioner of the
New York State Division of Criminal Justice Services;
JOSEPH A. D'AMICO, Superintendent of
the New York State Police; VINCENT F. DEMARCO,
Suffolk County Sheriff's Department; and,
EASTERN LONG ISLAND HOSPITAL,

             Defendants.

**AFFIRMATION OF COUNSEL
TO THE PLAINTIFFS**

Civil No.: 6:14-cv-06709

Hon. Charles J. Siragusa

---

**Paloma A. Capanna, Attorney**, an attorney duly admitted to practice before this Court, declares, pursuant to 28 U.S.C. §1746, as follows:

1. This Affirmation is submitted in response to the Order to Show Cause of this Court. [44]  It opposes any action being taken by the Court against the Plaintiffs.  It requests a 60-day stay of the *Montgomery* litigation in favor of the partial settlement proposal I circulated to Counsel, following the State's recent admission

of material facts in this case within other litigation for which I am Counsel of Record.

2.   During the period following the Court's letter directive [43], Counsel engaged in a detailed exchange of ideas for resolution, which was unsuccessful.

    a.   I responded to Mr. Taylor's first proposed approach through my letter (dated May 27, 2016). {Exhibit 47} It included detailed remarks to his proposed "Joint Stipulation and Order Concerning the Designation and Use of Confidential Material and Related Issues."

    b.   Mr. Taylor and I then talked by telephone and I agreed to circulate an alternative draft as we discussed in our call.  On June 9, 2016, I sent to Counsel:  (a.) Declaration of the Plaintiff, Donald Montgomery (duly sworn June 4, 2016); (b.) HIPAA Release of Donald Montgomery (dated June 4, 2016); and, (c.) "Stipulation for the Designation of and Handling of Confidential and Redacted Documents with Index to Confidential and Redacted Documents" (I signed June 8, 2016). {Exhibit 48}

    c.   This approach was not accepted by Counsel.

3.   Upon receipt of Mr. Taylor's letter (dated August 1, 2016), I attempted to reengage Counsel in a conference call to resolve outstanding matters and to discuss the case identified in said letter.  I also called Mr. Taylor after transmission of my letter (dated August 10, 2016) {Exhibit 49}, he said he didn't know whether he would

want to participate in a conference call, but that would get back to me. None of the three attorneys for the Defendants responded to my letter, nor did Mr. Taylor return the call to me.

4.  In that interim period between items #2 and #3, I have been engaged in litigation and hearings in several other cases – all related to the two topics presented in *Montgomery*. As a direct result of one of the license hearings, conducted August 18, 2016, admissions were achieved from the State Defendants that no independent analysis is conducted on whether a medical report of "involuntary commitment" rises to the federal standards for disqualification encoded at 18 U.S.C. §922(g)(4), as implemented by 27 CFR §478.11. These admissions are that of the material allegations in the *Montgomery* case for one of the two tracks of State confiscation of licenses and firearms, particularly pertinent to the experiences of Mr. Montgomery, Mr. Bechler, and Ms. Reid. The admissions leave the State with no defense within the *Montgomery* lawsuit for this one of two tracks about which the Plaintiffs complain.

5.  Unlike the MHL §9.46 report through ISARS, the NICS reporting under 18 U.S.C. §922(g)(4) is a bright line test. The individual either was or was not adjudicated to require an involuntary commitment by a court, board, or other tribunal having jurisdiction.

6.  To fail to ascertain the legal status of the individual prior to the NICS reporting is

to corrupt the NICS database with an overload of false data.

7.  What I am now requesting from the Court is a stay for 60 days in the *Montgomery* case to allow for negotiations of a stipulated resolution of the "involuntary commitment" track of this case.  I reasonably believe that the settlement proposal should be agreeable.  And, if it is rejected, it will be submitted to the Court at the appropriate juncture as the specific relief requested to be imposed by judicial order for compliant processing by the State of persons who may or may not have been "involuntarily committed," the process for determining whether such allegation rises to the federal standards of 18 U.S.C. §922(g)(4), an audit of corrupted reporting from 2009 to the date of implementation of compliance terms and conditions, and the remedies for those reported, including notification and a right to a hearing.

8.  Contemporaneous with the filing of this document, I am circulating to Counsel under separate cover the proposed partial settlement stipulation and compliance directive.  I am not at this time attaching these documents to this Affirmation, but they are available if the Court so directs.

9.  A successful partial stipulation would cut the issues in half before the Court.  The proposal also contains terms for proceeding forward with the MHL §9.46 claims.

10.  The issue of statewide false allegations under the mental health labels of "involuntary commitment" and MHL §9.46 remain a grave concern.  I am

fortunate to have sufficient cases in different courts involving different persons, resources, and research to be continually advancing the cause. It has taken substantial work to reach a point of such a simple understanding of the problem. It should also make settlement a realistic probability because the proposed compliance directive that accompanies the proposed partial settlement stipulation would readily correct the problem. If I have thus far been unable to advance the *Montgomery* case, I have been able to advance the issue. With the enhanced position, I circled back to *Montgomery* to present Counsel, particularly for the State, with the approach that can bring us towards a constructive resolution of one of the two areas of civil rights violations covered in this case.

11.    The Plaintiffs are actively involved in their cases. This Court knows me to be thoughtful and contentious in my work. We have done nothing to warrant sanctions. The initial round of communication yielded no results. Armed with new information, we've gone back to defense counsel. Throughout, we have experienced resistance from defense counsel, although nothing particularly different than in any other case. If the partial settlement and compliance directive are rejected, we will require judicial intervention to progress both issues.

Dated:  September 1, 2016

Paloma A. Capanna, Attorney