UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONALD MONTGOMERY, ANDREW CARTER,
LOIS REID and KARL BECHLER,                            DECISION AND ORDER

       -v-               Plaintiffs,              14-CV-6709 CJS

GOV. ANDREW M. CUOMO, Governor of the
State of New York, ANN MARIE T. SULLIVAN,
Commissioner of the New York State Office of
Mental Health, MICHAEL C. GREEN, Executive
Deputy Commissioner of the New York State
Division of Criminal Justice Services, GEORGE
P. BEACH, II, Superintendent of the New York
State Police, VINCENT DeMARCO, Suffolk
County Sheriffs Department, EASTERN
LONG ISLAND HOSPITAL,
                               Defendants.
_____

APPEARANCES

For Plaintiffs:                      Paloma A. Capanna, Esq.
                                       633 Lake Road
                                       Webster, New York 14580

For Andrew M. Cuomo,
Ann Marie T. Sullivan,
Michael C. Green and
George P. Beach, II:             Monica A. Connell, Esq.
                                     William J. Taylor, Jr., Esq.
                                     Office of the New York State Attorney General
                                     120 Broadway
                                     New York, New York 10271

For Suffolk County:            Rudolph M. Baptiste, Esq.
                                     Office of the Suffolk County Attorney
                                     100 Veterans Memorial Highway
                                     P.O. Box 6100
                                     Hauppauge, New York 11788

For Eastern Long Island
Hospital:                            Catherine A. Brennan, Esq.
                                     James F. Farrell, Jr., Esq.
                                     Fumuso Kelly DeVerna Snyder Swart & Farrell, LLP
                                     110 Marcus Boulevard, Suite 500
                                     Hauppauge, New York 11788

INTRODUCTION

Plaintiffs bring this action pursuant to, *inter alia*, 42 U.S.C. § 1983, alleging that New York Mental Hygiene Law § 9.46 violates the Federal statutory and constitutional rights of gun owners who seek mental health treatment. Pending before the Court are Plaintiff's application for preliminary injunctive relief and Defendants' motions to dismiss. In connection with those applications, now before the Court is Plaintiff's Motion to Seal (Docket No. [#39]). The application is denied.

BACKGROUND

The facts of this action will be set forth in much greater detail in the Court's forthcoming Decision and Order addressing the other pending motions. With regard to Plaintiffs' application to seal, it is sufficient to note the following facts. This action challenges the constitutionality of New York Mental Hygiene Law § 9.46, which is part of New York's Secure Ammunition and Firearms Enforcement Act of 2013 (the "SAFE Act"). In a nutshell, MHL § 9.46 requires mental health treatment providers to notify a representative of the New York State Office of Mental Health ("OMH") whenever they reasonably believe in their professional judgment that a patient under their treatment "is likely to engage in conduct that would result in serious harm to self or others." If the OMH representative agrees with the treatment provider's assessment, he notifies the New York State Division of Criminal Justice Services ("DCJS"). DCJS enters the patient's name into a firearms database created as part of the SAFE Act, and if the patient has a New York State Firearms license, DCJS causes the license to be suspended, and causes the patient's firearms to be seized. Plaintiffs maintain that reports were improperly filed against them after they sought mental health treatment, which resulted in their firearms licenses

2

being suspended, and in their firearms being seized. In this lawsuit, Plaintiffs maintain that MHL § 9.46 is to blame for what happened to them, and that the statute is unconstitutional.

