UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD MONTGOMERY, ANDREW CARTER,
LOIS REID, KARL BECHLER, and "M.M.," as
individuals, and on behalf of all other persons similarly
situated,

                      Plaintiffs,

      - against -

ANDREW M. CUOMO, Governor of the State of New
York; ANN MARIE T. SULLIVAN, Commissioner of
the New York State Office of Mental Health;
MICHAEL C. GREEN, Executive Deputy
Commissioner of the New York State Division of
Criminal Justice Services; JOSEPH A. D'AMICO,
Superintendent of the New York State Police;
VINCENT F. DEMARCO, Suffolk County Sheriff's
Department; and EASTERN LONG ISLAND
HOSPITAL,

                      Defendants.

14-cv-06709-CJS

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR, ALTERNATIVELY TO TRANSFER VENUE

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for State Defendants*
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
ANTHONY J. TOMARI
JONATHAN CONLEY
Assistant Attorneys General
    *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.     THE PLAINTIFFS LACK ARTICLE III STANDING ................................................ 3

    II.    VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF NEW YORK ......... 7

    III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND AMENDMENT .................................................................................................................. 8

    IV.   MHL § 9.46 DOES NOT VIOLATE PLAINTIFFS' PRIVACY RIGHTS ............... 14

    V.    PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM FAILS ........................... 16

    VI.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE .............................................................................. 18

CONCLUSION ............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arar* v. *Ashcroft*,
532 F.3d 157 (2d Cir. 2008), *vacated on other grounds*, 585 F.3d 559 (2d Cir. 2009)
(en banc)................................................................................................................5

*Aron* v. *Becker*,
No. 3:13-CV-0883 (TJM), 2014 U.S. Dist. LEXIS 132448 (N.D.N.Y. Sept. 22, 2014)..........17

*Ass'n of Home Appliance Manufacturers* v. *City of New York*,
36 F. Supp. 3d 366 (S.D.N.Y. 2014)..........................................................................13

*Azim* v. *Nance*,
530 F. App'x 44 (2d Cir. 2013) ....................................................................................5

*Babbitt* v. *UFW National Union*,
442 U.S. 289 (1979)....................................................................................................4

*Balentine* v. *Tremblay*,
554 F. App'x 58 (2d Cir. 2014) ..................................................................................17

*Barlow* v. *Fischer*,
No. 08-CV-6474 (CJS), 2010 U.S. Dist. LEXIS 37522 (W.D.N.Y. Apr. 15, 2010)................7

*City of Boerne* v. *Flores*,
521 U.S. 507 (1997)...................................................................................................11

*Clanton* v. *Killinger*,
No. 11-CV-6382 (CJS), 2013 U.S. Dist. LEXIS 133611 (W.D.N.Y. Sept. 18, 2013)............19

*Clapper* v. *Amnesty Int'l USA*,
133 S. Ct. 1138 (2013)............................................................................................3-5

*Cnty. of Sacramento* v. *Lewis*,
523 U.S. 833 (1998)...................................................................................................18

*Colo. Outfitters Ass'n* v. *Hickenlooper*,
24 F. Supp. 3d 1050 (D. Col. 2014)..........................................................................11

*Daniel* v. *Am. Bd. of Emergency Med.*,
428 F.3d 408 (2d Cir. 2005).........................................................................................7

*Davis* v. *Scherer*,
468 U.S. 183 (1984).....................................................................................................3

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008) ................................................................ 2, 8

*Doe* v. *Bolton*,
    410 U.S. 179 (1973) ...................................................................... 4

*Drake* v. *Filko*,
    724 F.3d 426 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 2134 (2014) ........................................ 11

*Ernst J.* v. *Stone*,
    452 F.3d 186 (2d Cir. 2006) ....................................................... 10

*HB* v. *Monroe Woodbury Cent. Sch. Dist.*,
    No. 11-CV-5881 (CS), 2012 U.S. Dist. LEXIS 141252 (S.D.N.Y. Sept. 27, 2012) .............. 13

*Heller* v. *District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*") .......................... 12

*Heller* v. *Doe*,
    509 U.S. 312 (1993) .................................................................... 19

*Hightower* v. *City of Boston*,
    822 F. Supp. 2d 38 (D. Mass. 2011), *aff'd*, 693 F.3d 61 (1st Cir. 2012) ................................ 18

*Kachalsky* v. *Cnty. of Westchester*,
    701 F.3d 81 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013) ...................................... 8-13

*Kachalsky* v. *Cnty. of Westchester*,
    817 F. Supp. 2d 235 (S.D.N.Y. 2011), *aff'd*, 701 F.3d 81 (2d Cir. 2012) .............................. 18

*Kampfer* v. *Cuomo*,
    993 F. Supp. 2d 188 (N.D.N.Y. 2014) ...................................... 19

*Kinlaw* v. *Pataki*,
    No. 07-CV-574Sr (MAT), 2007 U.S. Dist. LEXIS 85555 (W.D.N.Y. Nov. 15, 2007) ........... 7

*Kolbe* v. *O'Malley*,
    42 F. Supp. 3d 768 (D. Md. 2014) ........................................... 11

*Kwong* v. *Bloomberg*,
    723 F.3d 160 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) ......................... 9-10, 18-19

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................... 6

*Matter of Guddemi* v. *Rozzi*,
    210 A.D.2d 479 (1994) .............................................................. 17

*Matter of Perretta* v. *Mulvey*,
   77 A.D.3d 758 (2d Dep't 2010) ...................................................................17

*McDonald* v. *City of Chicago*,
   561 U.S. 742 (2010) .............................................................................2, 8

*Montalbano* v. *Port Auth. of N.Y. & N.J.*,
   843 F. Supp. 2d 473 (S.D.N.Y. 2012) ..........................................................17

*N.Y. Civil Serv. Comm'n* v. *Snead*,
   425 U.S. 457 (1976) .................................................................................3

*NASA v. Nelson*,
   562 U.S. 134 (2011) ...............................................................................15

*NYC C.L.A.S.H., Inc.* v. *City of New York*,
   315 F. Supp. 2d 461 (S.D.N.Y. 2004) ..........................................................13

*NYSRPA* v. *Cuomo*,
   990 F. Supp. 2d 349 (W.D.N.Y. 2013) .............................................. 9, 11-12, 14

*Ognibene* v. *Parkes*,
   599 F. Supp. 2d 434 (S.D.N.Y. 2009), *aff'd*, 671 F.3d 174 (2d Cir. 2011), *cert.
   denied*, 133 S. Ct. 28 (2012) ...................................................................13

*Project Release* v. *Prevost*,
   722 F.2d 960 (2d Cir. 1983).......................................................................16

*Rosu* v. *City of New York*,
   742 F.3d 523 (2d Cir.), *cert. denied*, 135 S. Ct. 710 (2014) ..................................17