On February 2, 2015, Plaintiffs filed an Amended Complaint [#14]. The Amended Complaint [#14] purports to assert four causes of action: 1) that Mental Hygiene Law § 9.46 violates the Plaintiffs' federal constitutional right to privacy in personal health information and doctor-patient relationships; 2) that Mental Hygiene Law § 9.46 violates the Equal Protection Clause of the Fourteenth Amendment, by treating persons seeking mental health treatment differently from "the general patient population";[1] 3) that Mental Hygiene Law § 9.46 violates Plaintiffs' rights to substantive due process and procedural due process under the Fourteenth Amendment, because "the process through which [they] have been reported and disqualified from firearms ownership, possession, transfer, and use is arbitrary and capricious," and lacks a "meaningful process" by which to "request a redress of their grievances for the restoration of" their rights which have been affected by § 9.46;[2] and 4) that "§ 9.46 as enacted and implemented by the Defendants violates the Second Amendment rights of the Plaintiffs."[3]

On February 27, 2015, Defendants filed motions to dismiss. The New York State Defendants (Cuomo, Sullivan, Green and Beach) filed a motion to dismiss for lack of

---

[1] Amended Complaint [#14] at p. 77.

[2] Amended Complaint [#14] at p. 79.

[3] Amended Complaint [#14] at ¶ 345.

standing, failure to state a claim and improper venue. The State Defendants' multi-faceted motion is accompanied by 42 exhibits.[4]

Significantly, the State Defendants filed their entire motion to dismiss, including affidavits and exhibits, under seal. In an unusual procedural move, the State Defendants filed the motion to dismiss as an exhibit to a Motion to Seal [#23], while simultaneously indicating that the motion should not be sealed. Specifically, the State Defendants, anticipating that Plaintiffs would object to some of the documents being filed publicly, asked the Court to seal the entire motion to dismiss temporarily, in order to allow Plaintiffs to review the motion to dismiss and to file their own motion to seal whatever they might want sealed. At the same time, the State Defendants indicated that they did not believe that any of the documents associated with their motion to dismiss should be sealed.[5] The State Defendants indicated that if Plaintiffs moved to have certain documents sealed or redacted, and if the Court granted such application, then they would re-file the remainder of their motion to dismiss on the public docket. The Court granted the State Defendants' motion, and ordered that the State Defendants' motion to dismiss be sealed temporarily, "to permit Plaintiffs the opportunity to review the Motion to Dismiss Papers and make application for redaction or longer [period of sealing] as they deem appropriate." Order [#27].

---

[4]Exhibits 1-38 attached to the Notice of Motion; Exhibits A-C attached to the Declaration of Donna Marie Call; and Exhibit A attached to the Declaration of John B. Allen, Jr.

[5]Defendants anticipated, for example, that Plaintiffs would ask the Court to seal medical records pertaining to the circumstances of their mental health treatment, and other documents, such as police reports, describing the events leading up to reports having been filed under the Mental Hygiene Law. Movants asserted, though, that sealing would not be appropriate because Plaintiffs have placed their mental health records at issue in this action.

Plaintiffs did not thereafter file a motion to seal.[6] Instead, as part of their combined response [#28] to all of the Defendants' various motions to dismiss, Plaintiffs maintained that some of the State Defendants' exhibits should remain sealed,[7] that others should be redacted,[8] and that others should be stricken entirely.[9] However, Plaintiffs' brief discussion of the issue did not identify a sufficient legal basis for the Court to seal, redact or strike the exhibits.[10]

The State Defendants subsequently filed a reply [#32] in which they asserted that "with some limited exceptions, Plaintiffs ha[d] failed to properly oppose public filing of Defendants' motion papers." In sum, the State Defendants argued that Plaintiffs had not provided any legal basis to seal or strike Defendants' exhibits, though the State Defendants voluntarily agreed to further redact social security numbers, birth dates, street addresses, pistol permit numbers, and firearm serial numbers. (Docket No. [#32] at pp. 3-4, 8-14).

During a subsequent court appearance on September 17, 2015, the Court reviewed the factors to be considered on a motion to seal, and opined that Plaintiffs' counsel had not (in her response to the motions to dismiss) offered a sufficient explanation for why the

---

[6] No such motion was docketed, although Plaintiffs' response contains a reference to the fact that they are cross-moving for such relief as part of their response. *See*, Docket No. [#28] at p. 1-2 ("Plaintiffs . . . respond to the Motions of the Defendants and also Cross-Motion this Court for various relief [including] . . . 2. granting that several of the Defendants' Exhibits be filed under seal; 3. granting that several of the Defendants' Exhibits be further redacted; 4. granting that several of the Defendants' Exhibits be stricken . . . .").