*Rudgayzer* v. *Google, Inc.*,
   986 F. Supp. 2d 151 (E.D.N.Y. 2013) .............................................................8

*Selah* v. *N.Y.S. DOCS Comm'r*,
   No. 04 Civ. 3723 (DC), 2006 U.S. Dist. LEXIS 51051 (S.D.N.Y. July 24, 2006) ................19

*Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..................................................................................8

*Snell* v. *Suffolk Cnty.*,
   782 F.2d 1094 (2d Cir. 1986).......................................................................12

*Spinelli* v. *City of New York*,
   579 F.3d 160 (2d Cir. 2009)........................................................................17

*Turner Broad. Sys., Inc.* v. *FCC*,
   520 U.S. 180 (1997)................................................................................10

*Turner Broad. Sys., Inc.* v. *FCC*,
    512 U.S. 622 (1994)........................................................................11

*Tyler* v. *Hillsdale County Sheriff's Department*,
    775 F.3d 308 (6th Cir. 2014), *petition for rehearing and rehearing en banc filed*, No.
    13-876 (6th Cir. Feb. 12, 2015) ....................................................16

*United States* v. *Carter*,
    669 F.3d 411 (4th Cir. 2012) .........................................................11

*United States* v. *Decastro*,
    682 F.3d 160 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 838 (2013)..............8-9, 13-14

*United States* v. *Skoien*,
    614 F.3d 638 (7th Cir. 2010) (en banc), *cert. denied*, 131 S. Ct. 1674 (2011)........13

*United States* v. *Staten*,
    666 F.3d 154 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1937 (2012).....................13

*Warren Pearl Constr. Corp.* v. *Guardian Life Ins. Co. of Am.*,
    639 F. Supp. 2d 371 (S.D.N.Y. 2009)...............................................14

*Whalen* v. *Roe*,
    429 U.S. 589 (1977)........................................................................15

*White River Amusement Pub., Inc.* v. *Town of Hartford*,
    481 F.3d 163 (2d Cir. 2007).............................................................10

## STATUTES, RULES & REGULATIONS

18 U.S.C. § 922(g)(4) ........................................................................2, 5, 6

28 U.S.C. § 1391(b) .................................................................................7

New York Executive Law § 837(19) ....................................................15

New York Mental Hygiene Law
    § 7.09(j)........................................................................................ 15-16
    § 9.41.........................................................................................6, 16
    § 9.46........................................................................................ *passim*

New York Penal Law § 400.02............................................................16

Fed. R. Evid. 201 advisory committee's note ......................................12

45 C.F.R. § 164.512(a)........................................................................14

14 N.Y.C.R.R. §§ 543.1-543.6 ....................................................................................................16

Defendants Andrew M. Cuomo, Governor of the State of New York; Ann Marie T. Sullivan, Commissioner of the New York State Office of Mental Health; Michael C. Green, Executive Deputy Commissioner of the New York State Division of Criminal Justice Services; and Joseph A. D'Amico, Superintendent of the New York State Police (collectively, the "State Defendants") submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' Amended Complaint, dated February 2, 2015, pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1406(a) and 1404(a), or, alternatively, to transfer this case to the Northern or Eastern District of New York.

## PRELIMINARY STATEMENT

This case is about New York Mental Hygiene Law ("MHL") § 9.46, which requires mental health professionals to report when, in their reasonable professional judgment, one of their patients is "likely to engage in conduct that would result in harm to self or others." That is the only statutory provision challenged in the Amended Complaint. (AC at 2-3, ¶¶ 315-49.) It is likewise the only aspect of New York law that Plaintiffs seek to "strik[e] down," "render[] void *ab initio*," and enjoin the State Defendants from "administ[ering], operati[ng], and implement[ing]." (*Id.* at 81.)

As demonstrated in the State Defendants' moving papers, however, it is a measure that Plaintiffs have no viable legal grounds whatsoever to attack. None of the five Plaintiffs has standing to challenge MHL § 9.46. (*See* State Defs.' Mem. at 15-21.) Nor is venue proper in this District. (*See id.* at 21-22.) And none of Plaintiffs' claims in the Amended Complaint -- under the Second Amendment, for alleged violation of their constitutional right to privacy, on procedural and substantive due process grounds, and under the Equal Protection Clause -- states a sustainable cause of action here in any event. (*See id.* at 23-35.)

Plaintiffs have no real answer to any of this. Instead, they resort to misdirection and obfuscation. Though the Amended Complaint challenges only MHL § 9.46, Plaintiffs almost entirely ignore this provision in opposition. Rather, what Plaintiffs discuss, on page after page of their rambling opposition brief, are some of the many other "longstanding prohibitions on the possession of firearms by . . . the mentally ill," under both federal and state law, which the Supreme Court has deemed "presumptively lawful." *District of Columbia* v. *Heller*, 554 U.S. 570, 626-27 (2008); *McDonald* v. *City of Chicago*, 561 U.S. 742, 786 (2010). But none of these measures -- including the federal criminal prohibitions on gun possession set forth in 18 U.S.C. § 922(g)(4); the national instant criminal background check system; and New York's more than century-old firearm licensing regime -- are challenged in this action. And, despite Plaintiffs' efforts here at confusion and conflation, each is very different from MHL § 9.46.

To be clear, as the State Defendants thoroughly explained in their moving papers, MHL § 9.46 does not prohibit a person from possessing guns. (*See* State Defs.' Mem. at 8-10.) It simply provides for the conveyance of the same sort of relevant mental health information that licensing officers have long considered in deciding, in their discretion, whether to deny, suspend, or revoke a firearms license for reasons of mental illness or other "good cause." (*See id.* at 3-4, 9-10.) Even after an MHL § 9.46 report results in the suspension or revocation of a license, the local licensing officer retains broad discretion to reinstate the license as he or she sees fit, and those affected still retain the ability to challenge any licensing determinations through Article 78 proceedings, a method courts have found sufficient to guarantee due process. (*See id.*) Plaintiffs' continued assertions to the contrary are wrong as a matter of law and of no moment here.

Accordingly, dismissal with prejudice or, alternatively, transfer to the Northern or Eastern District of New York remains fully warranted, for precisely the same reasons set forth in the State Defendants' moving brief.

## ARGUMENT

## I.

## THE PLAINTIFFS LACK ARTICLE III STANDING

As demonstrated in the State Defendants' moving papers (*see* State Defs.' Mem. at 15-21), none of the five Plaintiffs has come close to meeting his or her "burden of establishing standing" here. *Clapper* v. *Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013). Plaintiffs' puzzling opposition on this point, which neither engages the State Defendants' arguments nor addresses the governing case law cited in the moving brief, only further confirms that each of the Plaintiffs in this action lacks the requisite standing to sue. The Amended Complaint therefore must be dismissed, in its entirety, under Rule 12(b)(1).