[7] State Exhibits 24, 27, 29, 30 & 31.

[8] State Exhibits 28, 31, 32, 35, Exhibits A-C to Affidavit of Donna Marie Call, and State 's Memo of Law, footnote 2.

[9] State Exhibits 2, 37, 38.

[10] Plaintiffs' Memo of Law [#28-2] does not contain any discussion concerning sealing. A supporting declaration from Plaintiffs' counsel contains a brief discussion of sealing unsupported by any citation to legal authority except Fed. R. Civ. P. 12(b)(6).

5

particular State exhibits should be sealed. (Docket No. [#37]). However, the Court, citing the "strange posture" of the case with regard to the issue of sealing, indicated that it would give Plaintiffs a further opportunity to file a motion to seal.

On October 15, 2015, Plaintiffs filed the subject Motion to Seal [#39], requesting the following relief:

> 1) sealing of the following Exhibits submitted in support of State Defendants' Motion to Dismiss for lack of subject matter jurisdiction, improper venue and failure to state a claim:
>
> <u>Exhibit 14:</u>  Plaintiff Montgomery's Article 78 Petition, filed in New York State Supreme Court, Suffolk County, seeking, *inter alia*, the reinstatement of his pistol permit;
>
> <u>Exhibit 24:</u> Transcript of initial 911 call between Plaintiff Carter's wife and the 911 Call Center Operator;
>
> <u>Exhibit 25:</u> Buffalo Police Complaint Summary Report summarizing Police response to 911 call from Carter's wife;
>
> <u>Exhibit 26:</u> City of Tonawanda Police Department Complaint Information, describing actions taken by police in response to 911 call from Carter's wife;
>
> <u>Exhibit 27:</u> Transcript of 911 call between Plaintiff Carter's wife and the City of Tonawanda's 911 Call Center Operator;
>
> <u>Exhibit 29:</u> Transcript of 911 call between Plaintiff Bechler's wife and the 911 Call Center Operator;
>
> <u>Exhibit 30:</u> Ontario County Sheriff's Office Event Summary Report concerning events at Bechler residence following the 911 call;
>
> <u>Exhibit 31:</u> New York State Police Incident Report concerning interaction with Bechler following his wife's 911 call; Order from New

York State County Court, Ontario County, suspending Bechler's pistol permit and inventory of Bechler's firearms;

Exhibit 33: Order from New York State County Court, Ontario County, suspending Bechler's pistol permit (duplicative of the Order contained in Exhibit 31); and

Exhibit 35: New York State Police report concerning Bechler's retrieval of a seized firearm following reinstatement of his pistol permit.

2) "further redacting" the following Exhibits submitted in support of State Defendants' Motion to Dismiss for lack of subject matter jurisdiction, improper venue and failure to state a claim:

Exhibit 28: Order of New York State County Court, Ontario County, reinstating Bechler's pistol permit;

Exhibit 32: Order of New York State County Court, Ontario County, suspending Bechler's pistol permit;

Affidavit of Donna Marie Call, Exhibit A: screen shot of eJustice NY Integrated Justice Portal for Donald Montgomery purporting to show that Montgomery was reported as having been "adjudicated mental defective/committed to mental institution";

Affidavit of Donna Marie Call, Exhibit B: screen shot of eJustice NY Integrated Justice Portal for Loise Reid, purporting to show that Reid was reported as having been "adjudicated mental defective/committed to mental institution";

Affidavit of Donna Marie Call, Exhibit C: screen shot of eJustice NY Integrated Justice Portal for Karl Bechler, purporting to show that Bechler was reported as having been "adjudicated mental defective/committed to mental institution"; and

State Memorandum of Law [#26] at ftnt. 2: Footnote referencing details of the Bechler 911 call transcript.

3) Sealing of Plaintiffs' own exhibit filed in support of Plaintiff's Motion to Seal [#39]:

> Exhibit 46: Decision and Order of Erie County Court reinstating Reid's pistol permit.