As an initial matter, there appears now to be no dispute that plaintiffs Donald Montgomery ("Montgomery"), Andrew Carter ("Carter"), and Lois Reid ("Reid") lack standing. (*See* Pls.' Mem. at 46.) The record before the Court makes clear, and Plaintiffs do not contest, that MHL § 9.46 has never been applied to any of the three. (Allen Decl. ¶¶ 19-21; Call Decl. ¶¶ 18-24 & Exs. A-C; deReeder Decl. ¶ 6; *see* State Defs.' Mem. at 10-13; Pls.' Mem. at 47-49.) Thus, under settled law, Montgomery, Carter, and Reid cannot possibly satisfy the Article III standing requirements to challenge this provision. (State Defs.' Mem. at 16-18); *see, e.g.*, *Davis* v. *Scherer*, 468 U.S. 183, 189 n.7 (1984) ("As the current statute was never applied to appellee, he lacks standing to question its constitutionality."); *N.Y. Civil Serv. Comm'n* v. *Snead*, 425 U.S. 457, 457-58 (1976) (holding that plaintiff lacked standing to challenge the constitutionality of a New York statute, because "[t]he record . . . establishe[d]" that the statute, and the procedures by

which it was administered, "ha[d] not been applied to her").

Nor, as Plaintiffs likewise appear to concede (*see* Pls.' Mem. at 46), does M.M. have standing. As noted in the State Defendants' moving brief (pp. 15, 18-19), M.M. tries to assert standing in this case based solely on "[a]llegations of *possible* future injury." *Clapper*, 133 S. Ct. at 1147 (emphasis in original) (internal quotation marks omitted). But that is not sufficient. *Id.* Indeed, as the Supreme Court recently made clear, the sort of "highly speculative fear[s]" and "[a]llegations of a subjective 'chill'" asserted by M.M. in the Amended Complaint fall well short of what Article III demands. *Id.* at 1148, 1152 (internal quotation marks omitted); (*see* State Defs.' Mem. at 18-19).[1]

That leaves Plaintiffs to rest their entire standing argument in this action on plaintiff Karl Bechler ("Bechler"). (*See* Pls.' Mem. at 46.) As explained in the State Defendants' moving brief, however, Bechler plainly has no standing here either. (*See* State Defs.' Mem. at 19-21.) While he is the only one of the five Plaintiffs to actually have been the subject of a report under MHL § 9.46, that does not change the proper conclusion under Article III. (*See id.*)

As Plaintiffs concede in their opposition papers, Bechler's firearms license has been reinstated and his guns returned. (Pls.' Mem. at 46; Capanna Decl. ¶ 30; *see* AC ¶¶ 287, 290; Exs. 28, 35.)[2] Thus, any cognizable injury resulting from the temporary suspension of Bechler's license is over, and Plaintiffs' wholly speculative assertion of "*possible* future injury," *Clapper*,

---

[1] Plaintiffs' citation in their opposition brief to the Supreme Court's decisions in *Doe* v. *Bolton*, 410 U.S. 179, 188 (1973), and *Babbitt* v. *UFW National Union*, 442 U.S. 289, 298 (1979), does nothing to help M.M.'s cause. As relevant here, these cases simply recognize the same "certainly impending" standard that the Supreme Court recently reiterated in *Clapper*, 133 S. Ct. at 143 -- one that M.M. (as well as the other Plaintiffs) plainly cannot satisfy.

[2] Citations to "Ex. __," unless otherwise noted, refer to the exhibits to the Declaration of William J. Taylor, Jr., dated February 26, 2015 ("Taylor Declaration" or "Taylor Decl.") or to the accompanying Reply Declaration of William J. Taylor, Jr., dated March 30, 2015 ("Taylor Reply Declaration" or "Taylor Reply Decl."). Exhibits 1 to 38 are appended to the Taylor Declaration. Exhibits 39 to 52 are appended to the Taylor Reply Declaration.

133 S. Ct. at 1147 -- *i.e.*, that "[i]f this case is dismissed, one can well imagine that the State will swoop in with its next revocation and confiscation against Mr. Buehler [*sic*]" (Pls.' Mem. at 46) -- does not come close to satisfying the requirements of Article III.  (*See* State Defs.' Mem. at 19); *see, e.g.*, *Clapper*, 133 S. Ct. at 1147-53; *Azim* v. *Nance*, 530 F. App'x 44, 45 (2d Cir. 2013).

And, in any event, as Plaintiffs also concede (*see* Pls.' Mem. at 46), even if there were some sort of cognizable injury to Bechler here (which there is not), it has nothing to do with MHL § 9.46.  It is instead the result of Bechler's conduct on September 6, 2013 (as set forth in the exhibits submitted with the State Defendants' moving papers) such that the police were summoned, transported him to the hospital, and then immediately contacted the relevant local licensing officer, who suspended Bechler's license pursuant to his authority under Penal Law § 400.00 and directed the surrender of his guns.  (Allen Decl. ¶ 22; Call Decl. ¶ 25 & Ex. C; AC ¶ 285; Exs. 29-33, 36; *see* State Defs.' Mem. at 13-14; Pls.' Mem. at 46.)  The MHL § 9.46 report was not issued until almost a week after Bechler's license was suspended, his guns taken, and he was reported by the hospital as involuntarily committed and thus subject to the strictures of 18 U.S.C. § 922(g)(4).  (Allen Decl. ¶ 23; Call Decl. ¶ 25 & Ex. C; Ex. 34; *see* State Defs.' Mem. at 14-15.)  Any such injury could not have been caused by MHL § 9.46 and cannot be redressed by the relief sought in this litigation, which is directed only at MHL § 9.46.  It thus can clearly provide no basis for Article III standing.  (*See* State Defs.' Mem. at 19-20); *see, e.g.*, *Arar* v. *Ashcroft*, 532 F.3d 157, 191-92 (2d Cir. 2008), *vacated on other grounds*, 585 F.3d 559, 563 (2d Cir. 2009) (en banc) (agreeing with panel decision on standing).[3]

---

[3] Bechler (like the other plaintiffs) also continues to lack standing for the other reason set forth in the State Defendants' moving brief, *i.e.*, because any attempt to establish injury-in-fact here by relying on a purported privacy violation resulting from the entry of his "name[] and other non-

Plaintiffs' only arguments in response here are wholly inapposite ones. (*See* Pls.' Mem. at 45-51.) They assert that they are bringing this action not only on behalf of themselves, but also "on behalf of others similarly situated." (*Id.* at 45.) But that does nothing to lessen their individualized standing burdens. (*See* State Defs.' Mem. at 21 n.10.) They note that only one plaintiff need have standing to sue. (*See* Pls.' Mem. at 42, 46.) But that is of no moment. As just discussed, and the record here makes clear, none of the five Plaintiffs in this case can satisfy the "irreducible constitutional minimum," *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992), of Article III. (*See* State Defs.' Mem. at 15-21.)