In accordance with the Court's Administrative Procedures Guide for Electronic Filing, Plaintiffs submitted, along with their proposed Exhibit 46, a Supplemental Declaration from Plaintiffs' Counsel[11] and a Memorandum of Law.

Plaintiffs primarily argue that the subject documents should be sealed because they are not "judicial documents" having a presumption of public access (because they are outside the scope of the pleadings and therefore should not be considered in conjunction with Defendants' pending Rule 12(b)(6) application). Alternatively, Plaintiffs argue that even if the documents are "judicial documents," the presumption of public access to them is "low," because they are "neither necessary nor helpful in resolving the Defendants' motion to dismiss or to change venue." Further, Plaintiffs contend that there are "competing interests" which outweigh any presumption of public access to the documents. Namely, Plaintiffs contend that New York Penal Law § 400.00(5)(a) provides a privacy interest for holders of pistol permits, insofar as it allow applicants for such permits to request that their names and addresses be kept confidential.[12]

The State Defendants subsequently filed a Memorandum of Law [#41] opposing Plaintiffs' Motion to Seal [#39]. The State Defendants essentially maintain that Plaintiffs

---

[11]Supplemental Declaration of Paloma Capanna dated October 15,2015.

[12]Pl. Memo of Law in support of Motion to Seal [#39], at pp. 6-7. Penal Law § 400.00(5)(a) states, in pertinent part, that when an application for a pistol license is granted, "the name and address of any person to whom an application for any license has been granted shall be a public record." However, § 400.00(5)(b) provides applicants with the option to request a public records exemption.

have not met their burden of demonstrating why the subject documents should be sealed, particularly in light of the importance of this case to the public. Again, however, the State Defendants do not oppose Plaintiffs' request to further redact certain identifying information relating to persons and firearms.

On January 5, 2017, the Court signed a stipulated Confidentiality Order [#48], however that Order expressly indicated that it does not affect the subject motion to seal. *Id*. at ¶ 13(a).

DISCUSSION

Plaintiff has requested, *inter alia*, that the Court seal the aforementioned documents. The legal principles applicable to such a request are well settled:

> The common law right of public access to judicial documents is firmly rooted in our nation's history . . . [and] is based on the need for federal courts, although independent — indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.
> ***
> In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process.
> ***
> Once the court has determined that the documents are judicial documents and that therefore a common law presumption of [public] access attaches, it must determine the weight of that presumption. The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.[13]

---

[13] In this regard, materials that "directly affect an adjudication" are given the greatest weight, that is, they are given the strongest presumption of public access. *See, U.S. v. Amodeo*, 71, F.3d 1044, 1049 (2d Cir. 1995) ("[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance. . . . An adjudication is a formal act of government, *the basis of which should, absent exceptional circumstances, be*

Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it. Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests[14] of those resisting disclosure.

In addition to the common law right of access, it is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents. [There are] two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents. The so-called "experience and logic" approach requires the court to consider both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question. The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness. The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.

A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry. Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. Broad and general findings by the trial court, however, are not sufficient to justify closure.

---

*subject to public scrutiny*.") (citation omitted, emphasis added). On the other hand, materials that are less important to a court's adjudication are given less weight, that is, less of a presumption of public access. *See, Id.* at 1049-1050 ("Where statements or documents in the middle of the continuum are at issue, the weight to be accorded to the presumption of access must be determined by the exercise of judgment. . . . Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal. Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.")

[14]"In determining the weight to be accorded an assertion of a right to privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conducting affecting a substantial portion of the public." *U.S. v. Amodeo*, 71 F.3d at 1051.

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citations, footnotes and internal quotation marks omitted).

Plaintiffs' argument expressly tracks this legal framework. As noted above, Plaintiffs primarily argue that the subject documents are not "judicial documents" having a presumption of public access. Alternatively, Plaintiffs argue that even if the documents are "judicial documents," the presumption of public access to them is "low." And finally, Plaintiffs contend that Penal Law § 400.00(5)(a) provides a privacy interest for holders of pistol permits, which outweighs the public's interest in having access to the documents.