Plaintiffs' repeated references to sections of the Mental Hygiene Law other than MHL § 9.46 (*see* Pls.' Mem. at 46-50) are similarly beside the point. Despite what Plaintiffs might wish, that Montgomery, Reid, and Bechler were each reported to the New York State Office of Mental Health ("OMH") as involuntarily committed in accordance with 18 U.S.C. § 922(g)(4) (*see* Allen Decl. ¶¶ 18-20, 22; Call Decl. ¶¶ 20-21, 24-25 & Exs. A-C; deReeder Decl. ¶¶ 2-4) (and that DCJS uses the identifier "MHL § 9.41" to categorize such involuntary commitments in its own records[4]) does not somehow give them standing to challenge the constitutionality of an entirely separate statutory provision, MHL § 9.46. (*See* State Defs.' Mem. at 16-17, 19-20.) Plaintiffs' efforts to confuse and conflate these very different laws, each with, *inter alia*, different requirements, different procedures, and different consequences (*see* State Defs.' Mem. at 2-10;

clinical identifying information" in the database maintained by the New York State Division of Criminal Justice Services ("DCJS") fails to satisfy the requirements of Article III. (*See id.* at 20.)

[4] Despite Plaintiffs' apparent confusion on this point, as explained by Donna Call, the Assistant Director of the Office of Criminal Justice Operations at DCJS, the meaning of the "MHL § 9.41" label in DCJS's records is not some mystery. Rather, it "is used by DCJS as a shorthand to identify individuals who have been reported as having been adjudicated as mentally defective or involuntarily committed to a mental institution under provisions of the Mental Hygiene Law where such commitment constitutes an involuntary commitment for the purposes of 18 U.S.C. § 922(g)(4)." (Call Decl. ¶ 9 n.1.) And it has nothing to do with reports made under MHL § 9.46, which are retained "in a separate database." (*Id.* ¶ 4; *see, e.g.*, *id.* Ex. A at 4.)

Allen Decl. ¶¶ 5-17; Call Decl. ¶¶ 3-4, 6-17), cannot save their claims.

Accordingly, for all these reasons, and those set forth in the State Defendants' moving brief, the Amended Complaint must be dismissed, under Rule 12(b)(1), for lack of standing.

## II.

## VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF NEW YORK

Plaintiffs' venue arguments (*see* Pls.' Mem. at 51-52) are perhaps even more confounding. As set forth in the State Defendants' moving brief, because no defendant resides in this District nor did a substantial part of "the relevant activities of the defendant[s]," *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005), occur here, venue is not proper in this Court. (State Defs.' Mem. at 21-22); *see* 28 U.S.C. § 1391(b).

In their opposition on this point, Plaintiffs cite no law, address none of the arguments raised by the State Defendants, and instead make irrelevant assertions regarding, *inter alia*, the admission of counsel in this District, the location of the Plaintiffs, "the statewide reach of the State Defendants," and "the routine presence of the Governor in Rochester." (Pls.' Mem. at 51-52.) None of these assertions, however, can change the settled law that the State Defendants all reside in Albany. (AC ¶¶ 6-9, 12); *see, e.g.*, *Kinlaw* v. *Pataki*, No. 07-CV-574Sr (MAT), 2007 U.S. Dist. LEXIS 85555, at *2-4 (W.D.N.Y. Nov. 16, 2007). Nor can they move the residence of the other two defendants out of Suffolk County. (AC ¶¶ 10-12.) And they cannot change the fact that the alleged relevant actions of the named defendants in this case took place in either the Northern or the Eastern District of New York. (*Id.* ¶¶ 17-199.)

In short, Plaintiffs do not come close to satisfying their burden of establishing that venue is proper in the Western District of New York. *See, e.g.*, *Barlow* v. *Fischer*, No. 08-CV-6474 (CJS), 2010 U.S. Dist. LEXIS 37522, at *3 (W.D.N.Y. Apr. 15, 2010) ("The burden is on the plaintiff to establish that venue is correct."). Accordingly, pursuant to Rule 12(b)(3) and 28

U.S.C. § 1406(a), the Court should dismiss the Amended Complaint or, alternatively, transfer the case to the Northern or Eastern District of New York.[5]  (*See* State Defs.' Mem. at 21-22.)

## III.

## PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND AMENDMENT

As the State Defendants showed in their moving brief, Plaintiffs' claim that MHL § 9.46 violates their rights under the Second Amendment fails here under clear and binding precedent handed down since the Supreme Court's decision in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), and at every step of the governing framework for Second Amendment claims established by the Second Circuit.  (*See* State Defs.' Mem. at 23-29.)  First, the provision does not even implicate Plaintiffs' Second Amendment rights, as it is in accord with, and, indeed, much less restrictive than, the sort of "longstanding prohibitions on the possession of firearms by . . . the mentally ill" that the Supreme Court in *Heller*, 554 U.S. at 626-27, and *McDonald* v. *City of Chicago*, 561 U.S. 742, 786 (2010), found to be "presumptively lawful."  (*See* State Defs.' Mem. at 23-24.)  Furthermore, MHL § 9.46 does not substantially burden Plaintiffs' rights.  (*See id.* at 24-25.)  And, in any event, even if MHL § 9.46 imposed a substantial burden, because this provision so clearly advances New York's interests in public safety, crime prevention, and the prevention of suicide, it easily withstands constitutional scrutiny.  (*See id.* at 25-29.)

In their opposition, Plaintiffs' largely ignore these arguments and the governing Second Circuit authorities.[6]  Instead, Plaintiffs appear to focus their Second Amendment response on two

---

[5] Although both issues must be decided before, if ever, reaching the merits, the Court may, in its discretion, dispose of this case on venue grounds prior to considering whether Plaintiffs have standing.  *See, e.g.*, *Rudgayzer* v. *Google, Inc.*, 986 F. Supp. 2d 151, 158 (E.D.N.Y. 2013) (citing *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007)).  If the Court transfers venue here, the Northern District is the more appropriate location.  (*See* State Defs.' Mem. at 22 n.11.)

[6] The Second Circuit has handed down three major Second Amendment decisions since *Heller*: *United States* v. *Decastro*, 682 F.3d 160 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 838 (2013);

points: (i) their assertion that MHL § 9.46 infringes on a "fundamental" right and is thus subject to strict scrutiny; and (ii) their claim that on the record before the Court on this motion to dismiss, MHL § 9.46 cannot survive even under an intermediate scrutiny analysis. (*See* Pls.' Mem. at 38-42.) Neither has any basis.