The State Defendants dispute each of Plaintiffs' points, arguing that the Motion to Seal "is entirely without legal or factual merit."[15] The State Defendants begin by claiming that Plaintiffs are wrong to suggest that the subject documents are not "judicial documents." In that regard, State Defendants insist that Plaintiffs' argument on this point -- that the subject documents may not be considered on a Rule 12(b)(6) motion -- ignores the fact that Defendants are also moving to dismiss under Rules 12(b)(1) and 12(b)(3). In that regard, State Defendants assert that "[a]ll of the documents Plaintiffs seek to seal go to their lack of standing." State Defendants further assert that even on a 12(b)(6) motion the Court may consider documents that are incorporated into the complaint by reference or that the Plaintiffs knew about and relied on in drafting the complaint, which describes the subject documents. The State Defendants further contend that Plaintiffs have not otherwise shown that sealing is appropriate. For example, State Defendants maintain that Plaintiffs should not complain about the public disclosure of the subject documents, since they "placed aspects of their interactions with law enforcement personnel and mental

---

[15]State Defs. Memo of Law [#41] at p. 5 (numbered page 1).

11

health professionals, as well as how they came to have their firearms licenses suspended, at issue in this case."[16] State Defendants further assert that the public has a First Amendment right of access, inasmuch as Plaintiffs' lawsuit raises "an issue of great public interest"[17] involving a "constitutional challenge to a public safety statute" in which the "presumption of public access . . . is paramount."[18] Finally, with regard to sealing, State Defendants maintain that Plaintiffs are incorrect in claiming that Penal Law § 400.00(5) gives them a privacy interest that outweighs the public's right of access.

As for the redactions requested by Plaintiffs, State Defendants respond: "To the extent these redactions are limited to home street addresses, social security numbers, dates of birth, and gun license numbers which were not already redacted, State Defendants have no objection. Other requests for unspecified redactions should be denied."[19]

The Court agrees with all of the State Defendants' points and accordingly denies Plaintiffs' motion to seal. To begin with, the Court agrees with Defendants that all of the documents which are the subject of Plaintiffs' Motion to Seal are "judicial documents" to which the presumption of public access attaches. The Court is entitled to consider the documents in connection with Defendants motions under Rules 12(b)(1) and 12(b)(3), and, in some cases, in connection with the 12(b)(6) motion insofar as they meet the standard for such motions. For example, the Court deems the 911-call transcripts to have been

---

[16]State Defs. Memo of Law [#41] at p. 8.

[17]State Defs. Memo of Law [#41] at p. 5.

[18]State Defs. Memo of Law [#41] at pp. 5-6.

[19]State Defs. Memo of Law [#41] at p. 7.

incorporated by reference into the Amended Complaint. *See, Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013) ("[On a 12(b)(6) motion w]e may also consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.") (citation and internal quotation marks omitted); *see also, Morris v. Jetblue Airways Corp.*, 15-cv-1664 (ENV)(RLM), 2015 WL 8042227 at *3 E.D.N.Y. Dec. 3, 2015) ("A district court may consider evidence outside the pleadings when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(1), and extrinsic documents are permissible in a Rule 12(b)(6) motion when integral to the complaint or when converted into a motion for summary judgment. Consequently, the challenged documents may be deemed judicial documents with a strong presumption of public access.").

Further, the Court finds that such presumption should be given great weight in this case, since the documents may directly affect the Court's adjudication of the applications pending before the Court. *See, Vasquez v. City of New York*, No. 10 CIV. 6277 LBS, 2012 WL 4377774, at *2 (S.D.N.Y. Sept. 24, 2012) ("When determining whether documents will be material to a court's yet-unmade-decision, a court should assume that each validly presented, alternative ground has the potential to be dispositive[.] . . . [B]ecause we assume that their validly presented argument has the potential to be dispositive, we treat Defendants' use of the transcript as having the possibility to directly affect this adjudication. Therefore, there is a relatively heavy weight to be accorded to the presumption of access.") (citation omitted). As State Defendants have correctly pointed out, the subject documents pertain to disputed issues of standing, including whether the individual Plaintiffs were

13

injured as a result of having been reported under Mental Hygiene Law § 9.46, as well as to the issue of venue.