*First*, there is no merit at all to Plaintiffs' contention that strict scrutiny must be applied here because the Second Amendment right is fundamental. (*See* Pls.' Mem. at 38-39; *see also id.* at 8-9, 22.) That argument is expressly precluded by binding Circuit precedent. *Decastro*, 682 F.3d at 166-67; *Kwong*, 723 F.3d at 168. Even if the mental health reporting requirement of MHL § 9.46 infringed upon a fundamental right under the Second Amendment (which it does not), it would not warrant the application of strict scrutiny to Plaintiffs' Second Amendment claim. *See Decastro*, 682 F.3d at 166-67. Indeed, as noted in the State Defendants' moving brief, the Second Circuit and district courts in this Circuit have, without exception, applied intermediate scrutiny at this third stage of the Second Amendment analysis. (State Defs.' Mem. at 23, 26 & cases cited.) Given that the burden imposed by MHL § 9.46, if any, is minimal in nature, intermediate scrutiny is, at most, what the Court should apply here as well. (*Id.* at 24-26);

---

*Kachalsky* v. *County of Westchester*, 701 F.3d 81 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013); and *Kwong* v. *Bloomberg*, 723 F.3d 160 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014). Though each is relied upon heavily by the State Defendants in support of their motion to dismiss (*see* State Defs.' Mem. at 23-29), neither *Decastro* nor *Kachalsky* is even mentioned in Plaintiffs' opposition. And *Kwong* is cited just once, in a puzzling attempt to distinguish Judge Skretny's decision in *NYSRPA* v. *Cuomo*, 990 F. Supp. 2d 349 (W.D.N.Y. 2013), and argue that intermediate scrutiny should not have been applied in *NYSRPA* and, apparently, should not be applied in this case either. (*See* Pls.' Mem. at 40.) But *Kwong* provides no support whatsoever for Plaintiffs or the application of something higher than intermediate scrutiny. In fact, the Second Circuit indicated there that, because there was no evidence that the residential handgun license fee at issue was "anything more than a 'marginal, incremental, or even appreciable restraint' on one's Second Amendment rights," rational basis review would likely be the appropriate standard (though the Second Circuit did not definitively resolve that question, as it found that the licensing scheme at issue easily survived intermediate scrutiny). *Kwong*, 723 F.3d at 167-69.

*see, e.g.*, *Kwong*, 723 F.3d at 168 & n.15 (holding that intermediate, not strict, scrutiny, was appropriate where the challenged law "does not ban the right to keep and bear arms but only imposes a burden on the right").

*Second*, Plaintiffs' assertion that MHL § 9.46 cannot withstand intermediate scrutiny under the Second Amendment also fails. Plaintiffs' argument here appears to be that, in reviewing legislation under intermediate scrutiny, a court may consider only materials that were expressly made part of the legislative record prior to enactment; that the empirical studies cited here by the State Defendants (*see* State Defs.' Mem. at 27-29) cannot be considered on evidentiary grounds as well; and that, because these studies are outside the Amended Complaint, they may not be reviewed by the Court on this motion to dismiss in any event. (*See* Pls.' Mem. at 39-40; *see also id.* at 21-24.) Plaintiffs are wrong on all counts.

Plaintiffs' contention that the State is precluded from relying on anything other than pre-enactment evidence to demonstrate the reasonableness of the Legislature's judgment is contrary to settled authority.[7] *See, e.g.*, *Turner Broad. Sys., Inc.* v. *FCC*, 520 U.S. 180, 187 (1997) (considering, in upholding federal legislation under intermediate scrutiny, not just evidence compiled by Congress during "pre-enactment hearings," but also materials submitted to the

_____

[7] The single decision that Plaintiffs cite in support of this "pre-enactment evidence" argument, which involved a First Amendment challenge to a ban on nude dancing, is not to the contrary. *See White River Amusement Pub., Inc.* v. *Town of Hartford*, 481 F.3d 163, 171 (2d Cir. 2007) (cited at Pls.' Mem. at 39) (requiring only that the legislative body have "relied on some evidence reasonably believed to be relevant to the problem" before it). In any event, it has limited relevance here because intermediate scrutiny "carries different connotations depending on the area of law," *Ernst J.* v. *Stone*, 452 F.3d 186, 200 n.10 (2d Cir. 2006), and, as discussed herein, the Second Circuit has made clear that in Second Amendment challenges a court is not limited in its analysis to pre-enactment evidence, *see, e.g.*, *Kachalsky*, 701 F.3d at 99. Nor, given the long history in this State and under federal law of restrictions on gun possession by the mentally ill as well as the breadth of social science data supporting such restrictions (*see* State Defs.' Mem. at 2-10, 27-29), could it plausibly be contended that the State's arguments in this case should be disregarded as being somehow "hypothesized or invented *post hoc* in response to litigation" (Pls.' Mem. at 39 (citing *United States* v. *Virginia*, 518 U.S. 515 (1996).)

district court following a remand for further factual development, including "expert submissions, sworn declarations and testimony, and industry documents").  Specifically, in the Second Amendment context, both the Second Circuit and other federal courts have recognized that the government may defend firearms restrictions under intermediate scrutiny through "legislative text and history, empirical evidence, case law, and common sense."  *United States* v. *Carter*, 669 F.3d 411, 418 (4th Cir. 2012); *Kachalsky*, 701 F.3d at 99 (considering "studies and data" submitted by the State in upholding gun legislation under intermediate scrutiny); *NYSRPA*, 990 F. Supp. 2d at 369-71 (same).[8]  Thus, Plaintiffs' opposing argument here -- *i.e.*, that MHL § 9.46 must fail under intermediate scrutiny because there is an insufficient legislative record -- is entirely without merit.[9]

Plaintiffs' assertion that the Court may not, for admissibility reasons, consider any of the empirical studies cited by the State Defendants (*see* Pls.' Mem. at 22) is equally meritless.[10]  And it appears to be premised on a fundamental misunderstanding of the Court's role here.  In assessing whether MHL § 9.46 survives intermediate scrutiny, the Court's end is not "to

[8] *See also Drake* v. *Filko*, 724 F.3d 426, 438 (3d Cir. 2013) (under intermediate scrutiny, government may justify a firearm regulation not just by reference to legislative history, but also "studies and anecdotes, . . . history, consensus, and simple common sense" (quotation marks omitted)), *cert. denied*, 134 S. Ct. 2134 (2014); *Kolbe* v. *O'Malley*, 42 F. Supp. 3d 768, 792-93 (D. Md. 2014) (rejecting contention that "the court should look only to the evidence that was in front of the legislature when it enacted" the challenged restrictions on assault weapons and large-capacity magazines); *Colo. Outfitters Ass'n* v. *Hickenlooper*, 24 F. Supp. 3d 1050, 1072 n.28 (D. Col. 2014) (same, with respect to challenged magazine-size restriction).