Finally, the Court agrees with State Defendants that the public and the press have a qualified First Amendment right to access the documents, and that Plaintiffs have not come close to demonstrating a sufficient privacy interest to overcome the presumption of public access. In particular, the Court rejects Plaintiffs' contention that Penal Law § 400.00(5)(a) provides such a privacy interest. In that regard, Penal Law § 400.00(5)(a) deals specifically with applications for firearms licenses, and states that the names and addresses of persons to whom licenses are granted shall be a public record. While Plaintiffs are correct that this statute requires that all other information contained in the application be kept confidential, subject to a court order, such fact is not relevant to this action. Further, Plaintiffs have not cited, nor can the Court find, any case in which a motion to seal was granted based upon a privacy interest under Penal Law § 400.00(5). Moreover, the Court sees no indication that Article 78 proceedings challenging the suspension or revocation of firearms licenses are generally sealed. *See, e.g., Warmouth v. Zuckerman*, 138 A.D.3d 752, 29 N.Y.S.3d 70 (2d Dept. 2016) (Article 78 proceeding challenging revocation of firearms license pursuant to Mental Hygiene Law § 9.46); *see also, Gurnett v. Bargnesi*, 174 A.D.3d 1319, 47 N.Y.S.3d 173 (4th Dept. 2017) (Article 78 proceeding challenging denial of application for pistol license where, *inter alia*, applicant did not accurately disclose his history of mental health treatment).

Further, the Court notes that Plaintiffs have not otherwise attempted to keep their identities as gun owners, or their personal medical information, private. Rather, Plaintiffs have included detailed information about these matters in their publicly-filed pleadings.

Indeed, Plaintiffs' submissions provide the Court with a very specific narrative concerning the events surrounding their interactions with police and/or their hospitalizations, in an attempt to show, *inter alia*, that Plaintiffs were wrongly reported under § 9.46 because they posed no threat of physical harm to themselves or others. However, Defendants are attempting to show that such narrative is refuted by the very documents to which Plaintiffs refer in their submissions. As just one example, the Amended Complaint indicates that when Mr. Bechler's wife called the 911 operator, Mr. Bechler was "depressed, but not suicidal or otherwise threatening to harm to himself or anyone else."[20] However, the 911-call transcript indicates that Mrs. Bechler called 911 specifically because Mr. Bechler was threatening suicide at that very moment while holding a handgun. Such information is relevant to whether Bechler has standing to challenge § 9.46, or whether his pistol permit was suspended pursuant to a different section of the mental hygiene law, as Defendants maintain.

CONCLUSION

Plaintiff's motion to seal/redact/strike [#39] is denied, except insofar as the State Defendants have agreed to make further redactions. State Defendants shall re-file their Motion to Dismiss in the manner described in their Memorandum of Law [#41] at pp. 14-15 (Conclusion, subparagraphs (3) and (4)), within fourteen (14) days of the date of this Decision and Order. Because the Court is denying Plaintiffs' motion to seal, it must return the motion and supporting documents to Plaintiffs' counsel. *See*, Administrative Procedures Guide for Electronic Filing § 2(o)(i)(2) ("If the motion to seal is denied, the

---

[20]Amended Complaint [#14] at ¶ 273.

assigned judge shall enter an order denying the motion and return the documents and supporting materials to the moving party.") (Revised March 2017). If Plaintiffs wish to re-file their Exhibit 46 on the public docket, they may do so within seven (7) days of the date of this Decision and Order. Plaintiffs' decision in that regard will not affect the forthcoming ruling on the remaining motions.

    SO ORDERED.

Dated:    March 5, 2018
            Rochester, New York

                          /s/ Charles J. Siragusa
                          CHARLES J. SIRAGUSA
                          United States District Judge