[9] *See also, e.g.*, *City of Boerne* v. *Flores*, 521 U.S. 507, 531 (1997) ("Judicial deference, in most cases, is based not on the state of the legislative record . . . compile[d] but 'on due regard for the body constitutionally appointed to decide.'") (quoting *Oregon* v. *Mitchell*, 400 U.S. 112, 207 (1970) (opinion of Harlan, J.)); *Turner Broad. Sys., Inc.* v. *FCC*, 512 U.S. 622, 666 (1994) (noting that "Congress is not obligated, when enacting its statutes, to make a record of the type that an administrative agency or a court does to accommodate judicial review").

[10] These studies (cited at State Defs.' Mem. at 28-29) are publicly available online and through widely accessible reference databases.  For ease of reference, State Defendants have attached copies to the accompanying Reply Declaration of William J. Taylor, Jr., as Exhibits 44 to 52.

determine in the first instance whether [the challenged provision] would promote important law-enforcement objectives." *Heller* v. *District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2011) ("*Heller II*"); *see Kachalsky*, 701 F.3d at 99. It is well settled that policy decisions like that are left solely to the legislature. *See Kachalsky*, 701 F.3d at 97, 99. Instead, the Court's role under intermediate scrutiny is merely "to determine whether the [State] has presented evidence sufficient to 'establish the reasonable fit . . . require[d]' between the law at issue and an important or substantial governmental interest." *Heller II*, 670 F.3d at 1269 (quoting *Bd. of Trustees of State Univ. of N.Y.* v. *Fox*, 492 U.S. 469, 480 (1989)); *see Kachalsky*, 701 F.3d at 97-99.[11]

Thus, courts, including the Second Circuit, regularly consider the sort of "studies and data" cited here by the State Defendants in deciding whether legislation withstands constitutional scrutiny under the Second Amendment. *Kachalsky*, 701 F.3d at 99; *see, e.g.*, *NYSRPA*, 990 F. Supp. 2d at 369-71.[12] They do so not in order to assess the truth of those studies or the wisdom of the challenged legislative enactment (neither of which is an issue properly the subject of judicial review), but, rather, "only 'to assure that, in formulating its judgments, [the State] has drawn reasonable inferences based on substantial evidence.'" *Kachalsky*, 701 F.3d at 97

---

[11] New York's interests, in enacting MHL § 9.46, in serving the State's public safety goals -- and, in particular, addressing serious concerns of gun violence, to self or others, by those with serious mental illness -- is evident as a matter of law, *see Kachalsky*, 701 F.3d at 96-97; (State Defs. Mem. at 26 & cases cited), and is set forth throughout the legislative record (Taylor Reply Decl. Exs. 39-41 (Governor's and Legislative Sponsor's Memoranda in Support); *id.* Ex. 42 (Senate Debate) at 109, 113-14; Ex. 8 (Assembly Debate)).

[12] *See also, e.g.*, *Snell* v. *Suffolk Cnty.*, 782 F.2d 1094, 1105-06 (2d Cir. 1986) (holding that social science studies can be reviewed by courts as "legislative facts"); Fed. R. Evid. 201 advisory committee's note (distinguishing adjudicative facts, which "are simply the facts of the particular case," from legislative facts, which are "those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body").

(quoting *Turner Broad.*, 512 U.S. at 666).[13]  Nor, despite Plaintiffs' protestations, does it matter

that this is a motion to dismiss, and not one for summary judgment.  The Court may still take

judicial notice of the empirical studies cited by the State Defendants in conducting its Second

Amendment analysis.  *See, e.g.*, *Ass'n of Home Appliance Manufacturers* v. *City of New York*, 36

F. Supp. 3d 366, 371 (S.D.N.Y. 2014) (noting that courts may take judicial notice of legislative

facts on a motion to dismiss); *HB* v. *Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 (CS),

2012 U.S. Dist. LEXIS 141252, at *10-11 (S.D.N.Y. Sept. 27, 2012) (noting that that courts may

take judicial notice of publicly available documents on a motion to dismiss, including articles

contained in secondary sources); *see also, e.g.*, *United States* v. *Staten*, 666 F.3d 154, 163-67

(4th Cir. 2011) (taking judicial notice of empirical studies and data in conducting Second

Amendment means-end analysis), *cert. denied*, 132 S. Ct. 1937 (2012); *United States* v. *Skoien*,

614 F.3d 638, 643-44 (7th Cir. 2010) (en banc) (same), *cert. denied*, 131 S. Ct. 1674 (2011).[14]

Finally, it must be noted that each of the above arguments asserted by Plaintiffs in

opposition to the State Defendants' motion to dismiss is directed exclusively at the third part of

the Second Circuit's "three-part inquiry" for assessing Second Amendment claims, *i.e.*, the

application of "some form of heightened scrutiny."  *Kachalsky*, 701 F.3d at 93; *Decastro*, 682

---

[13] *See also, e.g.*, *NYC C.L.A.S.H., Inc.* v. *City of New York*, 315 F. Supp. 2d 461, 488 n.23, 492-94 & n.32 (S.D.N.Y. 2004) (holding that studies, data, and reports supporting city and state smoking-ban legislation, though disputed, were admissible and material "not for the truth of what is contained in those materials," but to show the factual and empirical basis for the legislation, which the court upheld on a constitutional challenge); *Ognibene* v. *Parkes*, 599 F. Supp. 2d 434, 447 (S.D.N.Y. 2009) ("In seeking to determine the rationality of a given measure in meeting permissible goals, the court may examine scholarly articles not formally submitted or may guide its conclusions by reasonable exercise of its deductive powers." (internal quotation and citation omitted)), *aff'd*, 671 F.3d 174 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 28 (2012).

[14] To be clear, however, as noted in the State Defendants' moving brief, particularly given that courts have repeatedly upheld New York's firearms licensing scheme against Second Amendment attack, consideration of empirical evidence is not necessary for MHL § 9.46 to withstand intermediate scrutiny.  (*See* State Defs.' Mem. at 27); *supra* p. 11, note 8 & cases cited.

F.3d at 164-67; *NYSRPA*, 990 F. Supp. 2d at 363; (*see* State Defs.' Mem. at 23). But, as

demonstrated in the State Defendants' moving papers, the Court need not reach that stage of the

analysis to dismiss Plaintiffs' Second Amendment challenge. It also fails, and should be

dismissed with prejudice, because MHL § 9.46 regulates conduct that is outside the scope of, and

thus entirely unprotected, by the Second Amendment (*see* State Defs.' Mem. at 23-24) and

because the provision does not substantially burden the Second Amendment right (*see id.* at 24-

25).

     In sum, for all these reasons, and those set forth in the State Defendants' motion papers,

Plaintiffs' Second Amendment claim fails to state a viable cause of action and should be

dismissed with prejudice.

## IV.

## MHL § 9.46 DOES NOT VIOLATE PLAINTIFFS' PRIVACY RIGHTS

     Plaintiffs allege that MHL § 9.46 violates a privacy interest by requiring the

dissemination of their "personal health information." (AC ¶¶ 194, 315-322; *see* Pls.' Mem. at

33-38.) As demonstrated in the State Defendants' moving papers, however, this claim

contravenes controlling precedent and should be dismissed.[15] (*See* State Defs.' Mem. at 29-33.)

---

[15] As noted, this case is a constitutional challenge to MHL § 9.46 and not -- as Plaintiffs' appear
to suggest in their opposition papers (*see* Pls.' Mem. at 34-36) -- a Health Insurance Portability
and Accountability Act ("HIPAA") challenge to the process by which New York State submits
mental health records to the FBI, in order to update the national instant criminal background
check system ("NICS"). Plaintiffs' assertion that New York's NICS reporting violates their
privacy rights under HIPAA is meritless. HIPAA is not the subject of this action, and even if it
were, HIPAA provides no private right of action. *See, e.g.*, *Warren Pearl Constr. Corp.* v.
*Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases).
MHL § 9.46 information is not reported to NICS. (Call Decl. ¶ 14; Allen Decl. ¶ 10 n.3.) And,
as even cursory research would have revealed to Plaintiffs (including a review of their own
exhibits submitted in opposition), in states like New York, which require disclosure of qualifying
events, NICS reporting does not violate the HIPAA Privacy Rule. 45 C.F.R. § 164.512(a); (*see,
e.g.,* Taylor Reply Decl. Ex. 43 (Cong. Research Serv., R43040, *Submission of Mental Health*

Plaintiffs' attempt to distinguish *Whalen* v. *Roe*, 429 U.S. 589 (1977) as "outdated" is

unavailing. In *NASA v. Nelson*, 562 U.S. 134 (2011), the Supreme Court scrupulously followed

*Whalen* in considering and rejecting a constitutional challenge that involved the same type of

privacy interest allegedly at issue here. *Id.* at 138, 144-48, 151-53, 155-58 (citing *Whalen*, 429

U.S. at 591, 594-602, 605-06). The *NASA* Court, in a unanimous decision[16], acknowledged that

"government 'accumulation' of 'personal information' for 'public purposes' may pose a threat to

privacy," but also recognized that protections against "unwarranted disclosures" to the public

"generally allay[] these privacy concerns." *Id.* at 155 (quoting *Whalen*, 429 U.S. at 605).

Here, the SAFE Act contains several statutory safeguards to prevent the dissemination of

private information to the public. *See, e.g.*, Exec. Law § 837(19) ("non-clinical identifying

information pursuant to section 9.46 of the mental hygiene law . . . shall be destroyed five years

after such receipt"); MHL § 7.09(j)(1) ("The commissioner . . . shall collect, retain, or modify

data or records, and shall transmit such data or records . . . to the division of criminal justice

services, which may re-disclose such data and records only for determining whether a license . . .

should be denied, suspended or revoked . . . . Such records, which may not be used for any other

purpose, shall include only names and other non-clinical identifying information . . . ."); MHL §

9.46(b) ("Information transmitted to the division of criminal justice services shall be limited to

names and other non-clinical identifying information, which may only be used for determining

whether a license . . . should be suspended or revoked"); Penal Law § 400.02 (statewide license

---

*Records to NICS and the HIPAA Privacy Rule* (2013)) at 10, 11-13 ("If a state requires covered
entities to disclose prohibiting mental health records to NICS, the HIPAA privacy rule does not
prohibit that disclosure."); *id.* at 11 n.53 & fig. 1 (noting that New York is such a "mandated
disclosure" state); Pls. Ex. 43 at 787; *id.* Ex. 42 at 12-13).

[16] Justices Scalia and Thomas concurred only in the judgment in *NASA*, as both concluded that
"[a] federal constitutional right to 'informational privacy' does not exist" at all. *Id.* at 160
(Scalia, J., concurring in the judgment); *id.* at 168 (Thomas, J., concurring in the judgment); *see
id.* at 138 (maj. op.) (declining to decide whether such a constitutional privacy right exists).

and record database "shall not be subject to disclosure pursuant to article six of the public officers law"); (*see also* Allen ¶ 16; Call Decl. ¶¶ 16-17).  In light of these safeguards, and the compelling governmental interests the SAFE Act advances, and for the reasons set forth in the State Defendants' moving brief, Plaintiffs' constitutional rights to informational privacy have not been violated and their claims should be dismissed.

**V.**

**PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM FAILS**

As demonstrated in the State Defendants' moving brief, Plaintiffs' procedural due claim is also meritless.[17]  (*See* State Defs.' Mem. at 33-34.)

In their opposition, Plaintiffs wrongly assert that MHL § 9.46 fails to provide any post-deprivation process.  (*See* Pls.' Mem. at 26.)  That is not so.  Those who have had a license suspended as a result of an MHL § 9.46 report have access to licensing proceedings to reinstate

---

[17] Throughout their opposition papers, and in their proposed Second Amended Complaint, Plaintiffs allege violations of their constitutional rights pursuant to "MHL § 9.41" (*see* Pls.' Mem. at 6-43), which Plaintiffs apparently use as shorthand for all federal and state statutes that require the reporting of qualifying involuntary commitments to NICS.  Plaintiffs allege that distinction between "MHL § 9.41" and MHL § 9.46 is nothing more than "numeric bingo."  (*Id.* at 10.)  But, as discussed, *see supra* pp. 6-7 & note 4, the reporting of disqualifying commitments to NICS and the issuance of reports under MHL § 9.46 proceed under separate statutes, using separate databases, and have different legal and practical effects.  They are not interchangeable.  Even if the Amended Complaint did assert a due process challenge to the involuntary commitment statutes, which it does not, because adequate process is available with regard to involuntary commitments and the reporting of such commitments for the purposes of firearms licensing and possession, such claim would fail.  *See Project Release* v. *Prevost*, 722 F.2d 960, 975 (2d Cir. 1983) (holding that New York's involuntary commitment procedures comport with constitutional due process).  To the extent Plaintiffs charge that the circumstances with prompted the involuntary commitment have resolved sufficiently that they should be permitted to lawfully possess firearms again, they have available to them the remedy of obtaining a certificate of relief from disabilities.  And if they are unhappy with the determination of their application for a certificate for relief, they may challenge that determination in an Article 78 proceeding.  MHL § 7.09(j); 14 N.Y.C.R.R. §§ 543.1-543.6; (*see* Allen Decl. ¶¶ 12-13).  (Notably, in this way, New York is unlike Michigan -- the state at issue in the Sixth Circuit's recent decision in *Tyler* v. *Hillsdale County Sheriff's Department*, 775 F.3d 308, 313 (6th Cir. 2014), *petition for rehearing and rehearing en banc filed*, No. 13-876 (6th Cir. Feb. 12, 2015), which Plaintiffs cite repeatedly -- which has no such relief-from-disabilities qualifying process.)

the same and, if they are unhappy with those proceedings, may seek judicial review under CPLR Article 78.  (*See* State Defs.' Mem. at 3-4, 9-10.)  Courts in this Circuit have repeatedly held that such proceedings provide a meaningful post-deprivation remedy in the context of gun licensing decisions as well as other State actions -- and satisfy all requirements of due process.  *Aron* v. *Becker*, No. 3:13-CV-0883 (TJM), 2014 U.S. Dist. LEXIS 132448, at *56 (N.D.N.Y. Sept. 22, 2014); *see also Montalbano* v. *Port Auth. of N.Y. & N.J.*, 843 F. Supp. 2d 473, 485 (S.D.N.Y. 2012).[18]

Plaintiffs' contention that pre-deprivation safeguards are necessary to afford sufficient process under MHL § 9.46 (*see* Pls.' Mem. at 32) finds support in neither law nor policy.  MHL § 9.46 requires mental health professionals in New York to report when one of their patients is "likely to engage in conduct that would result in serious harm to self-or others."  To require a pre-deprivation hearing in this context -- where circumstances clearly demand prompt action on the part of State and local officials -- would substantially undermine the State's compelling interests here in public safety, crime prevention, and the prevention of suicide.  *See, e.g., Spinelli* v. *City of New York*, 579 F.3d 160, 170-171 (2d Cir. 2009); *Rosu* v. *City of New York*, 742 F.3d 523, 527 (2d Cir.), *cert. denied*, 135 S. Ct. 710 (2014); *Matter of Perretta* v. *Mulvey*, 77 A.D.3d 758 (2d Dep't 2010); *Matter of Guddemi* v. *Rozzi*, 210 A.D.2d 479, 480 (1994).

Here, Plaintiffs had access to an Article 78 proceeding -- a meaningful post-deprivation remedy under state law -- to vindicate their alleged rights, and thus no due process claim lies.

---

[18] To the extent that Plaintiffs' due process claim rests on the assertion that those who do not have a firearms license will not receive notice that they were the subject of a report pursuant to MHL § 9.46, as discussed in the State Defendants' moving brief, it clearly lacks merit.  (*See* State Defs.' Mem. at 34; *see also id.* at 20, 21 n.10, 29-33.)  At best, it appears that this may be an attempt by Plaintiffs to assert, on behalf of others, a "stigma-plus" due process claim for alleged damage to reputation.  (*See* Pls.' Mem. at 30-31.)  But it falls well short.  *See, e.g.*, *Balentine* v. *Tremblay*, 554 F. App'x 58, 60-61 (2d Cir. 2014).

# VI.

## PLAINTIFFS FAIL TO STATE A CLAIM
## UNDER THE EQUAL PROTECTION CLAUSE

Plaintiffs' claim that MHL § 9.46 is unconstitutional under the Equal Protection Clause fails for the reasons set forth in the State Defendants' moving brief. (*See* State Defs.' Mem. at 34-35.) Nothing in Plaintiffs' meandering, almost entirely inapposite opposition papers changes that.

Though Plaintiffs do not address this point anywhere in their lengthy briefing, under settled law, their equal protection claim is duplicative, of both their Second Amendment claim and their alleged privacy claim. *See, e.g.*, *Kwong*, 723 F.3d at 170 n.19; *see also, e.g.*, *Cnty. of Sacramento* v. *Lewis*, 523 U.S. 833, 842 (1998). It is thus subject to dismissal on that basis alone. (*See* State Defs.' Mem. at 34.)

Moreover, as demonstrated in the State Defendants' moving brief, Plaintiffs' purported claim that MHL § 9.46 discriminates against "the class of those coming into contact with the mental health setting," in alleged violation of the Equal Protection Clause (AC ¶¶ 323-32) is wholly without merit. (*See* State Defs.' Mem. at 34-35.) For this reason, too, it should be dismissed, with prejudice, under Rule 12(b)(6).

*First*, despite Plaintiffs' apparent confusion here, MHL § 9.46 "does not treat similarly situated individuals differently," *Kachalsky* v. *Cnty. of Westchester*, 817 F. Supp. 2d 235, 273 (S.D.N.Y. 2011), *aff'd*, 701 F.3d 81 (2d Cir. 2012), as is required for any viable equal protection claim. Instead, the statute "applies uniformly" to all persons. *Id.*; *see also Hightower* v. *City of Boston*, 822 F. Supp. 2d 38, 60 (D. Mass. 2011) (noting that "the equal protection clause protects against unequal treatment, not against the equal application of a statute that a plaintiff finds uncongenial or arbitrary"), *aff'd*, 693 F.3d 61, 83 (1st Cir. 2012).

*Second*, even if any scrutiny under the Equal Protection Clause were appropriate here, Plaintiffs' claim still fails. As the Supreme Court has long held, "a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller* v. *Doe*, 509 U.S. 312, 319-20 (1993). Here, as the State Defendants have shown, MHL § 9.46 does not infringe upon Plaintiffs' Second Amendment rights. Nor do Plaintiffs assert a claim based upon membership in any suspect class.[19] Thus, at most, section 9.46 need only survive rational basis review. *See Kwong*, 723 F.3d at 170 & n.19 (holding that "plaintiffs should not be allowed to use the Equal Protection Clause 'to obtain review under a more stringent standard' than the standard applicable to their Second Amendment claim"); *Kampfer* v. *Cuomo*, 993 F. Supp. 2d 188, 196-97 (N.D.N.Y. 2014). For the reasons already discussed (*see* State Defs.' Mem. at 23-29); *supra* Point III, it plainly does -- and, indeed, easily survives review under the more stringent intermediate scrutiny standard. Dismissal is thus fully warranted.[20]

---

[19] *See, e.g.*, *Selah* v. *N.Y.S. DOCS Comm'r*, No. 04 Civ. 3723 (DC), 2006 U.S. Dist. LEXIS 51051, at *21 (S.D.N.Y. July 24, 2006) (noting that "the mentally ill" are not "a suspect class warranting heightened equal protection scrutiny").

[20] Plaintiffs do not address the State Defendants' arguments for dismissal of their claims based on substantive due process and for monetary damages, and, accordingly, these claims should be deemed abandoned. *See, e.g.*, *Clanton* v. *Killinger*, No. 11-CV-6382 (CJS), 2013 U.S. Dist. LEXIS 133611, at *4 (W.D.N.Y. Sept. 18, 2013). In any event, these claims also should be dismissed for the reasons set for the moving brief. (*See* State Defs.' Mem. at 34-35 & n.19.)

## CONCLUSION

For the foregoing reasons, and those set forth in their moving brief, the State Defendants respectfully request that the Court grant the State Defendants' motion and dismiss the Amended Complaint with prejudice.  Alternatively, the Court should transfer this action to the Northern or Eastern District of New York.

Dated: New York, New York
        March 30, 2015

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for State Defendants*
By:
**/s/ *William J. Taylor, Jr.***
William J. Taylor, Jr.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov